# ATTACHMENT A

*Redacted Docket Materials*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE ACCOUNT SERVICED BY NTREPID LLC FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 1030 | SC No. 20-sc-271<br><br>**Filed Under Seal** |

*Reference:* ███USAO Ref:███████  *Subject Account:*████████
████████████████████████████████████████████████████

## FIRST APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Ntrepid, LLC ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Herndon, Virginia, to disclose certain records and other information pertaining to the PROVIDER account (the "SUBJECT ACCOUNT") with the subscriber ████████████████████████████████████████
████████████████████████████████████████████████████ as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

### LEGAL BACKGROUND AND JURISDICTION

1. PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2. This Court has jurisdiction to issue the requested Order because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(d). Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

3. As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC, *see* 18 U.S.C. § 3237, and the criminal offenses under investigation began or were committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district. *See* 18 U.S.C. § 3238. The statutes setting forth the federal offenses under investigation, including 18 U.S.C. § 1030(a)(2), apply extraterritorially.

4. A court order under section 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

**RELEVANT FACTS**

5. The United States is investigating a computer hacking operation carried out by United States persons, including former employees of U.S. intelligence agencies, on behalf of the ███████████. The investigation concerns possible violations of, *inter alia*, 18 U.S.C. § 1030(a)(2) (Computer Fraud and Abuse), 18 U.S.C. § 1030(a)(5) (Computer Fraud and Abuse), 22 U.S.C. § 2278 (Violations of the Arms Export Control Act), and 18 U.S.C. § 371 (Criminal Conspiracy). In short, the FBI is investigating former members of the U.S. intelligence community

2

for illegally providing cyber capabilities and technical data to a foreign entity.

6. The conduct under investigation has origins in a contract between the ▮▮▮▮▮ and the ▮▮▮▮ based technology company ▮▮▮▮▮. In relevant part, ▮▮▮▮ agreed to provide training, advice, and operational support to ▮▮▮▮ as that country build its own electronic surveillance service, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ performed these services under a license and Technical Assistance Agreement ("TAA") with the United States Department of State. The TAA ultimately authorized ▮▮▮▮ to support the ▮▮▮ offensive cyber operations, that is, its espionage-driven computer hacking operations. However, it also required ▮▮▮▮ to submit to significant oversight by the U.S. government.

7. According to multiple witnesses who have spoken to the Federal Bureau of Investigation, by late 2015 and early 2016, ▮▮▮▮ decided to replace ▮▮▮▮ with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. A section of ▮▮▮▮ known as "▮▮▮" would continue the computer hacking mission supported by ▮▮▮▮ and would recruit ▮▮▮▮ employees to continue their work at ▮▮. However ▮▮ employees would not obtain a license or TAA from the United States Department of State ▮▮ employees would not submit to any oversight by the United States government; ▮▮▮▮ would purchase more sophisticated hacking tools and broaden their range of targets; and ▮▮▮▮ would pay its employees more.

8. In January 2016, after it became clear that ▮▮▮▮ was recruiting ▮▮▮ employees, ▮▮▮▮ management warned its employees, including subjects of this investigation, that, under the International Traffic in Arms Regulations ("ITAR"), they could not lawfully work for ▮▮▮▮ without a license or TAA, because the computer hacking services that they were provided constituted "defense services" under the ITAR. Nonetheless,

3

▓▓▓▓ and the American subjects of this investigation did not obtain a license or TAA.

9. During the course of the investigation, the FBI has spoken with multiple former and current employees of ▓▓ and confirmed that the primary mission of ▓▓ was to steal information, on behalf of ▓▓▓▓, by means of computer intrusions. Specifically, witnesses interviewed during the investigation, including current and former ▓▓ employees of ▓▓▓▓ have confirmed that the purpose of ▓▓ was – and still is – to conduct offensive cyber operations – in other words, "hacking" – on behalf of an arm of ▓▓▓▓▓▓▓▓. Several of these witnesses also stated that ▓▓▓▓▓▓ intended to target, was targeting, and/or had targeted, the devices of U.S. persons. Moreover, as noted below, several witnesses also reported that ▓▓ used exploits (such as EXPLOIT ONE, described below) that compromised target devices via the servers of U.S. companies such as Apple. Moreover, these witnesses also noted that ▓▓ routinely obtained targets' data using stolen passwords or electronic tokens from accounts hosted by U.S.-based service providers (e.g., Google, Apple, and Facebook).

