# ATTACHMENT

# A

*Redacted Docket Materials*

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 20-SC-648 |
| THREE ACCOUNTS STORED AT PREMISES CONTROLLED BY APPLE INC.  PURSUANT TO 18 U.S.C. 2703 | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

THREE ACCOUNTS STORED AT PREMISES CONTROLLED BY APPLE INC.  PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 794.

located in the            Northern            District of            California            , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sec. 794(a) | Delivering National Defense Information to Representatives of a Foreign Government |
| 18 U.S.C. Sec. 794(c) | Conspiracy to do the same |

The application is based on these facts:

See the attached Affidavit (incorporated by reference)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the ██████████.

████████████████████████

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____Telephone_____ *(specify reliable electronic means).*

Date:    03/26/2020

_____
*Judge's signature*

City and state:  Washington, D.C.

Magistrate Judge Robin M. Meriweather
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☑ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  20-SC-648 |
| THREE ACCOUNTS STORED AT PREMISES CONTROLLED BY APPLE INC. PURSUANT TO 18 U.S.C. 2703 | ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the      Northern      District of      California
*(identify the person or describe the property to be searched and give its location)*:

    See Attachment A (incorporated by reference)

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

    See Attachment B (incorporated by reference).

**YOU ARE COMMANDED** to execute this warrant on or before      April 9, 2020      *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to      Robin M. Meriweather      .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of      _____      .

Date and time issued:   03/26/2020

City and state:      Washington, D.C.

*Judge's signature*

MAGISTRATE JUDGE ROBIN M. MERIWEATHER
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br> 20-SC-648 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

 

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A
## Property to Be Searched

This warrant applies to information which is associated with the Apple Inc. iCloud account(s) identified by Apple ID: ███████████████, DSID: ████████; Apple ID ████████████████, DSID: █████████; Apple ID ██████████████████, DSID: ████████ and which is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company that accepts service of legal process at which accepts process at 1 Infinite Loop, Cupertino, California 95014.

## ATTACHMENT B

### Particular Things to be Seized and Procedures
### to Facilitate Execution of the Warrant

**I.** **Information to be disclosed by Apple, Inc**. **("PROVIDER") to facilitate execution of the warrant**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber

Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

      c.      The contents of all emails associated with the account from August 1, 2019, to present, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

      d.      The contents of all instant messages associated with the August 1, 2019, to present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

      e.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g. All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h. All records pertaining to the types of service used;

i. All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within fourteen (14) days of issuance of this warrant.

**II.    Information to be seized by the government**

All information described above in Section I that constitutes evidence, and instrumentalities of violations of 18 U.S.C. § 794(a), (c) as described in the affidavit submitted

in support of this Warrant, including, for each Account, information pertaining to the following matters:

(a) Information that constitutes evidence of the identification or location of the user(s) of the Account;

(b) Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

(c) Information that constitutes evidence indicating the Account user's or co-conspirators' states of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

(d) Information that constitutes evidence concerning how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user;

(e) Information that constitutes evidence concerning the transmission of classified national defense information to a faction within a foreign country and to a citizen thereof with the intent or reason to believe that it was to be used to the injury of the United States, or to the advantage of a foreign nation, and attempted and conspired to do so.

### III.    Government procedures for warrant execution

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court.  Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

      I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by _____ ("PROVIDER"), and my title is _____. I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER.  The attached records consist of:

_____

[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

      I further state that:

      a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

      b.     such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

            1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

            2.     the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

      I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____

Date                                    Signature

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THREE ACCOUNTS STORED AT PREMISES CONTROLLED BY APPLE INC. PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 794.**

**No. 20-SC-648**

**Filed Under Seal**

*Reference:*    *USAO Ref. #* ███████   *Subject Account(s):* Apple ID: ██████████████████, DSID: ███████; Apple ID ███████████████, DSID: ███████; Apple ID ███████████, DSID: ███████

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jeremiah D. Frost, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant for information which is associated with three account[s] – that is, Apple ID: ██████████████████, DSID: ████████; Apple ID ███████████████, DSID: ████████, and Apple ID ████████████████, DSID: ████████ – which are stored at premises controlled by Apple Inc. I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. (hereafter "Apple" or "PROVIDER") to disclose to the government records and other information, including the contents of communications, associated with the above-listed Apple IDs that are stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at 1 Infinite Loop, Cupertino, CA. The information to be disclosed by Apple and searched by the government is described in the following paragraphs and in Attachments A and B.



