# ATTACHMENT

# A

*Redacted Docket Materials*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR NINE EMAIL ACCOUNT(S) SERVICED BY OATH FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 1956 | SC No. 20-92 <br><br> **Filed Under Seal** |



*Reference:*   USAO Ref. ███████████   *Subject Account(s):* █████████████; █████████; ████████; ████████; █████████; ███████; **; and**

## AMENDED APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Oath Holdings, Inc. ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Sunnyvale, California, to disclose certain records and other information pertaining to the PROVIDER account(s) associated with

███████████; ████████████; █████████████;

████████████; █████████████; █████████████;

███████████; ████████████; and ████████████, as set forth in

Part I of Attachment A to the proposed Order, within ten days of receipt of the Order. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

### LEGAL BACKGROUND AND JURISDICTION

1.      PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require

PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2.     This Court has jurisdiction to issue the requested Order because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(d). Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

3.     As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC. *See* 18 U.S.C. § 3237.

4.     A court order under section 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## RELEVANT FACTS

5.     The United States is investigating the illicit transfer of ███ petroleum to third party countries in violation against sanctions against ███, and the payment of these shipments in U.S. dollars, which would require a license from the Department of Treasury Office of Foreign Assets Control (OFAC), which is located in the District of Columbia. The investigation concerns possible violations of 18 U.S.C. § 1956.

6.     Law enforcement is aware that a ███ company ("███ Company 1") operates a fleet of tankers. Several of their tankers have shipped petroleum to and from ███ and received

corresponding U.S. dollar payments. One of these tankers is the ████████████ ████████. Law enforcement tracked this tanker's movements using its Automatic Identification System ("AIS")[1], and confirmed that it had travelled to ███ on multiple occasions between 2016 and 2017. Subpoena returns revealed U.S. dollar payments that referenced the ████. The parties failed to seek or obtain a license from the Treasury Department, which is located in Washington, D.C., for these payments.

7. The managing director of ████ Company 1 confirmed to a news publication that the ████ was sold to an ████████ company named ██████████ ("████") on or about ██ ████ Financial records revealed that the U.S. bank which processed the sale of the ████ to ██ for approximately ██████████ as froze the transactions for possible sanction compliance / anti-money laundering reasons.

8. Law enforcement is aware from public corporate registry information that ███ was created around the time that it purchased the ████. Statements on ████ website, and the large cost associated with purchasing a petroleum tanker, leads law enforcement to believe this company was created on behalf of third party companies for the express purpose of conducting this transaction.

9. Registration information from ████ website on October 23, 2019 shows that the contact information for ███ was redacted using a privacy service, indicating an intent to hide the ultimate beneficial owner of the company.

10. Subpoena returns from the company that registered ████ domain show that the website was created on August 24, 2019 by an employee of ███████████████

---

[1] AIS was developed in the 1990s as a maritime safety feature which exchanges vessel information electronically with other nearby ships. The system is used by marine navigation officers and other maritime authorities for collision avoidance, identification and vessel locational data. AIS acts like a transponder that transmits ship's location information (based on GPS) via a VHF radio.

███████████████████████████ This date closely aligns to when ██ purchased the ████. The website confirms that ██ owns the ████ and claims that ██ is located in ████, not ████. Law enforcement was unable to find any information corroborating whether this company was registered in ████ or ████, leading law enforcement to believe that this company may not have been registered in either location.

11.     Additionally, the sale appears to be designed to camouflage the ultimate beneficiary, consistent with money laundering. For example, the ████ website indicates that the company is cooperating with an Indian company named ███████████████████████ ████████████ which is listed as the manager of the ████. A corporate registry database revealed business records showing ████████ has a common director with ████████. As described previously, ████████ registered ████ domain.

12.     ██ lists its address as a P.O. Box in ████, according to its website. A company named ████████████████████████████ is located at this same P.O. Box in ████. A cached version of ████████ website lists that it attends mining exhibits in both ████ and ██, which appears consistent with ████ line of business.

