# ATTACHMENT A

*Redacted Docket Materials*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR THREE ACCOUNTS SERVICED BY GOOGLE LLC FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 1956 | SC No. 20-sc-705<br><br>**Filed Under Seal** |

*Reference:*   USAO Ref. # ███████; *Subject Account(s):* ███████████
███████████

### AMENDED APPLICATION OF THE UNITED STATES
### FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Google LLC ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Mountain View, California to disclose certain records and other information pertaining to the PROVIDER account(s) associated with: ███████████, as set forth in Part I of Attachment A to the proposed Order. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

### LEGAL BACKGROUND AND JURISDICTION

1.   PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under section 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically, the Court is a District Court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC. *See* 18 U.S.C. § 3237.

3. A court order under section 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## THE RELEVANT FACTS

4. The Federal Bureau of Investigation ("FBI") is investigating ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and others known and unknown for their involvement in a scheme to supply ▮▮▮▮▮▮▮ with cut rag tobacco through the illegal use of the U.S. financial system.in violation of the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1701 and the money laundering statute, 18 U.S.C. § 1956.

2

I.      **Cooperating Companies and Communication Accounts**

5.      In 2019, law enforcement interviewed representatives of Cooperating Company 1. After first denying its illicit activity with ▮▮▮▮▮, Cooperating Company 1 ultimately admitted to conspiring with ▮▮▮▮▮▮▮ to illicitly use the U.S. financial system to supply ▮▮▮▮▮ with tobacco products. Cooperating Company 1's information has been reliable and independently corroborated. Cooperating Company 1 informed the government that the co-conspirators communicated via email about this illegal scheme. Specifically, Cooperating Company 1 provided e-mail accounts which the co-conspirators involved in this illegal scheme used to communicate about the scheme.

6.      In 2019, law enforcement corresponded with representatives of Cooperating Company 2. Cooperating Company 2, admitted to acting as a financial cutout for Cooperating Company 1. That is, Cooperating Company 2 would receive laundered payments from ▮▮▮▮▮ ▮▮▮▮▮ front companies. Cooperating Company 2 would in turn launder those payments to Cooperating Company 1 for approximately a 1% fee. Cooperating Company 2's information has been reliable and independently corroborated.

7.      Employee 1 at Cooperating Company 1 (hereinafter "Employee 1"), and Employee 2 at Cooperating Company 1 (hereinafter "Employee 2") both conducted business on behalf of the ▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Information provided by Cooperating Company 1 revealed that Employee 1 and Employee 2 used their respective email accounts (Employee 1 Account and Employee 2 Account) to conduct illicit trade with ▮▮▮▮▮.

a. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3



4

II.     **Scheme to Avoid U.S. Sanctions**

8.      Previously obtained search warrant returns for Employee 1 Account revealed the scope of this scheme.  *See* 17-8132 (Sealed).  Subsequent information provided by Cooperating Company 1 further revealed that since at least 2016, ▮▮▮▮▮▮▮▮▮ and the ▮▮▮▮▮▮▮▮▮ supplied tobacco to ▮▮ for ▮▮▮▮▮▮ customers.

9.      On or about April 06, 2016, the Employee 1 Account sent an e-mail to the ▮▮▮ Account 2 and the Employee 2 Account that stated, "Dear [▮▮▮], At this stage, it is less of a shipping problem and more of a sanctions against tobacco exported to ▮ problem . . . ."  Law enforcement is aware that ▮ s commonly used as an abbreviation for ▮▮▮▮.

10.     On or about April 13, 2016, the Employee 1 Account sent an e-mail to the ▮▮▮ Account 2 stating that he/she agreed that changing the name of the consignee and notify party details might be a "workable solution" to their previously discussed "▮" problem.

11.     On or about April 13, 2016, the Employee 1 Account sent an e-mail to the ▮▮▮ Account 2 that reminded ▮▮▮ that they had to be careful of "international sanctions."

III.    **Use of Front Companies**

12.     ▮▮▮▮▮▮▮▮▮▮▮ carried out a complex web of layering and obfuscation to deceive U.S. banks into processing U.S. dollar transactions to supply ▮▮▮▮▮▮ with tobacco, in violation and contravention of U.S. law.  Subpoena returns and witness testimony revealed that between in or about 2013 and in or about 2019, ▮▮▮ used at least 17 front companies to launder at least $16,700,000 for the purchase of tobacco products for the sanctioned ▮▮▮▮▮▮ regime.

