# ATTACHMENT

# A

*Redacted Docket Materials*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR TWO ACCOUNTS SERVICED BY GOOGLE LLC FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 1956 | No. 20-sc-779<br><br>__Filed Under Seal__ |

*Reference:*    *USAO Ref.* # ███████   *Subject Account(s):* ████████████
███████

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Google LLC ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Mountain View, California to disclose certain records and other information pertaining to the PROVIDER account(s) associated with ██████████████████████████████████ as set forth in Part I of Attachment A to the proposed Order. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

## LEGAL BACKGROUND AND JURISDICTION

1. PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under section 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically,

the Court is a District Court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC. *See* 18 U.S.C. § 3237.

3.     A court order under section 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## THE RELEVANT FACTS

4.     The United States is investigating ███████████████████ for their use of U.S. correspondent banks to support ████████████████████████████ ██████████ by facilitating payment for petroleum imports ██████████████ The investigation concerns possible violations of, *inter alia*, the money laundering statute, 18 U.S.C. § 1956(h). ████, located in ████████ is a wholesaler of solid, liquid, and gaseous fuels and related products (i.e. petroleum).

## I.     ████████ **EXPORTS TO** ████████



████████████ is a ████████-based company that imports oil for ████████. ████



██████████████████████████████████ a company like ████ would import diesel from ████ refineries and then ship it either directly to ████████ or through ████. ██████████ the ████████ military was the sole user of the oil.

6.    ████████████████ ████ business model has ████ pay a U.S. dollar pre-deposit to ████████ oil companies. Once the pre-deposits clear, ████ receives quotas from ████ oil companies for a certain amount of petroleum products, after which the quotas are exchanged for petroleum products to be exported to ████████. ████ failed to obtain a license from the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC"), which is located in Washington, D.C., which is located in Washington, D.C., prior to engaging in these U.S. dollar transactions.

7.    ████████████████████████████████ ████. In 2014, ████ originated at least sixteen wires to ██████████████ ████████████ a ████ petroleum company. The wires totaled approximately $48 million. In 2015, ████ originated at least six wires for $53 million to ██ On June 1, 2017, OFAC designated ████ or providing oil to ████████. ████████████ ████████████ law enforcement has concluded that ████ was procuring petroleum from ██ for transshipment to ████████. ████ failed to obtain a license from OFAC prior to engaging in these transactions.

## II.    SUSPECTED ILLICIT FINANCIAL TRANSACTIONS

8.    Financial analysis of suspicious transactions ████████████ ████████

9.    Subpoena returns from U.S. Financial Institutions which Process International Wires revealed U.S. dollar transactions between ████ and multiple entities sanctioned or linked

to ███████ evasion of sanctions. Although not all the companies were sanctioned at the time

of their business with ████, the fact █████ consistently appears in these transactions over a period

of almost 10 years corroborates the defector's statements about ██████ illicit activities with █████

████. These transactions are summarized as follows:

| OFAC Designated Counterparties to transaction with ████ | U.S. Dollar Amount | Timeframe |
|---|---|---|
|  |  |  |

10. On or about June 29, 2017, OFAC designated ███████████████

███████████ for operating in the transportation industry in the ██████

economy. The designation noted that ███████████ transported 700,000 tons of freight

annually, including coal and steel products, between █████ and ████████. Subpoena returns

from U.S. Financial Institutions which Process International Wires revealed that from January

2012 to September 2013, ███████████ originated approximately seventeen wire transfers

totaling approximately 1.2 million U.S. dollars to █████.

11. On June 14, 2017, the government filed a forfeiture complaint for 1,902,976 U.S.

dollars seized from █████████████████████ a company owned



by ██████████████████████████, ██. The complaint alleged that ████ is a front company that was created to launder U.S. dollars on behalf of a sanctioned ████ bank, ████████████. In August 22, 2017, OFAC designated ████████ for acting as a front company for UN- and U.S.-designated ████████████ The designation noted that ████████ has provided financial services to ████████████ by, among other things, conducting U.S.-dollar denominated transactions. Subpoena returns from U.S. Financial Institutions which Process International Wires revealed three wire transfers from ████████ to ████ on August 29, 2013, February 18, and 21, 2014, totaling approximately 296,800 U.S. dollars.

