# ATTACHMENT A

*Redacted Docket Materials*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE SKYPE ACCOUNT SERVICED BY MICROSOFT CORPORATION FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 1956 | SC No. 20-sc-952<br><br>**Filed Under Seal** |

*Reference:*   USAO Ref. ▮▮▮▮▮▮   *Subject Account(s):* ▮▮▮

**APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)**

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Microsoft Corporation ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Redmond, Washington, to disclose certain records and other information pertaining to the PROVIDER account(s) associated with ▮▮▮▮ as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

**LEGAL BACKGROUND AND JURISDICTION**

1.     PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2.     This Court has jurisdiction to issue the requested Order because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(d). Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

3. As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC. *See* 18 U.S.C. § 3237.

4. A court order under section 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## RELEVANT FACTS

5. The United States is investigating an illicit scheme to launder U.S. dollars for the benefit of the ▮▮▮▮▮, in violation of sanctions set forth by the Department of Treasury Office of Foreign Asset Control ("OFAC"), which is located in the District of Columbia. The investigation concerns possible violations of, *inter alia*, 50 U.S.C. §§ 1701-1707, the International Economic Emergency Powers Act (IEEPA), and 18 U.S.C. § 1956 (money laundering).

6. Law enforcement is aware that on ▮▮▮▮ a federal court in ▮▮▮▮ sentenced ▮▮▮▮ to 13 years imprisonment for sending more than $150,000 to ▮▮, and attempting to travel to Syria to join ▮▮. ▮▮▮▮ pled guilty in ▮▮▮▮.

2

7. Law enforcement has uncovered financial records showing that Zoobia Shahnaz sent approximately $100,000 to an individual listed as ▨▨▨▨▨▨. When receiving this payment, ▨▨▨▨▨▨ listed the email address, ▨▨▨▨▨▨ (**"Target Account 1"**).

8. Subpoena returns for subscriber information for **Target Account 1** revealed that the user of this account was named ▨▨▨▨▨▨ leading law enforcement to believe that the ▨▨▨▨▨▨ name on the prior transaction was an alias. Subpoena returns further revealed that ▨▨▨▨▨▨ listed **Target Account 1** as the recovery address for ▨▨▨▨▨▨ (**"Target Account 2"**).

9. The subpoena returns revealed that ▨▨ registered Target Account 2 using a phone number ending in ▨▨.

10. The subpoena returns also revealed that **Target Account 1** and **Target Account 2** logged in from the same IP address on the same day multiple times, leading law enforcement to conclude that these two accounts are used by the same individual, *i.e.*, ▨▨.

11. ▨▨ operates multiple publicly-available Facebook pages, some of which are used to sell clothing online.

12. ▨▨ personal Facebook account is ▨▨▨▨▨▨ (**"Target Account 3"**). Subpoena returns from Facebook for **Target Account 3**, revealed that this Facebook page was subscribed to ▨▨▨▨ and registered using **Target Account 2** and a phone number ending in ▨▨.

13. ▨▨ is also listed on publicly available Facebook page, ▨▨▨▨▨▨ (**"Target Account 4"**). This Facebook page lists ▨▨ name on a business card posted. Under ▨▨ name is a ▨▨

3

phone number ending in ▇ which was also used to register **Target Account 2** and **Target Account 3**.

14. Subpoena returns from Facebook further show that ▇ created Facebook page ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ **("Target Account 5")**, which he registered using **Target Account 2** and was linked to **Target Account 3**. Publicly-available posts show that since 2015 this Facebook page has primarily used to advertise a small number of shirts. Law enforcement is aware that one method to launder funds is to claim that the funds were received through a licit business. On this Facebook page, ▇ lists his Skype address, ▇▇▇ **("Target Account 6")**, which is almost identical to the account name of **Target Account 1**.

15. On March 17, 2020, **Target Account 5** posted an advertisement for the website ▇▇▇▇▇▇ which as described in more detail below, appears to be involved with the fraudulent sale of personal protection equipment (PPE).

16. Subpoena returns from Facebook also revealed that ▇ created Facebook page ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇**("Target Account 7")**, which he registered using **Target Account 2** and was linked to **Target Account 3**. Publicly-available posts show that since 2014 this Facebook page has primarily used to advertise pants and leggings. Law enforcement is aware that one method to launder funds is to claim that the funds were received through a licit business. On March 17, 2020, **Target Account 7** posted an advertisement for the website ▇▇▇▇▇▇

17. On March 13, 2020, the President of the United States declared a national emergency due to the COVID-19 pandemic.

18. On March 25, 2020, the U.S. Department of Health and Human Services issued, "Notice of Designation of Scarce Materials or Threatened Materials Subject to COVID-19

4

Hoarding Measures Under Executive Order 13910 and Section 102 of the Defense Production Act of 1950." In the notice, it designates the following items, among others, as scarce materials:

