# ATTACHMENT

# A

*Redacted Docket Materials*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR THREE EMAIL ACCOUNTS SERVICED BY ███████████ FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. §§ 641 AND 793 | SC No. 20-sc-3355 <br><br> **Filed Under Seal** |

**Reference:**     *USAO Ref. # 2017R01896; Subject Account(s):  addresses identified in Attachment A[1]*

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d).  The proposed Order would require ██████████████████ or "PROVIDER"), an electronic communication service and/or remote computing service provider located at ████████████ ████████████████ to disclose certain records and other information pertaining to the PROVIDER account(s) associated with three ████████ email addresses ("TARGET ACCOUNT 1" belonging to Reporter A; "TARGET ACCOUNT 2" and belonging to Reporter B; and TARGET ACCOUNT 3 belonging to Reporter C, and collectively, "TARGET ACCOUNTS") belonging to four reporters of a national news organization ("Publication 1"), identified in Attachment A ("TARGET ACCOUNTS") as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order.[2]  The records and other information to be disclosed

---

[1] In an effort to protect the Classified Information, the email accounts, which include the identity of Publication 1, are not identified in the body of the application.

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

are described in Part II of Attachment A to the proposed Order.[3]  In support of this application, the

United States asserts:

## LEGAL BACKGROUND AND JURISDICTION

1.        PROVIDER is a provider of an electronic communication service, as defined in 18

U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2).

Accordingly, the United States may use a court order issued under § 2703(d) to require PROVIDER

to disclose the items described in Part II of Attachment A.  *See* 18 U.S.C. § 2703(c)(2) (Part II.A

of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2.        This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction

over the offense being investigated," 18 U.S.C. § 2711(3)(A)(i), and "is in . . . a district in which

the provider . . . is located or in which the wire or electronic communications, records, or other

information are stored." 18 U.S.C. § 2711(3)(A)(ii).

3.        As discussed more fully below, acts or omissions in furtherance of the offenses

under investigation occurred within Washington, D.C.  *See* 18 U.S.C. § 3237.

4.        A court order under section 2703(d) "shall issue only if the governmental entity

offers specific and articulable facts showing that there are reasonable grounds to believe that . . .

---

[3] Prior to seeking this process, the undersigned has consulted with the National Security Division
of the U.S. Department of Justice and complied with the requirements of 28 C.F.R. §50.10
("Policy Regarding Obtaining Information, or records of, members of the news media").

the records or other information sought . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## STATUTORY AUTHORITY AND BACKGROUND

5.      Under 18 U.S.C. § 641, "[w]hoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States" or "receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted" shall be fined or imprisoned not more than ten years, or both; or if the value the property does not exceed $1,000, he shall be fined or imprisoned not more than one year, or both.

6.      Under 18 U.S.C. § 793(d), "[w]hoever, lawfully having possession of, access to, control over, or being entrusted with any document . . . or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted" or attempts to do or causes the same "to any person not entitled to receive it, or willfully retains the same and fails to deliver it on demand to the officer or employee of the United States entitled to receive it" shall be fined or imprisoned not more than ten years, or both.

7.      Under 18 U.S.C. § 793(e), "[w]hoever having unauthorized possession of, access to, or control over any document . . . or information relating to the national defense which

3

information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted" or attempts to do or causes the same "to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it" shall be fined or imprisoned not more than ten years, or both.

8.      Classified Information.  Under Executive Order 13526, information in any form may be classified if it: (1) is owned by, produced by or for, or is under the control of the United States government; (2) falls within one or more of the categories set forth in the Executive Order [TOP SECRET, SECRET, and CONFIDENTIAL]; and (3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security.

9.      Classified information of any designation may be shared only with persons determined by an appropriate United States government official to be eligible for access, and who possess a "need to know."  Among other requirements, in order for a person to obtain a security clearance allowing that person access to classified United States government information, that person is required to and must agree to properly protect classified information by never disclosing such information to persons not entitled to receive it, by not unlawfully removing classified information from authorized storage facilities, and by not storing classified information in unauthorized locations. If a person is not eligible to receive classified information, classified information may not be disclosed to that person.