10. In terms of ▓▓▓▓▓▓▓ operations, as one example, several former and current ▓▓▓▓▓▓ employees described ▓▓ purchase of a "zero-day" vulnerability in the Apple iMessage system that allowed ▓▓ members to access and control almost any device containing the iOS Operating System, including iPhones and iPads ("EXPLOIT ONE"). In August 2017, ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ lists of Apple accounts that were allegedly used in the commission of a large-scale malicious computer network campaigns using EXPLOIT ONE. Because iMessages are encrypted, Apple indicated it was unable to verify whether any of these accounts were used by ▓▓▓▓▓▓▓▓ to leverage the exploit in malicious computer network operations. However, Apple subscriber records for these accounts supported ▓▓▓▓▓▓ that these accounts were operational accounts used by ▓▓

4

▇ For example, the subscriber information for most of the accounts indicated that they had been registered using similarly named email accounts from an untraceable email provider that claims that it stores no metadata and uses end-to-end encryption for all email.

11. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ "Exploit Report" that listed several hundred ▇▇▇▇▇ targets that were victimized with EXPLOIT ONE during a single week in June 2017. The Exploit Report was not exhaustive and did not include the white category. However, the Exploit Report included the names and telephone numbers of people who, according to open source research, are journalists and employees of foreign governments, including of allies of the United States. One of the names listed on the Exploit Report is the name of a senior foreign government official who lived and worked in Washington, D.C.[1] Further, in April 2019, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ CIO continued to make limited use of EXPLOIT ONE ▇▇▇▇ ▇ EXPLOIT ONE had been used to compromise the devices of over 1,400 people.

12. As part of the investigation, the FBI requested confirmation from the U.S. State Department's Office of Defense Trade Controls Compliance (DDTC) that the conduct at issue related to U.S. persons working for ▇▇▇▇▇ constituted export-controlled defense services. In August 2019 DDTC confirmed the applicability of the ITAR to American ▇▇▇▇ employees testing, developing, and operating EXPLOIT ONE, a program designed to compromise and retrieve data from devices which use Apple's "iOS" operating system. DDTC concluded that

---

[1] In October 2017, FBI agents interviewed the foreign official and made an onsite, partial copy of its Apple devices. Although subsequent analysis did not reveal any indications that the devices had been compromised, malware such as EXPLOIT 1 does not always leave evidence of compromise on targeted devices. Indeed, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ it was common practice to access a device, remove desired data, and then delete the malware to prevent detection and exposure of a particular exploit or malware tool.

5



such activity constituted "defense services" per 22 C.F.R. § 120.9(a)(1).  Accordingly, DDTC concluded that there was "no doubt" that Americans engaged in such activity fo▮▮▮▮▮ ▮▮▮▮▮▮ would require prior approval from DDTC and an export license to provide such services under the ITAR.  ▮▮▮▮▮▮▮ has extensively utilized EXPLOIT ONE since 2016, and numerous U.S. persons have worked on, or with, the exploit, fo▮ ▮▮▮▮ benefit.

**The Subject Account**

13. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ has obtained, and uses, an account with PROVIDER.  PROVIDER holds itself out as an "unconventional technology company" whose products allow subscribers to conduct various online activities anonymously, through services that are colloquially known as "anonymization" or "proxy" services.  Those types of services allow PROVIDER subscribers to connect with computer servers owned by PROVIDER, and to connect with the rest of the internet through PROVIDER's computer servers, so that the subscriber's activity appears to have originated from PROVIDER's computers, rather than from the subscriber's own computers.

14. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ operational traffic is routed through the SUBJECT ACCOUNT.  Such traffic would include sending out malware, communicating with command and control ("C2") servers used to control malware, and retrieving target data, including through the use of EXPLOIT ONE.[2]  Information provided by other witnesses with knowledge, as well as information obtained through a pen register/trap and trace order served upon PROVIDER, are consisten▮ ▮▮▮▮▮▮▮▮▮▮▮

---

[2] After or before passing through the TARGET ACCOUNT, some of this traffic may also be routed through various VPNs, anonymously purchased third-party servers, or other networks to further anonymiz▮ ▮▮▮▮▮▮▮▮ operations.