3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. § 794(a), (c) have been committed by ███████████████████████████████ and ████████ ████████████████████████ or "co-conspirator"). There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes further described in Attachment B.

**JURISDICTION**

5. This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, the

criminal offenses under investigation began or were committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district. *See* 18 U.S.C. §§ 3238, 3239.

## **PROBABLE CAUSE**

6.      On or about ███████████, Special Agents with the FBI arrested ███████████ pursuant to a sealed complaint and arrest warrant filed with this Court ███████ charging ███████ with a single count of unlawfully Retaining National Defense Information in violation of 18 U.S.C. § 793(e). ███████ arrest followed an investigation that revealed ███████ s a contract linguist, and prior to arrest, was assigned to a ████████████████████████████ ███████ has been located at the facility in ████ since mid-December 2019. During ███████ time at the facility in ██████████ held a TOP SECRET U.S. Government security clearance and had access to TOP SECRET national defense information. To obtain this clearance, ███████ had to undergo a background investigation and sign certain non-disclosure and user agreements outlining the potential consequences of mishandling classified national defense information.

7.      On March 4, 2020, pursuant to an unsealed superseding complaint filed with this Court, ███████ was also charged with violations of 18 U.S.C. § 794(a), (c).

8.      Starting on or about ████████████████████ ████████████████████████████████████ ████ audit logs show a notable shift in ██████████ network activity on networked Department of Defense systems accredited to process and store information up to the SECRET level. A review of ██████████ activities on those government-owned systems showed that ███████ accessed information ███████ did not have a legitimate need to access. Specifically, from on or about December 30, 2019, to on or about February 10, 2020, ███████ accessed approximately 57 files



3

concerning eight human intelligence sources. These files contained classified national defense information including true names, personal identification data, background information, and photographs of the human sources, as well as operations cables detailing information the human sources provided to the United States government.

9.      During a court-authorized search of ███████████ living quarters ██████ on or about February 19, 2020, FBI special agents discovered a document concealed beneath ███████████ mattress in ███████████ living quarters containing handwritten content in ███████ ("the Note"). ███████████ living quarters are locked and ███████████ had exclusive use of the living quarters. FBI Agents reviewed a translation of the Note and confirmed it contains the true names of certain human assets ("Human Assets A, B, and C"). Specifically, the Note states that the named human assets were collecting information. The Note further instructs that the human assets' phones should be monitored and a named individual ("Target 1") should be warned. Agents confirmed that the human assets identified in the Note were, in fact, collecting information on behalf of the United States government. Further, the named individual to be warned (Target 1) is affiliated with a designated foreign terrorist organization and was, in fact, a target of the United States. Agents also confirmed that the Note contained national defense information classified at the SECRET level, meaning its unauthorized disclosure reasonably could be expected to cause serious damage to the national security. ███████████ living quarters were not an authorized location for the storage of classified national defense information.

10.     Further, network activity logs show that on two consecutive days in January 2020, ███████████ accessed two separate intelligence reports regarding one of the human assets identified in true name in the Note (Human Asset A). Both reports had clear classification markings noting that the reports themselves and Human Asset A's identity information were classified at the SECRET level.

11. Following ███████ arrest in ████████████ provided a series of statements to the FBI after she was advised of her Miranda rights, and she knowingly and voluntarily waived those rights. During those statements, as further described in paragraph 15, infra, ███████████ mitted to passing the national defense information contained in the Note, which ██████████ admitted contained information classified at the SECRET level, to ████████████ explained that she had a romantic interest in ████████ and that ████████████ provided the information in the Note to ████ at his request. Investigation has revealed that ███████ is a ████████ national located outside of the United States.