13.     Subpoena returns from LinkedIn revealed that many of the ████ LinkedIn company profiles and employee profiles were accessed from ████ or listed a location as ██, despite publicly claiming to be located in ████.

14.     Law enforcement also discovered a business listing for ███████████████ ██████████████████████ which lists the ████ website and an address in ██, leading law enforcement to believe that ████ maintains an office in ██.

15.     ████████████████████████████ is a corporate entity that lists the same P.O. Box in ████ as ██ and ████████. Law enforcement believes ████████ is

4

part of the same business group based in part on this shared address. A reliable confidential source revealed that ██████ nationa ██████████ previously listed himself as the marketing manager of ████████████, further confirming this company group's connection to ██.

## TARGET ACCOUNTS

16. ██████████████████ ("Target Account 1") – On a separate business listing, ██████████ lists email address Target Account 1 as its contact email address. Subpoena returns for subscriber information show that the user of this account listed his country as ██ and the verified phone number had an ████ country code. The login activity for this account shows that it was accessed from ████ and ██ in November 2019.

17. ██████████████████ ("Target Account 2") – Subpoena returns for subscriber information for Target Account 1 revealed Target Account 2 as the alternate email address.

18. ████████████████████ ("Target Account 3") – ██████████ domain. ██████████ used a privacy protection service to prevent third parties from learning the operator of the domain. Subpoena returns from the privacy protection service for this domain revealed that an individual used Target Account 3 when creating the ████████ domain.

19. ██████████████████ ("Target Account 4") – Subscriber information for the ██ ████████ domain from the privacy protection service lists the payments made by the owner of the domain. One such payments was for business email services, leading law enforcement to believe that the owners of ██ are using Target Account 4 for email services hosted by the privacy protection service.

20. ████████████████████████ ("Target Account 5") – An individual named ██████ lists himself as the owner and chairman of ████████ on LinkedIn. As noted above, ████████ is affiliated with ██. Subpoena returns from LinkedIn provided subscriber

information for this LinkedIn account, including that it was registered using Target Account 5.

21. ▮▮▮▮▮▮▮▮▮▮ (**"Target Account 6"**) – Subpoena returns from the provider of Target Account 5 revealed that ▮▮▮▮ listed Target Account 6 as his recovery email account. Additionally, law enforcement is aware that the username of this email account alludes to being used by the CEO of the ▮▮▮▮▮▮▮▮▮▮▮

22. ▮▮▮▮▮▮▮▮ (**"Target Account 7"**) – Law enforcement discovered a LinkedIn profile for the CEO of ▮▮▮▮. Subpoena returns revealed that this LinkedIn profile used Target Account 7 to register this account.

23. ▮▮▮▮▮▮▮▮ (**"Target Account 8"**) – An individual named ▮▮ ▮▮▮ lists himself as the CEO of ▮▮▮▮ on LinkedIn. This LinkedIn user lists his location as ▮▮; however, the subpoena returns from LinkedIn profile revealed that his account was registered using an ▮▮ IP Address. On his LinkedIn page, ▮▮▮▮ also lists prior experience and education in ▮▮. Subpoena returns revealed that ▮▮▮▮ used Target Account 8 to register this LinkedIn account.

24. ▮▮▮▮▮▮▮▮ (**"Target Account 9"**) – Law enforcement discovered a LinkedIn profile for ▮▮▮▮ who lists himself as a crew manager at ▮▮▮▮. Subpoena returns revealed that ▮▮▮▮ used Target Account 9 to register this LinkedIn account.

25. ▮▮▮▮▮▮▮▮ (**"Target Account 10"**) – Law enforcement discovered a LinkedIn profile for ▮▮▮▮ who lists himself as a Director at ▮▮▮▮. Subpoena returns revealed that ▮▮▮▮ used Target Account 10 to register this LinkedIn account.