13.     That is ▮▮▮▮▮▮▮▮▮ was not the counterparty to transactions, as would happen in a normal financial transaction.  Instead, unknown third-party companies would make payments to Cooperating Company 1 on behalf of ▮▮▮▮▮▮▮▮▮.  Law enforcement is

5

aware that this practice is consistent with how companies skirt sanctions by using front companies with whom they have no affiliation to make U.S. dollar payments. The parties failed to seek or obtain a license from OFAC, which is based in Washington, D.C., for these transactions.

### IV. Results of Previous 2703(d) Court Orders

14. This Court previously issued 2703(d) orders for the ▇ Account 1, the ▇ Account 2, and for Apple Inc. accounts associated with the ▇ 1 Account, ▇ Account 1, and ▇ Account 2. *See* ▇

15. A review of 2703(d) returns for the ▇ Account 2 revealed:



a.

b.

16. 2703(d) returns for Apple, Inc. accounts associated with the ▇ Account 1, the ▇ Account 1, and the ▇ Account 2 revealed the following:

a.

6

b.



c.

d.

Role That Metadata Will Serve In Advancing the Investigation

17. Based on prior investigations, law enforcement is aware that criminal co-conspirators communicate frequently through private messages and email about their legitimate and illegitimate businesses, as well as the transfer of proceeds from such businesses. Private messages and email offer a uniquely valuable form for such communication, as they can be accessed from any location. Many such persons also believe that such messages are difficult to trace, which leads them to have inculpatory conversations.

18. Moreover, persons operating international procurement operations typically have to communicate via email with persons funding their operations, due to the time differences involved, as well as limited phone access in certain regions of the world. When transferring funds

7

to co-conspirators, electronic communications will normally occur to inform the other party that the money has been sent, followed up by communications that the money has been received. Law enforcement is also aware know from prior investigations that subordinates in the management chain must communicate to their superiors the status of their illegal tasks as well as receive new illegal tasks. Based on these facts, law enforcement believes that the subjects of the investigation are communicating via email.

19. Because criminals who communicate via email fear detection, they typically employ multiple fake identities, which is accomplished by creating numerous free email accounts. Part of managing this vast number of accounts often leads to the linking of recovery accounts. This allows a single user the ability to access as well as reset passwords for the multiple linked accounts. Law enforcement is aware that the tracking and detection of linked accounts is one way by which a person and/or co-conspirators can be identified. Moreover, the linking of a recovery account can further demonstrate who has access and/or control of an account.

20. The header information of these communications can reveal the scope of the contacts between the money launderers/export control violators and who the important co-conspirators are. Multiple individuals and companies associated with the targets of this investigation have taken steps to obscure or anonymize their identities. Learning the header information from associated email accounts is likely to reveal persons within this network, including persons in Asia, as well as further identify any other users of the email account.

21. Learning this information will allow law enforcement to investigate these newly identified persons, and in some instances surveil and interview them. Identifying, surveilling, and interviewing these persons will advance the investigation of the subjects and their co-conspirators, by further revealing the scope of their activities, both legal and illegal.

**REQUEST FOR ORDER**

22. The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

23. The United States further requests that the Order direct PROVIDER not to notify any person, including the subscriber or customer of each account listed in Part I of Attachment A, of the existence of the application of the United States or the Order for one year from the date of the Court's Order. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *See* 18 U.S.C. § 2705(b).[2]

24. In this case, the proposed Order seeks information relevant to establishing the illegal activity under investigation and identifying the individual(s) responsible. Accordingly,

---

[2] The government relies on § 2705(b) to seek a preclusion-of-notice order because the government is requesting only non-content information pursuant to § 2703(d), an action which is authorized by § 2703(c). *See* 18 U.S.C. § 2703(c)(1)(B) ("governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when [it] . . . obtains a court order for such disclosure under subsection (d) of this section"). Under § 2703(c), the government has no obligation to notify the subscriber. *See* 18 U.S.C. § 2703(c)(3) ("governmental entity receiving records or information under this section is not required to provide notice to a subscriber or customer").

disclosure may reveal the existence, scope, and direction of the United States's ongoing and confidential investigation. Once alerted to this investigation, potential target(s) could be immediately prompted to destroy or conceal incriminating evidence, alter their operational tactics to avoid future detection, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote computing services, the potential target(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity. Notification could also result in the target(s) avoiding travel to the United States or other countries from which they may be extradited.