12. The U.S. filed a complaint on September 26, 2016, to forfeit all funds contained in 25 bank accounts belonging to ████████████████████████████████ ████████, located in ██████, and its front companies. On the same date, the Department of Justice unsealed criminal charges against ████ and ████ owner, ████████ and three other ████ executives. The U.S. Treasury Department designated ████ in September 2016 as a sanctioned entity pursuant to Executive Order 13382, targeting proliferators and their supporters. The designation noted ████ acted for or on behalf of ████████████████████████████ located in ████████ which was previously designated by Treasury for providing financial services in support of WMD proliferators. ████ used an illicit network of front companies, financial facilitators to facilitate transactions on behalf of ████ Subpoena returns from U.S. Financial Institutions which Process International Wires revealed twenty-seven wire transfers from ████ to ████ from approximately March 2009 to August 2013, totaling approximately $39,000,000.



13.     On July 23, 2015, OFAC designated ▮▮▮▮▮▮▮▮▮▮▮▮ for providing material support to ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ ("▮▮▮▮▮▮▮▮"). OFAC previously designated ▮▮▮▮▮▮▮ for attempting to import a concealed shipment of arms and related materiel into ▮▮▮▮▮▮ .  The designation noted that ▮▮▮ supported ▮▮▮▮▮ ▮▮▮▮▮ by arranging the purchase, repair, certification, and crewing of ▮▮▮▮▮▮▮ vessels. Subpoena returns from U.S. Financial Institutions which Process International Wires revealed three wires from ▮▮▮▮ to ▮▮▮▮ from approximately June 2010 to August 2011, totaling approximately $251,250.

14.     On August 22, 2017, OFAC designated ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ ("▮▮▮▮▮▮▮▮").  The designation noted that ▮▮▮▮▮▮▮▮ sold, supplied, transferred, or purchased coal or metal, directly or indirectly, from ▮▮▮▮▮▮ , and that the revenue may have benefitted the nuclear or ballistic missile programs of the Government of ▮▮▮ or ▮▮▮▮▮▮▮▮▮▮▮  The designation also noted that ▮▮▮▮▮▮▮▮▮ specializes in the import, export, and transport of steel and anthracite coal, and that it has worked with a number of U.S.-designated entities, including the U.S.-designated ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ allegedly used the foreign exchange received from the end users of ▮▮▮▮▮▮ coal to purchase other items for ▮▮▮▮▮ , including nuclear and missile components.   This Court previously found that ▮▮▮▮▮▮▮▮ , acting also under the names of ▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ , had illegally laundered approximately 700 million U.S. dollars for the benefit of sanctioned ▮▮▮▮▮▮ entities.  Subpoena returns from U.S. Financial Institutions which Process International Wires revealed at least 3.1 million U.S. dollars in wires with ▮▮▮▮▮▮ , ▮▮▮▮▮▮ , and ▮▮▮▮▮▮ ,

6

### III.  TARGET ACCOUNTS

15.  ██████ subsequently had difficulty conducting U.S. dollar transactions, due in large part to its illicit business with ████████, and began transitioning much of its operations to a related company, ██████████████████.

16.  This court previously authorized search warrants for the email accounts of several ████ executives. *See* ██████████████████.

17.  A confidential reliable source received ████████ banks records for ████ and ██. The banks records revealed that three ████/██ representatives—████████████████ ████████████████████████████████████████████)—use the Target Accounts as described below.

18.  According to the confidential reliable source and previously collected ████ emails, ██████████████ was ████████████████████ of ██ between May 25, 1990 and March 29, 2018, and is currently a shareholder of ████. On January 1, 2017, ████ ██████ assumed the post of ██████████████ of ████. ██ emails revealed that ████████ was involved with ████ as of on or about January 2018. According to ██████████ bank records, ██████████████'s email account is ██████████████ ("Target Account 1").

19.  According to the confidential reliable source and previously collected ████ emails, ██████████████ was ████ of ████ between October 18, 2016 and March 20, 2018 and is currently ██████ at ██. According to ████████ bank records, ██████████████, email account is ██████████████ ("Target Account 2").