- N-95 Filtering Facepiece Respirators, including devices that are disposable half-face-piece non-powered air-purifying particulate respirators intended for use to cover the nose and mouth of the wearer to help reduce wearer exposure to pathogenic biological airborne particulates;
- Other Filtering Facepiece Respirators (e.g., those designated as N99, N100, R95, R99, R100, or P95, P99, P100), including single-use, disposable half-mask respiratory;
- protective devices that cover the user's airway (nose and mouth) and offer protection from particulate materials at an N95 filtration efficiency level per 42 CFR 84.181;
- Elastomeric, air-purifying respirators and appropriate particulate filters/cartridges;
- Powered Air Purifying Respirator (PAPR);
- Portable Ventilators, including portable devices intended to mechanically control or assist patient breathing by delivering a predetermined percentage of oxygen in the breathing gas;

. . .

- Medical gowns or apparel, e.g., surgical gowns or isolation gowns;
- Personal protective equipment (PPE) coveralls, e.g., Tyvek Suits;
- PPE face masks, including any masks that cover the user's nose and mouth and may or may not meet fluid barrier or filtration efficiency levels;
- PPE surgical masks, including masks that covers the user's nose and mouth and provides a physical barrier to fluids and particulate materials;
- PPE face shields, including those defined at 21 CFR 878.4040 and those intended for the same purpose;

. . .

- Ventilators, anesthesia gas machines modified for use as ventilators, and positive pressure breathing devices modified for use as ventilators (collectively referred to as "ventilators"), ventilator tubing connectors, and ventilator accessories as those terms are described in FDA's March 2020 Enforcement Policy for Ventilators and Accessories and Other Respiratory Devices During the Coronavirus Disease 2019 (COVID-19) Public Health Emergency located at https://www.fda.gov/media/136318/download.

19. The 3M Company ("3M") is a U.S. corporation that manufactures items in the field of industry, consumer goods, worker safety, and healthcare. In response to the current COVID-19 pandemic, the following 3M products are in high demand worldwide and designated as scarce as described above: (a) 3M Particulate Respirator, Model 8210, with N95 NIOSH approved rating; and (b) 3M Disposable Respirator, Model 1860, with N95 NIOSH approved rating.

5

20. Law enforcement is aware that the scarcity of the above items has led to numerous fraudulent sites claiming to sell authentic PPE online. Law enforcement reviewed the website ▮▮▮▮▮▮▮▮ and found that this site claims to sell multiple types of facemasks, including disposable hospital grade face masks, N95 respirator masks, washable facemasks, coverall suits, and gloves. Based on the quantity of items for sale on this site, overall scarcity of such products and advertised price points, law enforcement has concluded that ▮▮▮▮▮▮▮▮ is such a fraudulent site. Law enforcement is unaware of any distributor in ▮▮ that has the capability to acquire the types and quantities of items listed for sale on ▮▮▮▮▮▮▮▮ (which purports to operate out of ▮▮▮▮).

21. Law enforcement discovered Facebook page ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (**"Target Account 8"**), which is associated with ▮▮▮▮▮▮▮▮. This Facebook page lists ▮▮▮▮▮▮▮▮ as its contact information and lists multiple images from the ▮▮▮▮▮▮▮▮ website. **Target Account 8**'s first post was on March 10, 2020, which is only 7 days prior to ▮▮ posting ▮▮▮▮▮▮▮▮ information on his Facebook pages. Law enforcement is aware that individuals who operate multiple companies often use other companies under their control to advertise. Target Account 8 lists ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (**"Target Account 9"**) as its contact email address.

**REQUEST FOR ORDER**

22. The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the criminal activity under investigation, and

6

to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

23. The United States further requests that the Order direct PROVIDER not to notify any person, including the subscriber or customer of each account listed in Part I of Attachment A, of the existence of the application of the United States or the Order for one year from the date of the Court's Order. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *See* 18 U.S.C. § 2705(b).[1]

24. In this case, the proposed Order seeks information relevant to establishing the illegal activity under investigation and identifying the individual(s) responsible. Accordingly, disclosure may reveal the existence, scope, and direction of the United States's ongoing and confidential investigation. Once alerted to this investigation, potential target(s) could be immediately prompted to destroy or conceal incriminating evidence, alter their operational tactics to avoid future detection, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote

---

[1] The government relies on § 2705(b) to seek a preclusion-of-notice order because the government is requesting only non-content information pursuant to § 2703(d), an action which is authorized by § 2703(c). *See* 18 U.S.C. § 2703(c)(1)(B) ("governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when [it] . . . obtains a court order for such disclosure under subsection (d) of this section"). Under § 2703(c), the government has no obligation to notify the subscriber. *See* 18 U.S.C. § 2703(c)(3) ("governmental entity receiving records or information under this section is not required to provide notice to a subscriber or customer").