**SPECIFIC AND ARTICULABLE FACTS SHOWING REASONABLE GROUNDS TO BELIEVE THAT THE RECORDS REQUESTED ARE RELEVANT AND MATERIAL**

10.     The United States is investigating the unauthorized disclosure of classified and proprietary information belonging to the United States.  The investigation concerns possible violations of, inter alia, 18 U.S.C. §641 (Conversion of Property Belonging to the United States) and 18 U.S.C. §793 (Disclosure of National Defense Information).

11.     The facts and circumstances set forth below establish specific and articulable cause to believe that between or about April 1, 2017, through on or about July 31, 2017, Reporters A, B and C of Publication 1 obtained, disclosed, or facilitated the disclosure of, classified national defense information that is the property of the U.S. government to persons unauthorized to receive that information. Specifically, there is cause to believe that Reporters A, B, and C disclosed classified national defense information provided to them by subjects who violated 18 U.S.C. § 793 and 18 U.S.C. § 641.  Based on the facts and circumstances set forth herein, there is also reasonable grounds to believe that the requested ▮▮▮▮▮ records are relevant and material to the investigation.

### The Highly Classified Information Was Made Available to Congress

12.     In furtherance of a Congressional Inquiry, in 2017, the U.S. Congress requested access to certain highly classified national defense information in the possession of the U.S. Intelligence Community (USIC).  Given the extreme sensitivity of this information (hereinafter the "Classified Materials"), it was only made available to select Congressional Members and staff, at a secure facility within a larger USIC complex (hereinafter the "Read Room").  The material was made available in April 2017.

### Portions of the Classified Materials Were Thereafter Published in the Media

13.     On or about May 26, 2017, a national news outlet published an article that had three Reporters on the byline, hereinafter Reporter A, Reporter B, and Reporter C ("the May 2017 Article").  According to the USIC, the May 2017 Article revealed TOP SECRET/SCI information that was contained within the Classified Materials that had been made available to select Congressional personnel in April 2017.

14.     On or about June 23, 2017, a national news outlet published an article with Reporter C, Reporter A, and Reporter B on the byline ("the June 2017 Article"). According to the USIC, the June 2017 Article revealed TOP SECRET/SCI information that was contained within the Classified Materials that had been made available to select Congress personnel in April 2017.

15.     On or about July 22, 2017, a national news outlet published an article with Reporter B, Reporter A, and Reporter C on the byline ("the July 2017 Article"). According to the USIC, the July 2017 Article included TOP SECRET/SCI information that was contained within the Classified Materials that had been made available to select Congressional personnel in April 2017.

16.     According to AT&T toll records,



These contacts included phone calls, text messages and emails.



17.     ███████████████████████████ that it had contact with Reporters A, B, and C during the period in question, and that they were attempting to obtain information to publish. ███

███████████████████████████████████████████

18.     Investigators are aware that news articles are often worked upon jointly by multiple Reporters, with multiple sources, and those Reporters are often revealed in byline of the article. Each of the Articles also asserted that the reporters had multiple government sources that confirmed information in their articles. ███████████████████ ████ ███████████

███████████████████████████████████████████

██████████     Further, their publication of the Classified Materials indicate that they were in possession of the information during the same period.

19.     Based on the foregoing, there are reasonable grounds to believe that the records or other information sought concerning the TARGET ACCOUNTS are relevant and material to an ongoing criminal investigation.  Specifically, these items will help the United States to identify and locate the individual(s) who illegally disclosed the Classified Information, and to determine the nature and scope of that criminal activity.

## THE TARGET ACCOUNTS

20.     The TARGET ACCOUNT 3 for Reporter C was identified and confirmed by ███████████████████████████     The TARGET ACCOUNT1 for Reporter A and TARGET ACCOUNT 2 for Reporter B were identified based on public statements and records published by Reporters A and B.  These reporters also listed or provided these same contacts to government press offices during this same period.[4]  Thus, there is reasonable cause to believe all

---

[4] Investigators are aware that reporters who work collectively on news stories will regularly use electronic media, including email, to communicate with sources and with one another. Investigators are also aware that reporters will often make initial contact with a source through an

the TARGET ACCOUNTS will have information relevant to the criminal investigation, including the identity of sources with knowledge of Classified Information who communicated with the Reporters.