6

▉ use of the SUBJECT ACCOUNT.

### REQUEST FOR ORDER

15. The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

16. The United States further requests that the Order direct PROVIDER not to notify any person, including the subscriber or customer of each account listed in Part I of Attachment A, of the existence of the application of the United States or the Order for one year from the date of the Court's Order. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *See* 18 U.S.C. § 2705(b).[3]

17. In this case, the proposed Order seeks information relevant to establishing the

---

[3] The government relies on § 2705(b) to seek a preclusion-of-notice order because the government is requesting only non-content information pursuant to § 2703(d), an action which is authorized by § 2703(c). *See* 18 U.S.C. § 2703(c)(1)(B) ("governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when [it] . . . obtains a court order for such disclosure under subsection (d) of this section"). Under § 2703(c), the government has no obligation to notify the subscriber. *See* 18 U.S.C. § 2703(c)(3) ("governmental entity receiving records or information under this section is not required to provide notice to a subscriber or customer").

illegal activity under investigation and identifying the individual(s) responsible. Accordingly, while ▒▒▒▒▒ and the other subjects are aware of the existence of the investigation, disclosure of the requested Order may reveal the scope and direction of the United States's ongoing and confidential investigation, and may affect ▒▒▒▒▒ use of the SUBJECT ACCOUNT. Once alerted to this Order, potential targets could be immediately prompted to destroy or conceal incriminating evidence, alter their operational tactics to avoid future detection of their specific activities (i.e., by not using the SUBJECT ACCOUNT), and otherwise take steps to undermine the investigation and avoid future prosecution.

18. Therefore, based on the foregoing, there are reasonable grounds to believe that notification of the existence of this Order would result in destruction of or tampering with evidence or other serious jeopardy to this investigation. See 18 U.S.C. § 2705(b)(3), (5).

19. Given the complex nature of the criminal activity under investigation and the involvement of foreign-based coconspirators and evidence, and also given that the criminal scheme may be ongoing, the United States anticipates that this confidential investigation will continue for the next year or longer.

20. Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the proposed Order for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the United States will make best efforts to notify the Court promptly and seek appropriate relief.

21. In this matter, the United States also requests that the instant Application and the Order be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the proposed Order. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an ongoing criminal investigation when such jeopardy creates a compelling governmental interest in confidentiality. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991). For the reasons stated above, the United States has a compelling interest in confidentiality to justify sealing the Application and Order. *See id.*

Respectfully submitted,

TIMOTHY SHEA
U.S. Attorney for the District of Columbia
D.C. Bar No. 437437

By: */s/ Demian S. Ahn*
DEMIAN S. AHN
Assistant United States Attorney
D.C. Bar Number 49111
555 4th Street, N.W., Room 4243
Washington, D.C. 20530
(202) 252-7106 telephone
(202) 514-6010 facsimile
demian.ahn@usdoj.gov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE ACCOUNT SERVICED BY NTREPID LLC FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 1030 | SC No. 20-sc-271<br><br>**Filed Under Seal** |

## ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Ntrepid, LLC ("PROVIDER"), an electronic communication and/or remote computing service provider located in Herndon, Virginia, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(3), (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

2

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.

_____
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## I. The Account(s)

The Order applies to certain records and other information for any Ntrepid, LLC ("PROVIDER") account associated with the subscriber ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and any preserved data and/or preservation numbers associated therewith.

## II. Records and other information to be disclosed

### A. Information about the customer or subscriber of the Account(s)

PROVIDER is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Account(s)") constituting information about the customer or subscriber of the Account(s):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Length of service (including start date) and types of service utilized;

4. Other subscriber numbers or identities (including the registration IP address), including any current or past accounts linked to the Account(s) by telephone number, recovery or alternate e-mail address, IP address, or other unique device or user identifier; and

5. Means and source of payment for such service (including any credit card or bank account number) and billing records.

### B. All records and other information relating to the Account(s) (except the contents of communications)

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) for the time period from account inception to the

present.