12. When asked to describe the ████████ affiliations, ████████████ stated that:



He never told me, "I am with this," or "I am with this." He never told me. That's why I – I cannot, you know, tell you he is from ██████████ . And I will be - you know -you will say, "she is lying," or he - she - "He is in ████████ . . Oh, she is lying."

Interviewer: if he is not with i████████ then – then who is he with?

████████████ : ████████████████████████████████ . . Because his two . . .

Interviewer: And -and it's one of the two?

████████████ : Yeah, one of the two. - They are the same.

Interviewer: I just, I need you to understand that in providing him that information. . . you knew . . . or it's the understanding –

████████████ : I didn't know. No, no, no, no. I didn't know -- because I don't know with whom he is affiliated . . . . You know, I mean, if he is - if he is related with somebody – discovered

that he is related with – uh - with organization. I am telling you, he is with ██████████████
but, uh, I- no he never told me. I didn't know. I didn't know with - I - you know - I think he is -
- Maybe ████████████████ Because most of the people over there were ████████
████████ and entered from the – the you know – from kind of the people in – in the area
where they live.

13.     ██████████ also stated that ████████ had influence because ████████ worked for the
████████████████████████████████████ then made the following additional
statements regarding the relationship between ██████████████████████████



14.     When asked to explain her understanding of ████████████████ stated that
████████████████████████████████████████████████████████████████

15. During ████████ initial post-Miranda interview, ████████ explained that she had relayed the classified national defense information in the Note to ████████ memorizing the classified information that she had viewed, writing it down, and then using the video feature of a secure direct messaging application on her cellular phone to transmit her notes of the classified information to ████████

16. Pursuant to pen register and trap and trace ("PRTT") orders issued by the Court pursuant to 18 U.S.C. §§3122 and 3123, the FBI was able to view regular contact between the WhatsApp account associated wit ████████ (+████████), and the WhatsApp account associated with ████████ (+████████).

17. On or about February 26, 2020, pursuant to a law enforcement emergency request under 18 U.S.C. § 2702, Apple Inc. provided iCloud data from ████████ iCloud account that was linked to his WhatsApp account. That data included an image of an apparent screenshot of a WhatsApp video chat between ████████ In the screenshot, ████████ s displaying a handwritten ████████ note (the "Second Note") to ████████ that describes the technique several of the named human assets were using to gather information. Significantly, the Second Note, captured in a screenshot, identifies by name a human asset (Human Asset D) who was not named in the Note found under ████████ bed. The Second Note contains the true names of Human Asset A, Human Asset D, and Human Asset E. Based on ████████ prior training, and as confirmed in her post-Miranda interview statements, ████████ understood such information to be classified at the SECRET level, meaning its unauthorized disclosure reasonably could be expected to cause serious damage to the national security. The FBI has confirmed that Human Asset D was also providing information to the

7

United States government. Wh█████████was confronted with the image of the Second Note, she admitted that the image captured her relaying information to █████sing the WhatsApp messaging video function on her cellular phone. During this portion of the interview, █████████cknowledged she could be viewed a █████ource.

18. Data obtained from █████WhatsApp account also showed an image that read █████████████████ The image was used as the "cover image" for a grou██████ad joined through WhatsApp. Review of █████ iCloud account Apple ID: █████████, DSID: █████ received pursuant to a second February 26, 2020, law enforcement emergency request under 18 U.S.C. § 2702, revealed photograph█████████ █████████████ stored in ██-█ account.

19. The data the FBI obtained from █████iCloud account also contained a screenshot of an image of an electronic device (the "Image") displaying detailed information that Human Asset D had provided to the United States government regarding a member of a foreign terrorist organization who was being targeted by the United States ("Target 2"). This information was similar to the information contained in the Note that was concealed beneath █████████mattress. Like that Note, the Image contained information provided by a U.S. human asset (here Human Asset D), which described classified national defense information at the SECRET level regarding Target 2. Unauthorized disclosure of the information in the Image reasonably could be expected to cause serious damage to the national security.