26. ▮▮▮▮▮▮▮▮▮ (**"Target Account 11"**) – Law enforcement discovered a LinkedIn profile for "▮▮▮▮▮ which was associated with a director of ▮▮▮▮. Subpoena returns revealed that this LinkedIn profile used Target Account 11 to

6

register this account.

27. ███████████████ ("**Target Account 12**") – Law enforcement discovered an additional LinkedIn profile for "███████████" Subpoena returns revealed that this LinkedIn profile used Target Account 12 to register this account. Target Account 12's user name is ███████████

28. ███████████████ ("**Target Account 13**") – Law enforcement discovered a LinkedIn profile for ███████ indicates that he is a Tanker Broker at ███ Company 1. Subpoena returns revealed that ███████ used Target Account 13 to register this LinkedIn account. As described previously, ███ Company 1 participated in the sale of the ███ to ███████

29. ███████████████ ("**Target Account 14**") – Subpoena returns from the U.S. company which provided insurance to the ████, revealed that ███ Company 2 was associated with the ████. ███ Company 2 is associated with ███ Company 1 based on a shared address. Publicly available AIS shows that the ████ travelled to ███ on multiple occasions. Law enforcement is aware that the Chartering Department often charts the voyages of tankers such as the ████. A LinkedIn profile for ███████████ shows that he is in the Chartering Department of ███ Company 2. Subpoena returns revealed that ███████████ used Target Account 14 to register this LinkedIn account.

30. ███████████████ ("**Target Account 15**") – Law enforcement discovered a LinkedIn profile for Shakeel Ahmed, who lists himself as a Managing Director at ██████ and a partner a ████████ The ██████ website lists ███████████████ ("███████") as its contact information for the ███████████ office. Subpoena returns revealed tha ███████████ used Target Account 15 to register this LinkedIn account.

7

31. ████████████████ ("**Target Account 16**") – As noted above, the ████████ website lists ████████ as its contact information for the ████████ office. The ████████ website lists Target Account 16 as being associated with ████████. The website notes the contact person for Target Account 16 is ████████

32. ████████████████ ("**Target Account 17**") – The ████████ website also lists Target Account 17 as being associated with ████████. The website notes the contact person for Target Account 17 is ████████ The ████████ website indicates that ████████ ████████ is the marine superintendent for ████████. Law enforcement is aware that a marine superintendent is often involved with a company's fleet and its voyages.

33. ████████████████ ("**Target Account 18**") – Law enforcement discovered a LinkedIn profile for ████████ who lists himself as the Technical Superintendent at ████████. Subpoena returns revealed that ████████ used Target Account 18 to register this LinkedIn account.

34. ████████████████ ("**Target Account 19**") – Law enforcement discovered a LinkedIn profile for ████████ which shows employment at ████████. As noted above ████████ is associated with ████████ and ██, and has an ████████ employee. Subpoena returns revealed that ████████ used Target Account 19 to register this LinkedIn account.

35. ████████████ ("**Target Account 20**") – Law enforcement discovered a LinkedIn profile for ████████ which lists employment at ████████. Subpoena returns revealed that ████████ used Target Account 20 to register this LinkedIn account.

36. ████████████████ ("**Target Account 21**") – Law enforcement discovered a LinkedIn profile for ████████████████ which shows employment at ████████

██████ Subpoena returns revealed that ████████████████ used Target Account 21 to register this LinkedIn account.

37.      █████████████████████ ("**Target Account 22**") – The ██████████ website also lists Target Account 22 as being associated with ███████, in addition to Target Account 16 and Target Account 17. The ████████ website also lists ████████████ as the contact person for Target Account 22 (as noted above, he is also the contact person for Target Account 16).

38.      ████████████████████ ("**Target Account 23**") - Law enforcement discovered that Target Account 23 is the listed contact address on business directory listings for ████████████ and ████████████ (which is noted above as the manager of the ███████). The subscriber name of this account is "████████."