25. Therefore, based on the foregoing, there are reasonable grounds to believe that notification of the existence of this Order would result in flight from prosecution, destruction of or tampering with evidence, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2), (3), and (5).

26. Given the complex nature of the criminal activity under investigation and likely involvement of foreign-based coconspirators and evidence, and also given that the criminal scheme may be ongoing, the Government anticipates that this confidential investigation will continue for the next year or longer.

27. 12. Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the proposed Order for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the United States will make best efforts to notify the Court promptly and seek appropriate relief.

28. In this matter, the Government also requests that the instant Application and the Order be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the proposed Order. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an ongoing criminal investigation when such jeopardy creates a compelling governmental interest in confidentiality. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991). For the reasons stated above, the Government has a compelling interest in confidentiality to justify sealing the Application and Order. *See id.*

    Respectfully submitted,

    TIMOTHY SHEA
    UNITED STATES ATTORNEY
    D.C. Bar No. 437437

By:    */s/ Zia M. Faruqui*
    Zia M. Faruqui, D.C. Bar No. 494990
    Assistant United States Attorney
    555 Fourth Street, N.W.
    Washington, D.C. 20530
    (202) 252-7117 (Faruqui)
    zia.faruqui@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR THREE ACCOUNTS SERVICED BY GOOGLE LLC FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 1956 | SC No. 20-sc-705<br><br>**Filed Under Seal** |

**AMENDED ORDER**

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Google LLC ("PROVIDER"), an electronic communication and/or remote computing service provider located in Mountain View, California to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee from prosecution, and destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of the date of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that PROVIDER shall not disclose the existence of this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

2

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court.

_____
HON. DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

2

## ATTACHMENT A

### I. The Account(s)

The Order applies to certain records and other information for any **GOOGLE LLC** ("PROVIDER") account(s) associated with the following identifier(s):



### II. Records and other information to be disclosed

#### A. Information about the customer or subscriber of the Account(s)

Provider is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Accounts"), and for any account linked to such accounts or identifier by alternate email address, telephone number, payment information, cookies, Skype ID, Hotmail ID, Outlook ID, MSN ID, or registration IP address ("Linked Accounts"):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

4. Length of service (including start date) and types of service utilized;

5. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

6. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. **All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) and Linked Account(s) for the time period from January 1, 2012 to the present, constituting all records and other information relating to the Account(s) and Linked Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s) and Linked Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses; and

2. Information about each electronic communication sent or received by the Account(s), and Linked Account(s) including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information.

3. Information about each application downloaded to any Google device or Google Play account associated with the Account(s) and Linked Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR THREE ACCOUNTS SERVICED BY GOOGLE LLC FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 1956 | SC No. 20-sc-705<br><br>**Filed Under Seal** |

## AMENDED ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Google LLC ("PROVIDER"), an electronic communication and/or remote computing service provider located in Mountain View, California to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee from prosecution, and destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of the date of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that PROVIDER shall not disclose the existence of this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

2

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court.

Deborah A. Robinson
Digitally signed by Deborah A. Robinson
Date: 2020.04.01 12:52:35 -04'00'

_____
HON. DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

2

# ATTACHMENT A

I. **The Account(s)**

The Order applies to certain records and other information for any **GOOGLE LLC** ("PROVIDER") account(s) associated with the following identifier(s):



II. **Records and other information to be disclosed**

   A. **Information about the customer or subscriber of the Account(s)**

Provider is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Accounts"), and for any account linked to such accounts or identifier by alternate email address, telephone number, payment information, cookies, Skype ID, Hotmail ID, Outlook ID, MSN ID, or registration IP address ("Linked Accounts"):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

4. Length of service (including start date) and types of service utilized;

5. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

6. Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B. All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) and Linked Account(s) for the time period from January 1, 2012 to the present, constituting all records and other information relating to the Account(s) and Linked Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s) and Linked Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses; and

2. Information about each electronic communication sent or received by the Account(s), and Linked Account(s) including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information.

3. Information about each application downloaded to any Google device or Google Play account associated with the Account(s) and Linked Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information.

2