20.  According to the confidential reliable source and previously collected ████ emails, ██████████████████ was ████ of ████ between October 18, 2016 and March 20, 2018, and is currently ██████ at ██. The investigation revealed a copy of a



contract between ███ and a ████ oil company, ██████ which was sent by ████████████
to various ████ representatives. According to ████████ bank records, ██████████████
email account is ██████████████████ ("Target Account 3").

<u>Role That Metadata Will Serve In Advancing the Investigation</u>

21.    Based on prior investigations, law enforcement is aware that criminal co-conspirators communicate frequently through private messages and email about their legitimate and illegitimate businesses, as well as the transfer of proceeds from such businesses.  Private messages and email offer a uniquely valuable form for such communication, as they can be accessed from any location.  Many such persons also believe that such messages are difficult to trace, which leads them to have inculpatory conversations.

22.    Moreover, persons operating international procurement operations typically have to communicate via email with persons funding their operations, due to the time differences involved, as well as limited phone access in certain regions of the world.  When transferring funds to co-conspirators, electronic communications will normally occur to inform the other party that the money has been sent, followed up by communications that the money has been received.  Law enforcement is also aware know from prior investigations that subordinates in the management chain must communicate to their superiors the status of their illegal tasks as well as receive new illegal tasks.  Based on these facts, law enforcement believes that the subjects of the investigation are communicating via email.

23.    Because criminals who communicate via email fear detection, they typically employ multiple fake identities, which is accomplished by creating numerous free email accounts. Part of managing this vast number of accounts often leads to the linking of recovery accounts. This allows a single user the ability to access as well as reset passwords for the multiple linked

8

accounts. Law enforcement is aware that the tracking and detection of linked accounts is one way by which a person and/or co-conspirators can be identified. Moreover, the linking of a recovery account can further demonstrate who has access and/or control of an account.

24. The header information of these communications can reveal the scope of the contacts between the money launderers/export control violators and who the important co-conspirators are. Multiple individuals and companies associated with the targets of this investigation have taken steps to obscure or anonymize their identities. Learning the header information from associated email accounts is likely to reveal persons within this network, including persons in Asia, as well as further identify any other users of the email account.

25. Learning this information will allow law enforcement to investigate these newly identified persons, and in some instances surveil and interview them. Identifying, surveilling, and interviewing these persons will advance the investigation of the subjects and their co-conspirators, by further revealing the scope of their activities, both legal and illegal.

## **REQUEST FOR ORDER**

26. The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

27. The United States further requests that the Order direct PROVIDER not to notify any person, including the subscriber or customer of each account listed in Part I of Attachment A,

of the existence of the application of the United States or the Order for one year from the date of the Court's Order.  See 18 U.S.C. § 2705(b).  This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order."  See 18 U.S.C. § 2705(b).[1]

28.     In this case, the proposed Order seeks information relevant to establishing the illegal activity under investigation and identifying the individual(s) responsible.  Accordingly, disclosure may reveal the existence, scope, and direction of the United States's ongoing and confidential investigation.  Once alerted to this investigation, potential target(s) could be immediately prompted to destroy or conceal incriminating evidence, alter their operational tactics to avoid future detection, and otherwise take steps to undermine the investigation and avoid future prosecution.  In particular, given that they are known to use electronic communication and remote computing services, the potential target(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity.  Notification could also result in the target(s) avoiding travel to the United States or other countries from which they may be extradited.

29.     Therefore, based on the foregoing, there are reasonable grounds to believe that notification of the existence of this Order would result in flight from prosecution, destruction of

---

[1] The government relies on § 2705(b) to seek a preclusion-of-notice order because the government is requesting only non-content information pursuant to § 2703(d), an action which is authorized by § 2703(c).  See 18 U.S.C. § 2703(c)(1)(B) ("governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when [it] . . . obtains a court order for such disclosure under subsection (d) of this section").  Under § 2703(c), the government has no obligation to notify the subscriber.  See 18 U.S.C. § 2703(c)(3) ("governmental entity receiving records or information under this section is not required to provide notice to a subscriber or customer").

or tampering with evidence, or other serious jeopardy to this investigation.  *See* 18 U.S.C. § 2705(b)(2), (3), and (5).