7

computing services, the potential target(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity. Notification could also result in the target(s) avoiding travel to the United States or other countries from which they may be extradited.

25. Therefore, based on the foregoing, there are reasonable grounds to believe that notification of the existence of this Order would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2)-(5).

26. Given the complex nature of the criminal activity under investigation and likely involvement of foreign-based coconspirators and evidence, and also given that the criminal scheme may be ongoing, the United States anticipates that this confidential investigation will continue for the next year or longer.

27. Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the proposed Order for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the United States will make best efforts to notify the Court promptly and seek appropriate relief.

28. In this matter, the United States also requests that the instant Application and the Order be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the proposed Order. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Commn'ns, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an ongoing criminal

investigation when such jeopardy creates a compelling governmental interest in confidentiality. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991). For the reasons stated above, the United States has a compelling interest in confidentiality to justify sealing the Application and Order. *See id.*

                                                    Respectfully submitted,

                                                    TIMOTHY J. SHEA
                                                    United States Attorney
                                                    DC Bar No. 437437

                                                  /s/ *Zia Faruqui*
                                                  ZIA M. FARUQUI, D.C. Bar No. 494990
                                                  Assistant United States Attorney
                                                  555 Fourth Street, N.W., Room 11-848
                                                  Washington, D.C. 20530
                                                  (202) 252-7117
                                                  Zia.Faruqui@USDOJ.Gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE SKYPE ACCOUNT SERVICED BY MICROSOFT CORPORATION FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 1956 | SC No. 20-sc-952<br><br>**Filed Under Seal** |

**ORDER**

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Microsoft Corporation ("PROVIDER"), an electronic communication and/or remote computing service provider located in Redmond, Washington, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, and intimidate potential witnesses. *See* 18 U.S.C. § 2705(b)(2)-(5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of

one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

    IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.

Date: _____
                                                               UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

I. **The Account(s)**

The Order applies to certain records and other information for any Microsoft Corporation ("PROVIDER") account(s) associated with the following identifier(s):

[REDACTED]

and any preserved data and/or preservation numbers associated therewith.

II. **Records and other information to be disclosed**

   A. **Information about the customer or subscriber of the Account(s)**

Provider is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Accounts"), and for any account linked to such accounts or identifier by alternate email address, telephone number, payment information, cookies, Skype ID, Hotmail ID, Outlook ID, MSN ID, or registration IP address ("Linked Accounts"):

   1. Names (including subscriber names, user names, and screen names);

   2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

   3. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   4. Length of service (including start date) and types of service utilized;

   5. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   6. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. **All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) and Linked Account(s) for the time period from January 1, 2018 to the present, constituting all records and other information relating to the Account(s) and Linked Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s) and Linked Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses; and

2. Information about each electronic communication sent or received by the Account(s), and Linked Account(s) including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____ ("PROVIDER"), and my title is _____. I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER. The attached records consist of:

_____
[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b. such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

    1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

    2. the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date    Signature

3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE SKYPE ACCOUNT SERVICED BY MICROSOFT CORPORATION FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 1956 | SC No. 20-sc-952<br><br>**Filed Under Seal** |

### ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Microsoft Corporation ("PROVIDER"), an electronic communication and/or remote computing service provider located in Redmond, Washington, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, and intimidate potential witnesses. *See* 18 U.S.C. § 2705(b)(2)-(5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of

one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.

Date: _____

Deborah A. Robinson
Digitally signed by Deborah A. Robinson
Date: 2020.04.27 16:35:42 -04'00'

UNITED STATES MAGISTRATE JUDGE

2

# ATTACHMENT A

I. **The Account(s)**

The Order applies to certain records and other information for any Microsoft Corporation ("PROVIDER") account(s) associated with the following identifier(s):

- **Skype ID:** ▮▮▮▮▮▮

and any preserved data and/or preservation numbers associated therewith.

II. **Records and other information to be disclosed**

A. **Information about the customer or subscriber of the Account(s)**

Provider is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Accounts"), and for any account linked to such accounts or identifier by alternate email address, telephone number, payment information, cookies, Skype ID, Hotmail ID, Outlook ID, MSN ID, or registration IP address ("Linked Accounts"):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

4. Length of service (including start date) and types of service utilized;

5. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

6. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. **All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) and Linked Account(s) for the time period from January 1, 2018 to the present, constituting all records and other information relating to the Account(s) and Linked Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s) and Linked Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses; and

2. Information about each electronic communication sent or received by the Account(s), and Linked Account(s) including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

      I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____ ("PROVIDER"), and my title is _____. I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER. The attached records consist of:

_____
      [GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]
I further state that:
      a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and
      b.    such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:
          1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and
          2.    the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.
      I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.


_____    _____
Date                                            Signature