## TECHNICAL BACKGROUND

21.     The Internet is a global network of computers and other devices.  Devices directly connected to the Internet are identified by a unique number called an Internet Protocol, or "IP" address.  This number is used to route information between devices.  Generally, when one device requests information from a second device, the requesting device specifies its own IP address so that the responding device knows where to send its response.  An IP address is analogous to a telephone number and can be recorded by pen-trap devices, and it indicates the online identity of the communicating device without revealing the communication's content.  There are two types of IP addresses: dynamic and static.  A static IP address is one that is permanently assigned to a given computer on a network.  With dynamic IP addressing, however, each time a computer establishes an Internet connection, that computer is assigned a different IP address. Based on the IP address used for a given online transaction, law enforcement may be able to determine the geographical location of the Internet connection used in the transaction.

22.     A network is two or more computers or other devices connected to each other that can exchange information with each other via some transmission method, such as by wires, cables, or radio waves.  The equipment that connects a computer or other device to the network is commonly referred to as a network adapter.  Most network adapters have a Media Access Control

---

electronic communication method (email or text) and then continue discussions over more secure and encrypted communication methods.  Given that all three reporters were working on this same story, ███████████████████████████████████ there is sufficient reason exists to believe that the reporters communicated about the Classified Information amongst themselves, and/or with their sources who had the Classified Information.

("MAC") address assigned by the manufacturer of the adapter that is designed to be a unique identifying number. An adapter's unique MAC address allows for proper routing of communications on a local area network and may be used for other purposes, such as authentication of customers by some network service providers. Unlike a device's IP address that often changes each time a device connects to the Internet, a MAC address is fixed at the time of manufacture of the adapter. Because the address does not change and is intended to be unique, a MAC address can allow law enforcement to identify whether communications sent or received at different times are associated with the same adapter.

23. On the Internet, data transferred between devices is not sent as a continuous stream, but rather it is split into discrete packets. Generally, a single communication is sent as a series of packets. When the packets reach their destination, the receiving device reassembles them into the complete communication. Each packet has two parts: a header with routing and control information, and a payload, which generally contains user data. The header contains non-content information such as the packet's source and destination IP addresses and the packet's size.

24. In addition, different Internet applications are associated with different "port numbers," or numeric identifiers. The port number is transmitted along with any communication using that application. For example, port 80 typically is associated with communications involving the World Wide Web. Port numbers are also used by many wireless carriers as a method for identifying a particular device on the wireless carrier's network.

**REQUEST FOR ORDER**

25. The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and

locate the individual(s) who are responsible for the criminal activity under investigation, their methods and techniques, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

26.     The United States further requests that the Order direct PROVIDER not to notify any person, including the subscriber or customer of each account listed in Part I of Attachment A, of the existence of the application of the United States or the Order for one year from the date of the Court's Order unless otherwise modified by the Court. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *See* 18 U.S.C. § 2705(b).[5]

27.     In this case, the proposed Order seeks information relevant to establishing the illegal activity under investigation and identifying the individual(s) responsible. Accordingly, disclosure may reveal the existence, scope, and direction of the United States's ongoing and confidential investigation. This investigation is also a complex, national security matter that deals with the potential disclosure of classified information by senior government officials. Once alerted to this aspect of the investigation, potential target(s) could be immediately prompted to destroy or

---

[5] The government relies on § 2705(b) to seek a preclusion-of-notice order because the government is requesting only non-content information pursuant to § 2703(d), an action which is authorized by § 2703(c). *See* 18 U.S.C. § 2703(c)(1)(B) ("governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when [it] . . . obtains a court order for such disclosure under subsection (d) of this section"). Under § 2703(c), the government has no obligation to notify the subscriber. *See* 18 U.S.C. § 2703(c)(3) ("governmental entity receiving records or information under this section is not required to provide notice to a subscriber or customer").

conceal incriminating evidence, alter their operational tactics to avoid future detection, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote computing services, the potential target(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity.