1. All correspondence between Ntrepid, LLC (including its employees, officers, and contractors) and ▮▮▮▮▮▮ (including its employees, officers, and contractors), including, but not limited to, electronic communication (email, social media and instant messaging), attachments, presentations, proposals, requests for quotes and contracts, contracts, memorandum, agreements (including with U.S. and foreign governments and secrecy/privacy documents), and instant messages;

2. All financial records (draft or otherwise) pertaining to ▮▮▮▮▮▮ including but not limited to, transactional information, wire transfers, contracts, ledgers, spreadsheets, income projections, revenue projections, financial costs and liabilities, insurance records, contracts (draft or final), payments, account records, tax information, and bonus information and incentives;

3. All records of services and products provided, offered or proposed to or by ▮▮▮▮▮▮ including, but not limited to, bills, invoices, receipts, descriptions of services or product abilities and limitations, proposals, and technical capabilities;

4. Technical data and description of services and products provided to or by ▮▮▮▮▮▮

5. All export applications and licenses sought or approved for ▮▮▮▮▮▮ or associated companies; and

6. Oral information provided by ▮▮▮▮▮▮ employees.

PROVIDER is further authorized to provide such information (but not the content of ▮▮▮▮▮▮ communications provided by PROVIDER) to the United States in oral testimony, in court proceedings (including grand jury proceedings), or in preparation for any such proceeding.

None of the foregoing requests authorize PROVIDER to disclose the contents of any ▮▮▮▮▮▮ communications constituting use of the SUBJECT ACCOUNT, and PROVIDER is directed not to provide the contents of any such communications.

2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE ACCOUNT SERVICED BY NTREPID LLC FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 1030 | SC No. 20-sc-271<br><br>**Filed Under Seal** |

## ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Ntrepid, LLC ("PROVIDER"), an electronic communication and/or remote computing service provider located in Herndon, Virginia, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(3), (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.

G. Michael Harvey
Digitally signed by G. Michael Harvey
Date: 2020.02.11 12:55:30 -05'00'

UNITED STATES MAGISTRATE JUDGE

2

# ATTACHMENT A

## I. The Account(s)

The Order applies to certain records and other information for any Ntrepid, LLC ("PROVIDER") account associated with the subscriber  and any preserved data and/or preservation numbers associated therewith.

## II. Records and other information to be disclosed

### A. Information about the customer or subscriber of the Account(s)

PROVIDER is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Account(s)") constituting information about the customer or subscriber of the Account(s):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Length of service (including start date) and types of service utilized;

4. Other subscriber numbers or identities (including the registration IP address), including any current or past accounts linked to the Account(s) by telephone number, recovery or alternate e-mail address, IP address, or other unique device or user identifier; and

5. Means and source of payment for such service (including any credit card or bank account number) and billing records.

### B. All records and other information relating to the Account(s) (except the contents of communications)

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) for the time period from account inception to the

present.

1. All correspondence between Ntrepid, LLC (including its employees, officers, and contractors) and ▓▓▓▓▓▓ (including its employees, officers, and contractors), including, but not limited to, electronic communication (email, social media and instant messaging), attachments, presentations, proposals, requests for quotes and contracts, contracts, memorandum, agreements (including with U.S. and foreign governments and secrecy/privacy documents), and instant messages;

2. All financial records (draft or otherwise) pertaining to ▓▓▓▓▓▓ including but not limited to, transactional information, wire transfers, contracts, ledgers, spreadsheets, income projections, revenue projections, financial costs and liabilities, insurance records, contracts (draft or final), payments, account records, tax information, and bonus information and incentives;

3. All records of services and products provided, offered or proposed to or by ▓▓▓▓▓▓ including, but not limited to, bills, invoices, receipts, descriptions of services or product abilities and limitations, proposals, and technical capabilities;

4. Technical data and description of services and products provided to or by ▓▓▓▓▓▓

5. All export applications and licenses sought or approved for ▓▓▓▓▓▓ or associated companies; and

6. Oral information provided by ▓▓▓▓▓▓ employees.

PROVIDER is further authorized to provide such information (but not the content of ▓▓▓▓▓▓ communications provided by PROVIDER) to the United States in oral testimony, in court proceedings (including grand jury proceedings), or in preparation for any such proceeding.

None of the foregoing requests authorize PROVIDER to disclose the contents of any ▓▓▓▓▓▓ communications constituting use of the SUBJECT ACCOUNT, and PROVIDER is directed not to provide the contents of any such communications.