20. When confronted with the Image of the classified national defense information that was provided by Human Asset D regarding Target 2, █████████enied transmitting the Image to █████ █████

21.     Based on my training and experience, and information provided to me by other law enforcement agents, I know that searches of electronic devices, digital media, and personal papers usually provide additional and more in depth information than would be obtained from other means. Further, the investigation to date has established that ███████████ used both physical (i.e. handwritten notes) and electronic (i.e. WhatsApp and a cellular phone) to gather and transmit classified national defense information to ████████ and that evidence of the offense was stored on ██████████ ICloud account.

22.     Your affiant submits that the facts set forth in this affidavit establish probable to believe ████████ knowingly and willfully transmitted classified and national defense information to ████████ a member of a faction within a foreign country and to a citizen thereof with the intent or reason to believe that it was to be used to the injury of the United States, or to the advantage of a foreign nation, and attempted and conspired to do so, in violation of 18 U.S.C. § 794(a), (c), and that evidence of such exists on the accounts maintained by PROVIDER. Accordingly, there is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes further described in Attachment B. On February 26, 2020, PROVIDER was served with a preservation letter under 18 U.S.C. § 2703(f) related to Apple ID: ████████████, DSID: ████████; and Apple ID ████████████, DSID: ████████. On March 9, 2020, PROVIDER was served with a preservation letter under 18.U.S.C. § 2703(f) related to Apple ID: ████████████, DSID: ████████.

23.     Apple is the provider of the internet-based account(s) identified by Apple ID: ████████████, DSID: ████████; Apple ID ████████████, DSID: ████████; and Apple ID ████████████, DSID: ████████.

## INFORMATION REGARDING APPLE ID AND iCLOUD[1]

24.     PROVIDER is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

25.     PROVIDER provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

    a.     PROVIDER provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

    b.     iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

    c.     iCloud is a file hosting, storage, and sharing service provided by PROVIDER.  iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

    d.     iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For

---

[1]     The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at ██████████████████████████

example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

       e.      Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

       f.      Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

       g.      Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

       h.      App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased

through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

26. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

27. An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

28. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

29.     Additional information is captured by PROVIDER in connection with the use of an Apple ID to access certain services.  For example, PROVIDER maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by PROVIDER.

30.     PROVIDER also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

31.     PROVIDER provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents,

spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

32.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

33.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. For example, information located in ▮▮-▮▮ ICloud account pursuant to the February 26, 2020, emergency request under 18 U.S.C. § 2702 revealed that ▮▮▮▮▮▮ had transmitted classified information to ▮▮-▮▮.

34.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user

attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

35. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

36. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. As discussed above, the investigation has already revealed that ▮▮▮▮▮▮ and ▮▮-▮ used WhatsApp to exchange encoded messages with each other. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of additional co-conspirators and instrumentalities of the crimes under investigation, and reveal additional information regarding ▮▮▮▮▮▮ and ▮▮-▮▮ state of mind and ideology.

15

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

37.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

38.    Based on the forgoing, I request that the Court issue the proposed search warrant.

39.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

40.    The government will execute this warrant by serving the warrant on Apple.  Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,



Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on March 26, 2020.

_____
ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) |
| THREE ACCOUNTS STORED AT PREMISES CONTROLLED BY APPLE INC.  PURSUANT TO 18 U.S.C. 2703 | ) ) ) |

Case No. 20-SC-648

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

THREE ACCOUNTS STORED AT PREMISES CONTROLLED BY APPLE INC.  PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 794.

located in the      Northern      District of      California     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sec. 794(a) | Delivering National Defense Information to Representatives of a Foreign Government |
| 18 U.S.C. Sec. 794(c) | Conspiracy to do the same |

The application is based on these facts:

See the attached Affidavit (incorporated by reference)

☑ Continued on the attached sheet.