<u>Role That Metadata Will Serve In Advancing the Investigation</u>

39.      Based on prior investigations, law enforcement is aware that criminal co-conspirators communicate frequently through private messages and email about their legitimate and illegitimate businesses, as well as the transfer of proceeds from such businesses. Private messages and email offer a uniquely valuable form for such communication, as they can be accessed from any location. Many such persons also believe that such messages are difficult to trace, which leads them to have inculpatory conversations.

40.      Moreover, persons operating international procurement operations typically have to communicate via email with persons funding their operations, due to the time differences involved, as well as limited phone access in certain regions of the world. When transferring funds to co-conspirators, electronic communications will normally occur to inform the other party that the money has been sent, followed up by communications that the money has been received. Law enforcement is also aware from prior investigations that subordinates in the management chain

9

must communicate to their superiors the status of their illegal tasks as well as receive new illegal tasks. Based on these facts, law enforcement believes that the subjects of the investigation are communicating via email.

41.     The header information of these communications can reveal the scope of the contacts between the money launderers/export control violators and who the important co-conspirators are. Multiple individuals and companies associated with the targets of this investigation have taken steps to obscure or anonymize their identities. Learning the header information from associated email accounts is likely to reveal persons within this network, including customers possibly in ██, as well as further identify any other users of the email account.

42.     Because criminals who communicate via email fear detection, they typically employ multiple fake identities, which is accomplished by creating numerous free email accounts. Part of managing this vast number of accounts often leads to the linking of recovery accounts. This allows a single user the ability to access as well as reset passwords for the multiple linked accounts. Law enforcement is aware that the tracking and detection of linked accounts is one way by which a person and/or co-conspirators can be identified. Moreover, the linking of a recovery account can further demonstrate who has access and/or control of an account.

43.     Learning the requested information will allow law enforcement to investigate these newly identified persons, and in some instances surveil and interview them. Identifying, surveilling, and interviewing these persons will advance the investigation of the subjects and their co-conspirators, by further revealing the scope of their activities, both legal and illegal.

## REQUEST FOR ORDER

44.     The facts set forth above show that there are reasonable grounds to believe that the

records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

45.     The United States further requests that the Order direct PROVIDER not to notify any person, including the subscriber or customer of each account listed in Part I of Attachment A, of the existence of the application of the United States or the Order for one year from the date of the Court's Order. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *See* 18 U.S.C. § 2705(b).[2]

46.     In this case, the proposed Order seeks information relevant to establishing the illegal activity under investigation and identifying the individual(s) responsible. Accordingly, disclosure may reveal the existence, scope, and direction of the United States's ongoing and confidential investigation. Once alerted to this investigation, potential target(s) could be

---

[2] The government relies on § 2705(b) to seek a preclusion-of-notice order because the government is requesting only non-content information pursuant to § 2703(d), an action which is authorized by § 2703(c). *See* 18 U.S.C. § 2703(c)(1)(B) ("governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when [it] . . . obtains a court order for such disclosure under subsection (d) of this section"). Under § 2703(c), the government has no obligation to notify the subscriber. *See* 18 U.S.C. § 2703(c)(3) ("governmental entity receiving records or information under this section is not required to provide notice to a subscriber or customer").

immediately prompted to destroy or conceal incriminating evidence, alter their operational tactics to avoid future detection, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote computing services, the potential target(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity. Notification could also result in the target(s) avoiding travel to the United States or other countries from which they may be extradited.

47.　　　Therefore, based on the foregoing, there are reasonable grounds to believe that notification of the existence of this Order would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2), (3), and (5).

48.　　　Given the complex nature of the criminal activity under investigation and likely involvement of foreign-based coconspirators and evidence, and also given that the criminal scheme may be ongoing, the United States anticipates that this confidential investigation will continue for the next year or longer.