30.     Given the complex nature of the criminal activity under investigation and likely involvement of foreign-based coconspirators and evidence, and also given that the criminal scheme may be ongoing, the Government anticipates that this confidential investigation will continue for the next year or longer.

31.     12.     Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the proposed Order for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.  Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the United States will make best efforts to notify the Court promptly and seek appropriate relief.

32.     In this matter, the Government also requests that the instant Application and the Order be filed under seal.  The Court has the inherent power to seal court filings when appropriate, including the proposed Order.  *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)).  More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an ongoing criminal investigation when such jeopardy creates a compelling governmental interest in confidentiality.  *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).  For the reasons stated above, the Government has a compelling interest in confidentiality to justify sealing the Application and Order.  *See id.*

Respectfully submitted,

TIMOTHY J. SHEA
UNITED STATES ATTORNEY
D.C. BAR NO. 437437

By:     _____*/s/ Zia M. Faruqui*_____
        Zia M. Faruqui, D.C. Bar No. 494990
        Assistant United States Attorney
        555 Fourth Street, N.W.
        Washington, D.C. 20530
        (202) 252-7117 (Faruqui)
        zia.faruqui@usdoj.gov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR TWO ACCOUNTS SERVICED BY GOOGLE LLC FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 1956 | No. 20-sc-779<br><br>**Filed Under Seal** |

## <u>ORDER</u>

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Google LLC ("PROVIDER"), an electronic communication and/or remote computing service provider located in Mountain View, California to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee from prosecution, and destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of the date of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that PROVIDER shall not disclose the existence of this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court.

_____
HON. DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

<u>**ATTACHMENT A**</u>

**I. The Account(s)**

The Order applies to certain records and other information for any **GOOGLE LLC** ("PROVIDER") account(s) associated with the following identifier(s):



**II. Records and other information to be disclosed**

**A. Information about the customer or subscriber of the Account(s)**

Provider is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Accounts"), and for any account linked to such accounts or identifier by alternate email address, telephone number, payment information, cookies, Google ID, Skype ID, Hotmail ID, Outlook ID, MSN ID, or registration IP address ("Linked Accounts"):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

4. Length of service (including start date) and types of service utilized;

5. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

6. Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B. All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) and Linked Account(s) for the time period from January 1, 2012 to the present, constituting all records and other information relating to the Account(s) and Linked Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s) and Linked Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses; and

2. Information about each electronic communication sent or received by the Account(s), and Linked Account(s) including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information.

3. Information about each application downloaded to any Google device or Google Play account associated with the Account(s) and Linked Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR TWO ACCOUNTS SERVICED BY GOOGLE LLC FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 1956

No. 20-sc-779

**Filed Under Seal**

## **ORDER**

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Google LLC ("PROVIDER"), an electronic communication and/or remote computing service provider located in Mountain View, California to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee from prosecution, and destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of the date of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that PROVIDER shall not disclose the existence of this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court.

Deborah A.
Robinson
2020.04.18
12:53:47 -04'00'

April 18, 2020

HON. DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

14

# ATTACHMENT A

## I. The Account(s)

The Order applies to certain records and other information for any **GOOGLE LLC** ("PROVIDER") account(s) associated with the following identifier(s):



## II. Records and other information to be disclosed

### A. Information about the customer or subscriber of the Account(s)

Provider is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Accounts"), and for any account linked to such accounts or identifier by alternate email address, telephone number, payment information, cookies, Google ID, Skype ID, Hotmail ID, Outlook ID, MSN ID, or registration IP address ("Linked Accounts"):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

4. Length of service (including start date) and types of service utilized;

5. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

6. Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B. All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) and Linked Account(s) for the time period from January 1, 2012 to the present, constituting all records and other information relating to the Account(s) and Linked Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s) and Linked Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses; and

2. Information about each electronic communication sent or received by the Account(s), and Linked Account(s) including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information.

3. Information about each application downloaded to any Google device or Google Play account associated with the Account(s) and Linked Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information.