28.     Therefore, based on the foregoing, there are reasonable grounds to believe that notification of the existence of this Order would result in destruction of or tampering with evidence, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(3) and (5).

29.     Given the complex nature of the criminal activity under investigation, classified information, and also given that the criminal scheme may be ongoing, the United States anticipates that this confidential investigation will continue for the next year or longer.

30.     Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the application of the United States or the Order for a period of one year from the date of the Court's Order. Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or other reasons, the United States will make best efforts to notify the Court promptly and seek appropriate relief. [6]

31.     In this matter, the United States also requests that the instant Application and the Order be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the proposed Order. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Commn'ns, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court

---

[6] In this case, after the Provider produces the requested records, the government anticipates that it may - consistent with its obligations under 28 C.F.R. §50.10 - seek leave of the Court to notify the account holders before the one year has elapsed.

may seal the Application and Order to prevent serious jeopardy to an ongoing criminal investigation when such jeopardy creates a compelling governmental interest in confidentiality. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991). For the reasons stated above, the United States has a compelling interest in confidentiality to justify sealing the Application and Order. *See id.*

### Conclusion

32. Based on the foregoing, there are reasonable grounds to believe that the email communication records of Reporters A, B, and C of Publication 1 (the TARGET ACCOUNTS) sought from April 1, 2017, through on or about July 31, 2017, are relevant and material to an ongoing criminal investigation. Specifically, the foregoing shows that the reporters published the Classified Information in this period and actively communicated with persons who had access to the Classified Information during the period, ███████████ The records sought will help the United States to identify additional persons who were contacted by the reporters about the Classified Information and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

By: ████████████
Assistant United States Attorney
National Security Section
555 4th Street, N.W., ████████
Washington, D.C. 20530

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE APPLICATION OF USA FOR
2703(d) ORDER FOR THREE EMAIL
ACCOUNTS SERVICED BY
████████████ FOR
INVESTIGATION OF VIOLATION OF
18 U.S.C. §§ 641 AND 793

SC No. 20-sc-3355

**Filed Under Seal**

## **ORDER**

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring ████████████ ("PROVIDER"), an electronic communication and/or remote computing service provider located in ████████████ to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(3) and (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period

of one year (commencing on the date of this Order), unless the period of nondisclosure is later

modified by the Court.

    IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise

ordered by the Court, except that the United States may disclose the existence and/or contents of

the Application and this Order to appropriate law enforcement authorities.


Date: _____            _____

                                         UNITED STATES MAGISTRATE JUDGE

## <u>ATTACHMENT A</u>

### I. The Account(s)

The Order applies to certain records and other information for any Proofpoint Corporation ("PROVIDER") account(s) associated with the following identifier(s):

 (TARGET ACCOUNT 1);
(TARGET ACCOUNT 2);
(TARGET ACCOUNT 3)

and any preserved data and/or preservation numbers associated therewith.

### II. Records and other information to be disclosed

#### A. Information about the customer or subscriber of the Account(s)

PROVIDER is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Account(s)") constituting information about the customer or subscriber of the Account(s):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Local and long distance telephone connection records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. The identity of any cookies associated with each account;

7. Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number

("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI") associated with the accounts;

8. Other subscriber numbers or identities (including the registration IP address), including any current or past accounts linked to the Account(s) by telephone number, recovery or alternate e-mail address, IP address, or other unique device or user identifier;

9. Information related to other electronic communication service providers used by the customer/user to store or maintain the data associated with the communication;

10. Use of other internet Means and source of payment for such service (including any credit card or bank account number) and billing records. and

11. A statement as to whether the Account(s) or any devices associated with the Account(s) had location services or GPS activated or enabled, and if so, whether PROVIDER does or does not have geolocation records available for the Account(s) or any devices associated with the Account(s) for the time period from April 15, 2017 until July 31, 2017.

## B. All records and other information relating to the Account(s) (except the contents of communications)

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) for the time period from April 15, 2017 until July 31, 2017, constituting all records and other information relating to the Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information; and

3. Identification of any PROVIDER account(s) that are linked to the Account(s) by cookies, including all PROVIDER user IDs that logged into PROVIDER's services by the same machine as the Account(s).