❒ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on t▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ Telephone _____ *(specify reliable electronic means)*.

Date: _____ 03/26/2020 _____

2020.03.26 16:00:32 -04'00'

*Judge's signature*

City and state: Washington, D.C.

Magistrate Judge Robin M. Meriweather
*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>THREE ACCOUNTS STORED AT PREMISES<br>CONTROLLED BY APPLE INC. PURSUANT TO 18<br>U.S.C. 2703 | )<br>)<br>)  Case No.  20-SC-648<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ___Northern___ District of ___California___
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference)

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference).

**YOU ARE COMMANDED** to execute this warrant on or before ___April 9, 2020___  *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Robin M. Meriweather___ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  ___03/26/2020___

2020.03.26
16:01:12 -04'00'

*Judge's signature*

City and state:  ___Washington, D.C.___

MAGISTRATE JUDGE ROBIN M. MERIWEATHER
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>20-SC-648 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____


_____
*Executing officer's signature*


_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information which is associated with the Apple Inc. iCloud account(s) identified by Apple ID: ████████████████, DSID: ████████; Apple ID ████████████████, DSID: ████████; Apple ID ████████████████, DSID: ████████ and which is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company that accepts service of legal process at which accepts process at 1 Infinite Loop, Cupertino, California 95014.

**ATTACHMENT B**

**Particular Things to be Seized and Procedures
to Facilitate Execution of the Warrant**

I.     **Information to be disclosed by Apple, Inc**. **("PROVIDER") to facilitate execution
       of the warrant**

To the extent that the information described in Attachment A is within the possession,

custody, or control of Apple, regardless of whether such information is located within or outside

of the United States, including any messages, records, files, logs, or information that have been

deleted but are still available to Apple, or have been preserved pursuant to a request made under

18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in

unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.     All records or other information regarding the identification of the account, to

include full name, physical address, telephone numbers, email addresses (including primary,

alternate, rescue, and notification email addresses, and verification information for each email

address), the date on which the account was created, the length of service, the IP address used to

register the account, account status, associated devices, methods of connecting, and means and

source of payment (including any credit or bank account numbers);

b.     All records or other information regarding the devices associated with, or used in

connection with, the account (including all current and past trusted or authorized iOS devices and

computers, and any devices used to access Apple services), including serial numbers, Unique

Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers

("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers

("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"),

Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber

1

Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.    The contents of all emails associated with the account from August 1, 2019, to present, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.    The contents of all instant messages associated with the August 1, 2019, to present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.    The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

2

f.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.      All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.      All records pertaining to the types of service used;

i.      All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within fourteen (14) days of issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence, and instrumentalities of violations of 18 U.S.C. § 794(a), (c) as described in the affidavit submitted

in support of this Warrant, including, for each Account, information pertaining to the following matters:

    (a) Information that constitutes evidence of the identification or location of the user(s) of the Account;

    (b) Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

    (c) Information that constitutes evidence indicating the Account user's or co-conspirators' states of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

    (d) Information that constitutes evidence concerning how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user;

    (e) Information that constitutes evidence concerning the transmission of classified national defense information to a faction within a foreign country and to a citizen thereof with the intent or reason to believe that it was to be used to the injury of the United States, or to the advantage of a foreign nation, and attempted and conspired to do so.

4

### III. Government procedures for warrant execution

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## RECORDS PURSUANT TO FEDERAL RULES OF
### EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by _____ ("PROVIDER"), and my title is _____.
I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER.  The attached records consist of:

_____

[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.      such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.