49.　　　Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the proposed Order for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the United States will make best efforts to notify the Court promptly and seek appropriate relief.

50.　　　In this matter, the United States also requests that the instant Application and the Order be filed under seal. The Court has the inherent power to seal court filings when appropriate,

including the proposed Order.  *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980)

(citing *Nixon v. Warner Commn'ns, Inc.*, 435 U.S. 589, 598 (1978)).  More particularly, the Court

may seal the Application and Order to prevent serious jeopardy to an ongoing criminal

investigation when such jeopardy creates a compelling governmental interest in confidentiality.

*See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).  For the reasons stated

above, the United States has a compelling interest in confidentiality to justify sealing the

Application and Order.  *See id.*

Respectfully submitted,

JESSIE K. LIU
United States Attorney
DC Bar No. 472845


    /s/  Zia Faruqui
ZIA M. FARUQUI, D.C. Bar No. 494990
Assistant United States Attorney
555 Fourth Street, N.W., Room 4806
Washington, D.C. 20530
(202) 252-7117
Zia.Faruqui@USDOJ.Gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR NINE EMAIL ACCOUNT(S) SERVICED BY OATH FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 1956 | SC No. 20-92 <br><br> **Filed Under Seal** |

## ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Oath Holdings, Inc. ("PROVIDER"), an electronic communication and/or remote computing service provider located in Sunnyvale, California, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee or continue flight from prosecution, and destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(2), (3), and (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.


Date: _____          _____
                                   UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### I.   The Account(s)

The Order applies to certain records and other information for any Oath Holdings, Inc. ("PROVIDER") account(s) associated with the following identifier(s):



and any preserved data and/or preservation numbers associated therewith.

### II.   Records and other information to be disclosed

#### A.   Information about the customer or subscriber of the Account(s)

PROVIDER is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Account(s)") constituting information about the customer or subscriber of the Account(s):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Local and long distance telephone connection records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses);

7. Other subscriber numbers or identities (including the registration IP address), including any current or past accounts linked to the Account(s) by telephone number, recovery or alternate e-mail address, IP address, or other unique device or user identifier; and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B. All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) for the time period from January 1, 2016 to the present, constituting all records and other information relating to the Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information; and

3. Identification of any PROVIDER account(s) that are linked to the Account(s) by cookies, including all PROVIDER user IDs that logged into PROVIDER's services by the same machine as the Account(s).

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR NINE EMAIL ACCOUNT(S) SERVICED BY OATH FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 1956 | SC No. 20-92<br><br>**Filed Under Seal** |

## ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Oath Holdings, Inc. ("PROVIDER"), an electronic communication and/or remote computing service provider located in Sunnyvale, California, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee or continue flight from prosecution, and destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(2), (3), and (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise

ordered by the Court, except that the United States may disclose the existence and/or contents of

the Application and this Order to appropriate law enforcement authorities.

Deborah A. Robinson

Digitally signed by Deborah A. Robinson
Date: 2020.01.23 15:28:38 -05'00'

Date:

_____
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### I. The Account(s)

The Order applies to certain records and other information for any Oath Holdings, Inc. ("PROVIDER") account(s) associated with the following identifier(s):



and any preserved data and/or preservation numbers associated therewith.

### II. Records and other information to be disclosed

#### A. Information about the customer or subscriber of the Account(s)

PROVIDER is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Account(s)") constituting information about the customer or subscriber of the Account(s):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Local and long distance telephone connection records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses);

7. Other subscriber numbers or identities (including the registration IP address), including any current or past accounts linked to the Account(s) by telephone number, recovery or alternate e-mail address, IP address, or other unique device or user identifier; and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B. All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) for the time period from January 1, 2016 to the present, constituting all records and other information relating to the Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information; and

3. Identification of any PROVIDER account(s) that are linked to the Account(s) by cookies, including all PROVIDER user IDs that logged into PROVIDER's services by the same machine as the Account(s).