4. Identification of any forwarding email services used to or from the Account, including the header identification and metadata information associated with communications forwarded to PROVIDER Accounts from other email accounts or forwarding services.

5. Identification of all services and features activated on the Account(s), including use of cloud storage and related features.

## A. Definitions:

1. As used herein, "unique device or user identifier" refers to any unique number or set of characters stored or generated by providers that may be used to identify or track users or devices, including but not limited to cookies, unique application number, universally unique identifier or "UUID," globally unique identifier or "GUID," Advertising ID, Android ID, MAC address, IMEI number, MEID number, and electronic serial number or "ESN."

2. As used herein, "cookies" refers to any cookie technology used by providers, including cookies related to user preferences (such as NID), security cookies, process cookies, cookies used for advertising (such as NID, SID, IDE, DSID, FLC, AID, TAID, and exchange_uid), cookies linking activity across devices (such as AID and TAID), session state cookies, and cookies pertaining to analytical products.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE APPLICATION OF USA FOR
2703(d) ORDER FOR THREE EMAIL
ACCOUNTS SERVICED BY
████████████████ FOR
INVESTIGATION OF VIOLATION OF
18 U.S.C. §§ 641 AND 793

SC No. 20-sc-3355

**Filed Under Seal**

## ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring ████████████ ("PROVIDER"), an electronic communication and/or remote computing service provider located in ██████████████ to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(3) and (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period

of one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.

Date: _____

2020.12.30
21:55:19 -05'00'

UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### I. The Account(s)

The Order applies to certain records and other information for any Proofpoint Corporation ("PROVIDER") account(s) associated with the following identifier(s):

 (TARGET ACCOUNT 1);
(TARGET ACCOUNT 2);
TARGET ACCOUNT 3)

and any preserved data and/or preservation numbers associated therewith.

### II. Records and other information to be disclosed

#### A. Information about the customer or subscriber of the Account(s)

PROVIDER is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Account(s)") constituting information about the customer or subscriber of the Account(s):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Local and long distance telephone connection records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. The identity of any cookies associated with each account;

7. Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number

("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI") associated with the accounts;

8. Other subscriber numbers or identities (including the registration IP address), including any current or past accounts linked to the Account(s) by telephone number, recovery or alternate e-mail address, IP address, or other unique device or user identifier;

9. Information related to other electronic communication service providers used by the customer/user to store or maintain the data associated with the communication;

10. Use of other internet Means and source of payment for such service (including any credit card or bank account number) and billing records. and

11. A statement as to whether the Account(s) or any devices associated with the Account(s) had location services or GPS activated or enabled, and if so, whether PROVIDER does or does not have geolocation records available for the Account(s) or any devices associated with the Account(s) for the time period from April 15, 2017 until July 31, 2017.

**B. All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) for the time period from April 15, 2017 until July 31, 2017, constituting all records and other information relating to the Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information; and

3. Identification of any PROVIDER account(s) that are linked to the Account(s) by cookies, including all PROVIDER user IDs that logged into PROVIDER's services by the same machine as the Account(s).

4. Identification of any forwarding email services used to or from the Account, including the header identification and metadata information associated with communications forwarded to PROVIDER Accounts from other email accounts or forwarding services.

5. Identification of all services and features activated on the Account(s), including use of cloud storage and related features.

**A. Definitions:**

1. As used herein, "unique device or user identifier" refers to any unique number or set of characters stored or generated by providers that may be used to identify or track users or devices, including but not limited to cookies, unique application number, universally unique identifier or "UUID," globally unique identifier or "GUID," Advertising ID, Android ID, MAC address, IMEI number, MEID number, and electronic serial number or "ESN."

2. As used herein, "cookies" refers to any cookie technology used by providers, including cookies related to user preferences (such as NID), security cookies, process cookies, cookies used for advertising (such as NID, SID, IDE, DSID, FLC, AID, TAID, and exchange_uid), cookies linking activity across devices (such as AID and TAID), session state cookies, and cookies pertaining to analytical products.