_____        _____
Date                                                    Signature

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THREE ACCOUNTS STORED AT PREMISES CONTROLLED BY APPLE INC.  PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 794.** | **No. 20-SC-648**  <br><br> <u>**Filed Under Seal**</u> |

*Reference:*     *USAO Ref. #* ███████████ *Subject Account(s):* Apple ID: ████████████████████, DSID: ███████████; Apple ID ████████████████, DSID: ███████████; Apple ID ████████████████, DSID: ███████████

# AFFIDAVIT IN SUPPORT OF
# <u>AN APPLICATION FOR A SEARCH WARRANT</u>

I, Jeremiah D. Frost, being first duly sworn, hereby depose and state as follows:

## <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      I make this affidavit in support of an application for a search warrant for information which is associated with three account[s] – that is, Apple ID: ████████████████, DSID: ████████; Apple ID ████████████████████, DSID: ████████, and Apple ID ████████████████, DSID: ████████ – which are stored at premises controlled by Apple Inc. I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. (hereafter "Apple" or "PROVIDER") to disclose to the government records and other information, including the contents of communications, associated with the above-listed Apple IDs that are stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at 1 Infinite Loop, Cupertino, CA.  The information to be disclosed by Apple and searched by the government is described in the following paragraphs and in Attachments A and B.



3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. § 794(a), (c) have been committed by ████████████████████████████████████ and ████████ ████████████████████████ or "co-conspirator").  There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes further described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, the

criminal offenses under investigation began or were committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district. *See* 18 U.S.C. §§ 3238, 3239.

## **PROBABLE CAUSE**



6.      On or about February 27, 2020, Special Agents with the FBI arrested ▮▮▮▮▮▮ pursuant to a sealed complaint and arrest warrant filed with this Court (20-mj-00036) charging ▮▮▮▮▮▮ with a single count of unlawfully Retaining National Defense Information in violation of 18 U.S.C. § 793(e). ▮▮▮▮▮▮ arrest followed an investigation that revealed ▮▮▮▮▮▮ is a contract linguist, and prior to arrest, was assigned to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮. ▮▮▮▮▮▮ has been located at the facility in ▮▮▮ since mid-December 2019. During ▮▮▮▮▮▮ time at the facility in ▮▮▮, ▮▮▮▮▮▮ held a TOP SECRET U.S. Government security clearance and had access to TOP SECRET national defense information. To obtain this clearance, ▮▮▮▮▮▮ had to undergo a background investigation and sign certain non-disclosure and user agreements outlining the potential consequences of mishandling classified national defense information.

7.      On March 4, 2020, pursuant to an unsealed superseding complaint filed with this Court, ▮▮▮▮▮▮ was also charged with violations of 18 U.S.C. § 794(a), (c).

8.      Starting on or about December 30, 2019, a day after U.S. airstrikes against ▮▮▮▮▮▮ backed forces in ▮▮▮ and the day before protesters stormed the U.S. embassy in ▮▮▮, to protest those strikes, audit logs show a notable shift in ▮▮▮▮▮▮ network activity on networked Department of Defense systems accredited to process and store information up to the SECRET level. A review of ▮▮▮▮▮▮ activities on those government-owned systems showed that ▮▮▮▮▮▮ accessed information ▮▮▮▮▮▮ did not have a legitimate need to access. Specifically, from on or about December 30, 2019, to on or about February 10, 2020, ▮▮▮▮▮▮ accessed approximately 57 files

3

concerning eight human intelligence sources. These files contained classified national defense information including true names, personal identification data, background information, and photographs of the human sources, as well as operations cables detailing information the human sources provided to the United States government.

9.     During a court-authorized search of ███████ living quarters in ███ on or about February 19, 2020, FBI special agents discovered a document concealed beneath ███████ mattress in ███████ living quarters containing handwritten content in ███████ ("the Note"). ███████ living quarters are locked and ███████ had exclusive use of the living quarters. FBI Agents reviewed a translation of the Note and confirmed it contains the true names of certain human assets ("Human Assets A, B, and C"). Specifically, the Note states that the named human assets were collecting information. The Note further instructs that the human assets' phones should be monitored and a named individual ("Target 1") should be warned. Agents confirmed that the human assets identified in the Note were, in fact, collecting information on behalf of the United States government. Further, the named individual to be warned (Target 1) is affiliated with a designated foreign terrorist organization and was, in fact, a target of the United States. Agents also confirmed that the Note contained national defense information classified at the SECRET level, meaning its unauthorized disclosure reasonably could be expected to cause serious damage to the national security. ███████ living quarters were not an authorized location for the storage of classified national defense information.

10.     Further, network activity logs show that on two consecutive days in January 2020, ███████ accessed two separate intelligence reports regarding one of the human assets identified in true name in the Note (Human Asset A). Both reports had clear classification markings noting that the reports themselves and Human Asset A's identity information were classified at the SECRET level.

11.     Following ████████ arrest in ████, ███████ provided a series of statements to the FBI after she was advised of her Miranda rights, and she knowingly and voluntarily waived those rights. During those statements, as further described in paragraph 15, infra, █████████ admitted to passing the national defense information contained in the Note, which ████████ admitted contained information classified at the SECRET level, to ██████. █████████ explained that she had a romantic interest in ███████, and that █████████ provided the information in the Note to ████ ████ at his request. Investigation has revealed that ██████ is a Lebanese national located outside of the United States.



Interviewer: if he is not with ████████ then – then who is he with?

████████ : ████████████████████ . . . Because his two . . .

Interviewer: And -and it's one of the two?

████████ : Yeah, one of the two. - They are the same.

Interviewer: I just, I need you to understand that in providing him that information. . . you knew . . . or it's the understanding –

████████ : I didn't know. No, no, no, no. I didn't know -- because I don't know with whom he is affiliated . . . . You know, I mean, if he is - if he is related with somebody – discovered

5

that he is related with – uh - with organization. I am telling you, he is with ██████████████ but, uh, I- no he never told me. I didn't know. I didn't know with - I - you know - I think he is - - Maybe ███████████████? Because most of the people over there were ████████ ████████ and entered from the – the you know – from kind of the people in – in the area where they live.

13.      ████████████ also stated that ████████ had influence because ███████████████████ ███████████████████████████ ████████████ then made the following additional statements regarding the relationship between ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████



15.     During ███████ initial post-Miranda interview, ███████ explained that she had relayed the classified national defense information in the Note to the ███████ by memorizing the classified information that she had viewed, writing it down, and then using the video feature of a secure direct messaging application on her cellular phone to transmit her notes of the classified information to the ███████.

16.     Pursuant to pen register and trap and trace ("PRTT") orders issued by the Court pursuant to 18 U.S.C. §§3122 and 3123, the FBI was able to view regular contact between the WhatsApp account associated with ███████ (+███████), and the WhatsApp account associated with ███ (+███████).

17.     On or about February 26, 2020, pursuant to a law enforcement emergency request under 18 U.S.C. § 2702, Apple Inc. provided iCloud data from ███████ iCloud account that was linked to his WhatsApp account. That data included an image of an apparent screenshot of a WhatsApp video chat between ███████ and ███ In the screenshot, ███████ is displaying a handwritten note (the "Second Note") to ███████ that describes the technique several of the named human assets were using to gather information. Significantly, the Second Note, captured in a screenshot, identifies by name a human asset (Human Asset D) who was not named in the Note found under ███████ bed. The Second Note contains the true names of Human Asset A, Human Asset D, and Human Asset E. Based on ███████ prior training, and as confirmed in her post-Miranda interview statements, ███████ understood such information to be classified at the SECRET level, meaning its unauthorized disclosure reasonably could be expected to cause serious damage to the national security. The FBI has confirmed that Human Asset D was also providing information to the

United States government. When ███████ was confronted with the image of the Second Note, she admitted that the image captured her relaying information to ███ using the WhatsApp messaging video function on her cellular phone. During this portion of the interview, ███████ acknowledged she could be viewed as ███████ source.

18.     Data obtained from ███████ WhatsApp account also showed an image that read ████████████████████ The image was used as the "cover image" for a group ████ had joined through WhatsApp. Review of ███████ iCloud account Apple ID: ████████████████, DSID: ███████ received pursuant to a second February 26, 2020, law enforcement emergency request under 18 U.S.C. § 2702, revealed photographs of ████████ ████████████████ stored in ███████ account.



19.     The data the FBI obtained from ███████ iCloud account also contained a screenshot of an image of an electronic device (the "Image") displaying detailed information that Human Asset D had provided to the United States government regarding a member of a foreign terrorist organization who was being targeted by the United States ("Target 2"). This information was similar to the information contained in the Note that was concealed beneath ████████ mattress. Like that Note, the Image contained information provided by a U.S. human asset (here Human Asset D), which described classified national defense information at the SECRET level regarding Target 2. Unauthorized disclosure of the information in the Image reasonably could be expected to cause serious damage to the national security.

20.     When confronted with the Image of the classified national defense information that was provided by Human Asset D regarding Target 2, ███████ denied transmitting the Image to ███ ██.

21.     Based on my training and experience, and information provided to me by other law enforcement agents, I know that searches of electronic devices, digital media, and personal papers usually provide additional and more in depth information than would be obtained from other means. Further, the investigation to date has established that ███████ used both physical (i.e. handwritten notes) and electronic (i.e. WhatsApp and a cellular phone) to gather and transmit classified national defense information to ███████ and that evidence of the offense was stored on ███████ ICloud account.

22.     Your affiant submits that the facts set forth in this affidavit establish probable to believe ███████ knowingly and willfully transmitted classified and national defense information to ███ ███, a member of a faction within a foreign country and to a citizen thereof with the intent or reason to believe that it was to be used to the injury of the United States, or to the advantage of a foreign nation, and attempted and conspired to do so, in violation of 18 U.S.C. § 794(a), (c), and that evidence of such exists on the accounts maintained by PROVIDER.  Accordingly, there is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes further described in Attachment B. On February 26, 2020, PROVIDER was served with a preservation letter under 18 U.S.C. § 2703(f) related to Apple ID: ███████, DSID: ███████; and Apple ID ███████, DSID: ███████. On March 9, 2020, PROVIDER was served with a preservation letter under 18.U.S.C. § 2703(f) related to Apple ID: ███████, DSID: ███████.

23.     Apple is the provider of the internet-based account(s) identified by Apple ID: ███████, DSID: ███████; Apple ID ███████, DSID: ███████; and Apple ID ███████, DSID: ███████.

## INFORMATION REGARDING APPLE ID AND iCLOUD[1]

24.     PROVIDER is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

25.     PROVIDER provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

      a.     PROVIDER provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

      b.     iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

      c.     iCloud is a file hosting, storage, and sharing service provided by PROVIDER.  iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

      d.     iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For

---

[1]     The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

        e.      Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

        f.      Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

        g.      Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

        h.      App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased

through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

26.     Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services.  A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

27.     An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed.  Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address.   Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

28.     Apple captures information associated with the creation and use of an Apple ID.  During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website.   In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

29.     Additional information is captured by PROVIDER in connection with the use of an Apple ID to access certain services.  For example, PROVIDER maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by PROVIDER.

30.     PROVIDER also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

31.     PROVIDER provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents,

13

spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

32.      In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

33.      For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. For example, information located in ██████████ iCloud account pursuant to the February 26, 2020, emergency request under 18 U.S.C. § 2702 revealed that ██████████ had transmitted classified information to ██████████

34.      In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user

attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

35.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

36.     Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. As discussed above, the investigation has already revealed that ██████████ and ███████ used WhatsApp to exchange encoded messages with each other. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of additional co-conspirators and instrumentalities of the crimes under investigation, and reveal additional information regarding ███████ and ████████ state of mind and ideology.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

37.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

38.     Based on the forgoing, I request that the Court issue the proposed search warrant.

39.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

40.     The government will execute this warrant by serving the warrant on Apple. Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on March 26, 2020.

2020.03.26 16:01:44
-04'00'
_____
ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE