# ATTACHMENT

# A

*Redacted Docket Materials*

# UNITED STATES MAGISTRATE JUDGE
# U.S. DISTRICT COURT BUILDING
# WASHINGTON, D.C.

PLEASE ISSUE:     [   ] Arrest   [ X ]  Search  [   ]  Seizure

|  |  |
|---|---|
| Warrant for: | INFORMATION ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY TWITTER PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 2101 |

Violation:     [   ] D.C.C.          [ X ] U.S.C.        [ X ] C.F.R.   Title: 18

Section(s):    2101

Date:          June 26, 2020

AUSA:          Luke M. Jones
               Assistant United States Attorney

Phone:         (202) 252-7066

Email:         luke.jones@usdoj.gov

---

COMPLETE FOR ALL WARRANTS:

*The following information must be provided for ALL warrants.*

Officer / Agent Name:          █████████

Badge/Agent Number:          ████████

Agency / Unit:          ██████

Officer/Agent's 24 Hour Telephone Number (*i.e.*, cell number): ████████████

# UNITED STATES DISTRICT COURT

for the

District of Columbia

In the Matter of the Search of                )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)*  )          Case No. 20-SC-1615
INFORMATION ASSOCIATED WITH ONE ACCOUNT(S)     )
STORED AT PREMISES CONTROLLED BY TWITTER       )
PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF )
VIOLATION OF 18 U.S.C. 2101                     )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | | *Offense Description* |
|---|---|---|
| 18 U.S.C. § 2101 | Violations of the Federal Riot Act | |

The application is based on these facts:

See attached Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth ████████████████

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 06/26/2020

_____
*Judge's signature*

City and state: _____ Washington, D.C.          Robin M. Meriweather, U.S. Magistrate Judge
                                                 *Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 20-SC-1615
INFORMATION ASSOCIATED WITH ONE ACCOUNT(S) )
STORED AT PREMISES CONTROLLED BY TWITTER )
PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF )
VIOLATION OF 18 U.S.C. 2101 )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Northern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:
See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

**YOU ARE COMMANDED** to execute this warrant on or before _____July 10, 2020_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____U.S. Magistrate Judge Robin M. Meriweather_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____06/26/2020_____

_____
*Judge's signature*

City and state: Washington, D.C. _____ Robin M. Meriweather U.S. Magistrate Judge
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br><br>  20-SC-1615 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

---

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____

*Executing officer's signature*

_____

*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information which is associated with the Twitter account(s) identified by ███████████ and which is stored at premises owned, maintained, controlled, or operated by Twitter, a company headquartered in San Francisco, CA.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized and Procedures
to Facilitate Execution of the Warrant**

**I.      Information to be disclosed by Twitter ("PROVIDER") to facilitate execution of
the warrant**

To the extent that the information described in Attachment A is within the possession,
custody, or control of Twitter, including any messages, records, files, logs, or information that
have been deleted but are still available to Twitter, or have been preserved pursuant to a request
made under 18 U.S.C. § 2703(f), Twitter is required to disclose the following information to the
government for each account listed in Attachment A:

a.      All identity and contact information, including full name, e-mail address, physical
address (including city, state, and zip code), date of birth, gender, hometown,
occupation, and other personal identifiers;

b.      All past and current usernames, account passwords, and names associated with the
account;

c.      The dates and times at which the account and profile were created, and the Internet
Protocol ("IP") address at the time of sign-up;

d.      From May 25, 2020 to present, all IP logs and other documents showing the IP
address, date, and time of each login to the account;

e.      All data and information associated with the profile page, including photographs,
"bios," and profile backgrounds and themes;

f.      From May 25, 2020 to present, all "Tweets" and Direct Messages sent, received,
"favorited," or retweeted by the account, and all photographs or images included in
those Tweets and Direct Messages;

1

g.   From May 25, 2020 to present, all information from the "Connect" tab for the account, including all lists of Twitter users who have favorited or retweeted Tweets posted by the account, as well as a list of all Tweets that include the username associated with the account (*i.e.*, "mentions" or "replies");

h.   From May 25, 2020 to present, all photographs and images in the user gallery for the account;

i.   From May 25, 2020 to present, all location data associated with the account, including all information collected by the "Tweet With Location" service;

j.   From May 25, 2020 to present, all information about the account's use of Twitter's link service, including all longer website links that were shortened by the service, all resulting shortened links, and all information about the number of times that a link posted by the account was clicked;

k.   From May 25, 2020 to present, all data and information that has been deleted by the user;

l.   From May 25, 2020 to present, a list of all of the people that the user follows on Twitter and all people who are following the user (*i.e.*, the user's "following" list and "followers" list);

m.   From May 25, 2020 to present, a list of all users that the account has "unfollowed" or blocked;

n.   From May 25, 2020 to present, all "lists" created by the account;

o.   From May 25, 2020 to present, all information on the "Who to Follow" list for the account;

p.   All privacy and account settings;

q. From May 25, 2020 to present, all records of Twitter searches performed by the account, including all past searches saved by the account;

r. From May 25, 2020 to present, all information about connections between the account and third-party websites and applications;

s. From May 25, 2020 to present, all records pertaining to communications between Twitter and any person regarding the user or the user's Twitter account, including contacts with support services, and all records of actions taken, including suspensions of the account.

Within fourteen days of the issuance of this warrant, PROVIDER shall deliver the information set forth above via United States mail, courier, or e-mail to the following:



## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 2101, including, for each user ID identified on Attachment A, information pertaining to the following matters:

      a. Incitement or promotion or rioting in Washington, DC, between May 25, 2020 and present.

      b. Evidence indicating how and when the Twitter account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Twitter account owner;

      c. Evidence indicating the Twitter account owner's state of mind as it relates to the crime under investigation;

      d. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

      e. The identity of the person(s) who communicated with the user ID matters relating to, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the

disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**III.     Government procedures for warrant execution**

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by _____ ("PROVIDER"), and my title is _____.
I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER.  The attached records consist of:

_____

[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.      such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____

Date                                                     Signature

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
ONE ACCOUNT STORED AT
PREMISES CONTROLLED BY
TWITTER PURSUANT TO 18 U.S.C.
2703 FOR INVESTIGATION OF
VIOLATION OF 18 U.S.C. 2101

SC No. 20-sc-1615

**Filed Under Seal**

*Reference:* **USAO Ref. #** ████████ *Subject Account(s):* ██████████████

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, ████████████ being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information which is associated with one account – that is, ████████████ (the "SUBJECT TWITTER ACCOUNT") – which is stored at premises controlled by Twitter ("PROVIDER"), an electronic communications services provider and/or remote computing services provider which is headquartered in San Francisco, CA.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require PROVIDER to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.



4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this matter.

5.     Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. § 2101 (Rioting) have been committed by the user of the SUBJECT TWITTER ACCOUNT.  There is

also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

## JURISDICTION

6.    This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC.  *See* 18 U.S.C. § 3237.

## PROBABLE CAUSE

7.    The probable cause for this warrant comes from suspected violations of the Federal Riot Act, 18 U.S.C. § 2101, which reads, in part:

(a) Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent--

(1) to incite a riot; or

(2) to organize, promote, encourage, participate in, or carry on a riot; or

(3) to commit any act of violence in furtherance of a riot; or

(4) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot;

and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified in subparagraph (A),(B), (C), or (D) of this paragraph—

Shall be fined under this title, or imprisoned not more than five years, or both.

8.      Under 18 U.S.C. § 2102(a),  the term "riot" means "a public disturbance involving (1) an act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual or (2) a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual."

### *Twitter Account*

9.      On Thursday, May 28, 2020, law enforcement agencies in the District of Columbia were made aware of a protests scheduled for May 28 and 29, 2020, that were organized in response to ███████████████████████████████ and were promoted by the SUBJECT TWITTER ACCOUNT, which contained an avatar of an individual, as shown below:



10.     On May 28, 2020, and as shown below, the SUBJECT TWITTER ACCOUNT also posted the following text: ███████████████████████████

4



11. Your Affiant other law enforcement officers were assigned to observe and coordinate resources for local law enforcement and the FBI in connection with protests within the District of Columbia during this period, and your affiant and other officers personally observed acts beginning on Friday, May 29, 2020, that appeared to satisfy the statutory definition of "riot," including the intentional burning of trees and trash cans, assaults on law enforcement with bricks and glass bottles, the destruction of private property, including the smashing of glass on storefronts, and the theft and looting of items from within stores, including at █████████

12. On Saturday, May 30, 2020, and as shown below, the SUBJECT TWITTER ACCOUNT tweeted, '██████████████████████████████████████

██████████████████████████████████████████



13.    On Sunday, May 31, 2020, and as shown below, law enforcement observed that the SUBJECT TWITTER ACCOUNT tweeted, 

14.    At some point after these tweets, the SUBJECT TWITTER ACCOUNT was suspended based on an apparent violation of Twitter's terms of service.



15.    Law enforcement submitted a preservation letter to Twitter, preserving the contents of the SUBJECT TWITTER ACCOUNT.

16.    Your Affiant used ▮▮▮▮▮ to review tweets and replies from the Subject Account that were retained by Google. ▮▮▮▮▮ temporarily stores pages from websites,

6

even if they are later altered, and is a useful open source method to view previous versions of webpages.

17.    Based on the the ███████ review, your affiant observed that, under the tweet from the SUBJECT TWITTER ACCOUNT advertising the ██████████████████████ the user of Twitter account ███████ identified himself as ███████████████ ████████████████████ The user of the SUBJECT TWITTER ACCOUNT identified himself as ███████.



18.    In the same review, your Affiant noted that two Twitter accounts cited concerns regarding the event, stating that it was not a peaceful protest and suggesting Government buildings be burned, as shown below.

7



19.     On a separate Twitter thread, the Twitter account for  tweeted that it had no affiliation with an event promoted by the Subject Account, and, and, the SUBJECT TWITTER ACCOUNT replied:



20.    Your Affiant notes that throughout law enforcement reporting, cached recovery, and personal observation, the Twitter vanity name of the SUBJECT TWITTER ACCOUNT changed from ███████████████████████████████████ Based on training, investigative experience, and personal experience, however, your affiant knows the vanity name on a Twitter account can be changed by a user and that changes do not typically reflect that a different user is using the account.

### *Instagram Account*

21.    During its investigation, law enforcement identified an Instagram account under the name ████████ (the "SUBJECT INSTAGRAM ACCOUNT") which utilizes the same avatar photo as the SUBJECT TWITTER ACCOUNT, as shown below.



22.    The SUBJECT INSTAGRAM ACCOUNT contained 23 posts starting on May 27, 2020, and relating to protest activity in ████████████ For example, on May 28, 2020, and as shown below, the SUBJECT INSTAGRAM ACCOUNT posted, "████████████████ ████████████████████████████████████████ In the comments section to the Instagram post, the user states, "████████████████ ██████████████████████████ These stores are all located in the ██████████████ where apparent rioting activity was observed

9



23.    The SUBJECT INSTAGRAM ACCOUNT also posted a photo of a television screen showing what appears to have been ████████████ of the account user regarding protest activity, as well as an overhead photograph of protest activity.    Instagram user





***GoFundMe Page and User's True Name***

24.     The SUBJECT INSTAGRAM ACCOUNT has a web link to a GoFundMe page that appears to have raised over ▬▬ related to the protests referenced above.  The creator of the GoFundMe page is listed as ▬▬▬▬▬ and the creator identifies himself as ▬▬ ▬▬▬▬

25.     Law Enforcement database queries of '▬▬▬▬' provided a positive return



The ▬▬▬▬ for ▬▬▬ is consistent with the photos from the SUBJECT TWITTER ACCOUNT and the SUBJECT INSTAGRAM ACCOUNT.

26.     Based on the information above, your affiant submits there is probable cause to believe that violations of 18 U.S.C. § 2101 (Rioting) have been committed by the user of the SUBJECT TWITTER ACCOUNT AND SUBJECT INSTAGRAM ACCOUNT, and that acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC.

There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

**BACKGROUND CONCERNING PROVIDER'S ACCOUNTS**

27.     Twitter owns and operates a free-access social-networking website of the same name that can be accessed at http://www.twitter.com. Twitter allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and location information. Twitter also permits users create and read 140-character messages called "Tweets," and to restrict their "Tweets" to individuals whom they approve. These features are described in more detail below.

28.     Upon creating a Twitter account, a Twitter user must create a unique Twitter username and an account password, and the user may also select a different name of 20 characters or fewer to identify his or her Twitter account. The Twitter user may also change this username, password, and name without having to open a new Twitter account.

29.     Twitter asks users to provide basic identity and contact information, either during the registration process or thereafter. This information may include the user's full name, e-mail addresses, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers. For each user, Twitter may retain information about the date and time at which the user's profile was created, the date and time at which the account was created, and the Internet Protocol ("IP") address at the time of sign-up. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access a given Twitter account.

30.     A Twitter user can post a personal photograph or image (also known as an "avatar") to his or her profile, and can also change the profile background or theme for his or her account page. In addition, Twitter users can post "bios" of 160 characters or fewer to their profile pages.

31.     Twitter also keeps IP logs for each user. These logs contain information about the user's logins to Twitter including, for each access, the IP address assigned to the user and the date stamp at the time the user accessed his or her profile.

32.     As discussed above, Twitter users can use their Twitter accounts to post "Tweets" of 140 characters or fewer. Each Tweet includes a timestamp that displays when the Tweet was posted to Twitter. Twitter users can also "favorite," "retweet," or reply to the Tweets of other users. In addition, when a Tweet includes a Twitter username, often preceded by the @ sign, Twitter designates that Tweet a "mention" of the identified user. In the "Connect" tab for each account, Twitter provides the user with a list of other users who have "favorited" or "retweeted" the user's own Tweets, as well as a list of all Tweets that include the user's username (*i.e.*, a list of all "mentions" and "replies" for that username).

33.     Twitter users can include photographs or images in their Tweets. Each Twitter account also is provided a user gallery that includes images that the user has shared on Twitter, including images uploaded by other services.

34.     Twitter users can also opt to include location data in their Tweets, which will reveal the users' locations at the time they post each Tweet. This "Tweet With Location" function is off by default, so Twitter users must opt in to the service. In addition, Twitter users may delete their past location data.

35.     When Twitter users want to post a Tweet that includes a link to a website, they can use Twitter's link service, which converts the longer website link into a shortened link that begins with http://t.co. This link service measures how many times a link has been clicked.

36.     A Twitter user can "follow" other Twitter users, which means subscribing to those users' Tweets and site updates. Each user profile page includes a list of the people who are following that user (*i.e.*, the user's "followers" list) and a list of people whom that user follows (*i.e.*, the user's "following" list). Twitters users can "unfollow" users whom they previously followed, and they can also adjust the privacy settings for their profile so that their Tweets are visible only to the people whom they approve, rather than to the public (which is the default setting). A Twitter user can also group other Twitter users into "lists" that display on the right side of the user's home page on Twitter. Twitter also provides users with a list of "Who to Follow," which includes a few recommendations of Twitter accounts that the user may find interesting, based on the types of accounts that the user is already following and who those people follow.

37.     In addition to posting Tweets, a Twitter user can also send Direct Messages (DMs) to one of his or her followers. These messages are typically visible only to the sender and the recipient, and both the sender and the recipient have the power to delete the message from the inboxes of both users. As of January 2012, Twitter displayed only the last 100 DMs for a particular user, but older DMs are stored on Twitter's database.

38.     Twitter users can configure the settings for their Twitter accounts in numerous ways. For example, a Twitter user can configure his or her Twitter account to send updates to the user's mobile phone, and the user can also set up a "sleep time" during which Twitter updates will not be sent to the user's phone.

14

39.     Twitter includes a search function that enables its users to search all public Tweets for keywords, usernames, or subject, among other things. A Twitter user may save up to 25 past searches.

40.     Twitter users can connect their Twitter accounts to third-party websites and applications, which may grant these websites and applications access to the users' public Twitter profiles.

41.     If a Twitter user does not want to interact with another user on Twitter, the first user can "block" the second user from following his or her account.

42.     In some cases, Twitter users may communicate directly with Twitter about issues relating to their account, such as technical problems or complaints. Social-networking providers like Twitter typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. Twitter may also suspend a particular user for breaching Twitter's terms of service, during which time the Twitter user will be prevented from using Twitter's services.

43.     As explained herein, information stored in connection with a Twitter account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Twitter user's account information, IP log, stored electronic communications, and other data retained by Twitter, can indicate who has used or controlled the Twitter account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, communications, "tweets"

15

(status updates) and "tweeted" photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Twitter account at a relevant time. Further, Twitter account activity can show how and when the account was accessed or used. For example, as described herein, Twitter logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Twitter access, use, and events relating to the crime under investigation. Additionally, Twitter builds geo-location into some of its services. If enabled by the user, physical location is automatically added to "tweeted" communications. This geographic and timeline information may tend to either inculpate or exculpate the Twitter account owner. Last, Twitter account activity may provide relevant insight into the Twitter account owner's state of mind as it relates to the offense under investigation. For example, information on the Twitter account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a criminal plan) or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

44. Therefore, the computers of Twitter are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Twitter, such as account access information, transaction information, and other account information.

## REQUEST TO SUBMIT WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

45. I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in

connection with this Application for a Search Warrant. I submit that Assistant U.S. Attorney Luke Jones, an attorney for the United States, is capable of identifying my voice and telephone number for the Court.

## CONCLUSION

46.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted



Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on June 26th, 2020

_____
ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES MAGISTRATE JUDGE
# U.S. DISTRICT COURT BUILDING
# WASHINGTON, D.C.

PLEASE ISSUE:    [   ] Arrest    [ X ]  Search  [   ]  Seizure


| Warrant for: | INFORMATION ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY TWITTER PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 2101 |
|---|---|

Violation:    [   ] D.C.C.         [ X ] U.S.C.        [ X ] C.F.R.   Title: 18

Section(s):    2101

Date:    June 26, 2020

AUSA:    Luke M. Jones
         Assistant United States Attorney

Phone:    (202) 252-7066

Email:    luke.jones@usdoj.gov

---

COMPLETE FOR ALL WARRANTS:

*The following information must be provided for ALL warrants.*

Officer / Agent Name:    ███████████

Badge/Agent Number:    ██████

Agency / Unit:    █████

Officer/Agent's 24 Hour Telephone Number (*i.e.*, cell number): █████████

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

Case 20-SC-01615 Document 1 Filed 08/07/20 Page 32 of 59
Case 1:22-cv-01099-RMU-ZMF Document 1-1 Filed 08/07/22 Page 32 of 50

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br><br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH ONE ACCOUNT(S)<br>STORED AT PREMISES CONTROLLED BY TWITTER<br>PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF<br>VIOLATION OF 18 U.S.C. 2101 | )<br>)<br>)<br>)<br>)<br>)     Case No. 20-SC-1615 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

located in the     Northern     District of     California    , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2101 | Violations of the Federal Riot Act |

The application is based on these facts:
See attached Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of     days *(give exact ending date if more than 30 days:*     *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth ███████████████████

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
         telephone          *(specify reliable electronic means).*

Date:     06/26/2020

City and state:     Washington, D.C.

*Judge's signature*

2020.06.26 18:42:49 -04'00'

Robin M. Meriweather, U.S. Magistrate Judge

*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original      ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.   20-SC-1615 |
| INFORMATION ASSOCIATED WITH ONE ACCOUNT(S) | ) |
| STORED AT PREMISES CONTROLLED BY TWITTER | ) |
| PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF | ) |
| VIOLATION OF 18 U.S.C. 2101 | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the    Northern    District of      California     
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

**YOU ARE COMMANDED** to execute this warrant on or before      July 10, 2020      *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   U.S. Magistrate Judge Robin M. Meriweather   .
                                                         *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   06/26/2020  

**2020.06.26 18:43:11 -04'00'**

*Judge's signature*

City and state:   Washington, D.C.  

Robin M. Meriweather U.S. Magistrate Judge
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br> 20-SC-1615 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information which is associated with the Twitter account(s) identified by  and which is stored at premises owned, maintained, controlled, or operated by Twitter, a company headquartered in San Francisco, CA.

## **ATTACHMENT B**

**Particular Things to be Seized and Procedures
to Facilitate Execution of the Warrant**

I.     **Information to be disclosed by Twitter ("PROVIDER") to facilitate execution of
the warrant**

To the extent that the information described in Attachment A is within the possession,

custody, or control of Twitter, including any messages, records, files, logs, or information that

have been deleted but are still available to Twitter, or have been preserved pursuant to a request

made under 18 U.S.C. § 2703(f), Twitter is required to disclose the following information to the

government for each account listed in Attachment A:

a.     All identity and contact information, including full name, e-mail address, physical

address (including city, state, and zip code), date of birth, gender, hometown,

occupation, and other personal identifiers;

b.     All past and current usernames, account passwords, and names associated with the

account;

c.     The dates and times at which the account and profile were created, and the Internet

Protocol ("IP") address at the time of sign-up;

d.     From May 25, 2020 to present, all IP logs and other documents showing the IP

address, date, and time of each login to the account;

e.     All data and information associated with the profile page, including photographs,

"bios," and profile backgrounds and themes;

f.     From May 25, 2020 to present, all "Tweets" and Direct Messages sent, received,

"favorited," or retweeted by the account, and all photographs or images included in

those Tweets and Direct Messages;

1

g.      From May 25, 2020 to present, all information from the "Connect" tab for the account, including all lists of Twitter users who have favorited or retweeted Tweets posted by the account, as well as a list of all Tweets that include the username associated with the account (*i.e.*, "mentions" or "replies");

h.      From May 25, 2020 to present, all photographs and images in the user gallery for the account;

i.      From May 25, 2020 to present, all location data associated with the account, including all information collected by the "Tweet With Location" service;

j.      From May 25, 2020 to present, all information about the account's use of Twitter's link service, including all longer website links that were shortened by the service, all resulting shortened links, and all information about the number of times that a link posted by the account was clicked;

k.      From May 25, 2020 to present, all data and information that has been deleted by the user;

l.      From May 25, 2020 to present, a list of all of the people that the user follows on Twitter and all people who are following the user (*i.e.*, the user's "following" list and "followers" list);

m.      From May 25, 2020 to present, a list of all users that the account has "unfollowed" or blocked;

n.      From May 25, 2020 to present, all "lists" created by the account;

o.      From May 25, 2020 to present, all information on the "Who to Follow" list for the account;

p.      All privacy and account settings;

q.     From May 25, 2020 to present, all records of Twitter searches performed by the account, including all past searches saved by the account;

r.     From May 25, 2020 to present, all information about connections between the account and third-party websites and applications;

s.     From May 25, 2020 to present, all records pertaining to communications between Twitter and any person regarding the user or the user's Twitter account, including contacts with support services, and all records of actions taken, including suspensions of the account.

Within fourteen days of the issuance of this warrant, PROVIDER shall deliver the information set forth above via United States mail, courier, or e-mail to the following:



## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 2101, including, for each user ID identified on Attachment A, information pertaining to the following matters:

        a.   Incitement or promotion or rioting in Washington, DC, between May 25, 2020 and present.

        b.   Evidence indicating how and when the Twitter account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Twitter account owner;

        c.   Evidence indicating the Twitter account owner's state of mind as it relates to the crime under investigation;

        d.   The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

        e.   The identity of the person(s) who communicated with the user ID matters relating to, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the

disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

### III. Government procedures for warrant execution

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____ ("PROVIDER"), and my title is _____. I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER. The attached records consist of:

_____

[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

I further state that:

a.	all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.	such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

1.	the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.	the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                      Signature

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
ONE ACCOUNT STORED AT
PREMISES CONTROLLED BY
TWITTER PURSUANT TO 18 U.S.C.
2703 FOR INVESTIGATION OF
VIOLATION OF 18 U.S.C. 2101

SC No. 20-sc-1615

**Filed Under Seal**

*Reference:*     ***USAO Ref. #*** ▮▮▮▮▮▮▮ ***Subject Account(s):*** ▮▮▮▮▮▮▮▮▮▮

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, ▮▮▮▮▮▮▮ being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information which is associated with one account – that is, ▮▮▮▮▮▮▮▮ (the "SUBJECT TWITTER ACCOUNT") – which is stored at premises controlled by Twitter ("PROVIDER"), an electronic communications services provider and/or remote computing services provider which is headquartered in San Francisco, CA. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require PROVIDER to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.



4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. § 2101 (Rioting) have been committed by the user of the SUBJECT TWITTER ACCOUNT.  There is

also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

## JURISDICTION

6.     This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC.  *See* 18 U.S.C. § 3237.

## PROBABLE CAUSE

7.     The probable cause for this warrant comes from suspected violations of the Federal Riot Act, 18 U.S.C. § 2101, which reads, in part:

(a) Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent--

(1) to incite a riot; or

(2) to organize, promote, encourage, participate in, or carry on a riot; or

(3) to commit any act of violence in furtherance of a riot; or

(4) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot;

and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified in subparagraph (A),(B), (C), or (D) of this paragraph—

Shall be fined under this title, or imprisoned not more than five years, or both.

8. Under 18 U.S.C. § 2102(a), the term "riot" means "a public disturbance involving (1) an act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual or (2) a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual."

### *Twitter Account*

9. On Thursday, May 28, 2020, law enforcement agencies in ███████████████ were made aware of a protests scheduled for May 28 and 29, 2020, that were organized in response to ████████████████████████████████ and were promoted by the SUBJECT TWITTER ACCOUNT, which contained an avatar of an individual, as shown below:

10. On May 28, 2020, and as shown below, the SUBJECT TWITTER ACCOUNT also posted the following text: ████████████████████████████



11.     Your Affiant other law enforcement officers were assigned to observe and coordinate resources for local law enforcement and the FBI in connection with protests within the ███████████ during this period, and your affiant and other officers personally observed acts beginning on Friday, May 29, 2020, that appeared to satisfy the statutory definition of "riot," including the intentional burning of trees and trash cans, assaults on law enforcement with bricks and glass bottles, the destruction of private property, including the smashing of glass on storefronts, and the theft and looting of items from within stores, including at ███████

12.     On Saturday, May 30, 2020, and as shown below, the SUBJECT TWITTER ACCOUNT tweeted, ████████████████████████████████████

████████████████████████████████████████



13. On Sunday, May 31, 2020, and as shown below, law enforcement observed that the SUBJECT TWITTER ACCOUNT tweeted, ███████████████████████

███████████████



14. At some point after these tweets, the SUBJECT TWITTER ACCOUNT was suspended based on an apparent violation of Twitter's terms of service.



15. Law enforcement submitted a preservation letter to Twitter, preserving the contents of the SUBJECT TWITTER ACCOUNT.

16. Your Affiant used ██████████ to review tweets and replies from the Subject Account that were retained by Google. ██████████ temporarily stores pages from websites,

even if they are later altered, and is a useful open source method to view previous versions of webpages.

17.     Based on the the ███████ review, your affiant observed that, under the tweet from the SUBJECT TWITTER ACCOUNT advertising the ████████████████████████ the user of Twitter account ██████████ identified himself as ██████████████████ ████████████████████████ The user of the SUBJECT TWITTER ACCOUNT identified himself as ██████████



18.     In the same review, your Affiant noted that two Twitter accounts cited concerns regarding the event, stating that it was not a peaceful protest and suggesting Government buildings be burned, as shown below.

7



19. On a separate Twitter thread, the Twitter account for  tweeted that it had no affiliation with an event promoted by the Subject Account, and, and, the SUBJECT TWITTER ACCOUNT replied:

8

20.     Your Affiant notes that throughout law enforcement reporting, cached recovery, and personal observation, the Twitter vanity name of the SUBJECT TWITTER ACCOUNT changed from █████████████████████████████ Based on training, investigative experience, and personal experience, however, your affiant knows the vanity name on a Twitter account can be changed by a user and that changes do not typically reflect that a different user is using the account.

### *Instagram Account*

21.     During its investigation, law enforcement identified an Instagram account under the name ██████ (the "SUBJECT INSTAGRAM ACCOUNT") which utilizes the same avatar photo as the SUBJECT TWITTER ACCOUNT, as shown below.

22.     The SUBJECT INSTAGRAM ACCOUNT contained 23 posts starting on May 27, 2020, and relating to protest activity in ███████████ For example, on May 28, 2020, and as shown below, the SUBJECT INSTAGRAM ACCOUNT posted, ████████████████ ████████████████████████████████ In the comments section to the Instagram post, the user states, ████████████████ ████████████████ These stores are all located in the ██████████ where apparent rioting activity was observed



23. The SUBJECT INSTAGRAM ACCOUNT also posted a photo of a television screen showing what appears to have been ███████████ of the account user regarding protest activity, as well as an overhead photograph of protest activity. Instagram user ██████████████████████████████





***GoFundMe Page and User's True Name***

24.     The SUBJECT INSTAGRAM ACCOUNT has a web link to a GoFundMe page that appears to have raised over ▮▮▮▮ related to the protests referenced above.  The creator of the GoFundMe page is listed as ▮▮▮▮▮▮▮ and the creator identifies himself as "▮▮▮▮▮▮▮▮▮▮▮▮

25.     Law Enforcement database queries of "▮▮▮▮▮▮▮ provided a positive return of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The ▮▮▮▮▮▮▮▮▮ for ▮▮▮▮▮▮ is consistent with the photos from the SUBJECT TWITTER ACCOUNT and the SUBJECT INSTAGRAM ACCOUNT.

26.     Based on the information above, your affiant submits there is probable cause to believe that violations of 18 U.S.C. § 2101 (Rioting) have been committed by the user of the SUBJECT TWITTER ACCOUNT AND SUBJECT INSTAGRAM ACCOUNT, and that acts or omissions in furtherance of the offenses under investigation occurred within ▮▮▮▮▮▮▮▮

11

There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

## BACKGROUND CONCERNING PROVIDER'S ACCOUNTS

27. Twitter owns and operates a free-access social-networking website of the same name that can be accessed at http://www.twitter.com. Twitter allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and location information. Twitter also permits users create and read 140-character messages called "Tweets," and to restrict their "Tweets" to individuals whom they approve. These features are described in more detail below.

28. Upon creating a Twitter account, a Twitter user must create a unique Twitter username and an account password, and the user may also select a different name of 20 characters or fewer to identify his or her Twitter account. The Twitter user may also change this username, password, and name without having to open a new Twitter account.

29. Twitter asks users to provide basic identity and contact information, either during the registration process or thereafter. This information may include the user's full name, e-mail addresses, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers. For each user, Twitter may retain information about the date and time at which the user's profile was created, the date and time at which the account was created, and the Internet Protocol ("IP") address at the time of sign-up. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access a given Twitter account.

30.     A Twitter user can post a personal photograph or image (also known as an "avatar") to his or her profile, and can also change the profile background or theme for his or her account page. In addition, Twitter users can post "bios" of 160 characters or fewer to their profile pages.

31.     Twitter also keeps IP logs for each user. These logs contain information about the user's logins to Twitter including, for each access, the IP address assigned to the user and the date stamp at the time the user accessed his or her profile.

32.     As discussed above, Twitter users can use their Twitter accounts to post "Tweets" of 140 characters or fewer. Each Tweet includes a timestamp that displays when the Tweet was posted to Twitter. Twitter users can also "favorite," "retweet," or reply to the Tweets of other users. In addition, when a Tweet includes a Twitter username, often preceded by the @ sign, Twitter designates that Tweet a "mention" of the identified user. In the "Connect" tab for each account, Twitter provides the user with a list of other users who have "favorited" or "retweeted" the user's own Tweets, as well as a list of all Tweets that include the user's username (*i.e.*, a list of all "mentions" and "replies" for that username).

33.     Twitter users can include photographs or images in their Tweets. Each Twitter account also is provided a user gallery that includes images that the user has shared on Twitter, including images uploaded by other services.

34.     Twitter users can also opt to include location data in their Tweets, which will reveal the users' locations at the time they post each Tweet. This "Tweet With Location" function is off by default, so Twitter users must opt in to the service. In addition, Twitter users may delete their past location data.

35.     When Twitter users want to post a Tweet that includes a link to a website, they can use Twitter's link service, which converts the longer website link into a shortened link that begins with http://t.co. This link service measures how many times a link has been clicked.

36.     A Twitter user can "follow" other Twitter users, which means subscribing to those users' Tweets and site updates. Each user profile page includes a list of the people who are following that user (*i.e.*, the user's "followers" list) and a list of people whom that user follows (*i.e.*, the user's "following" list). Twitters users can "unfollow" users whom they previously followed, and they can also adjust the privacy settings for their profile so that their Tweets are visible only to the people whom they approve, rather than to the public (which is the default setting). A Twitter user can also group other Twitter users into "lists" that display on the right side of the user's home page on Twitter. Twitter also provides users with a list of "Who to Follow," which includes a few recommendations of Twitter accounts that the user may find interesting, based on the types of accounts that the user is already following and who those people follow.

37.     In addition to posting Tweets, a Twitter user can also send Direct Messages (DMs) to one of his or her followers. These messages are typically visible only to the sender and the recipient, and both the sender and the recipient have the power to delete the message from the inboxes of both users. As of January 2012, Twitter displayed only the last 100 DMs for a particular user, but older DMs are stored on Twitter's database.

38.     Twitter users can configure the settings for their Twitter accounts in numerous ways. For example, a Twitter user can configure his or her Twitter account to send updates to the user's mobile phone, and the user can also set up a "sleep time" during which Twitter updates will not be sent to the user's phone.

39.     Twitter includes a search function that enables its users to search all public Tweets for keywords, usernames, or subject, among other things. A Twitter user may save up to 25 past searches.

40.     Twitter users can connect their Twitter accounts to third-party websites and applications, which may grant these websites and applications access to the users' public Twitter profiles.

41.     If a Twitter user does not want to interact with another user on Twitter, the first user can "block" the second user from following his or her account.

42.     In some cases, Twitter users may communicate directly with Twitter about issues relating to their account, such as technical problems or complaints. Social-networking providers like Twitter typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. Twitter may also suspend a particular user for breaching Twitter's terms of service, during which time the Twitter user will be prevented from using Twitter's services.

43.     As explained herein, information stored in connection with a Twitter account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Twitter user's account information, IP log, stored electronic communications, and other data retained by Twitter, can indicate who has used or controlled the Twitter account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, communications, "tweets"

(status updates) and "tweeted" photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Twitter account at a relevant time. Further, Twitter account activity can show how and when the account was accessed or used. For example, as described herein, Twitter logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Twitter access, use, and events relating to the crime under investigation. Additionally, Twitter builds geo-location into some of its services. If enabled by the user, physical location is automatically added to "tweeted" communications. This geographic and timeline information may tend to either inculpate or exculpate the Twitter account owner. Last, Twitter account activity may provide relevant insight into the Twitter account owner's state of mind as it relates to the offense under investigation. For example, information on the Twitter account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a criminal plan) or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

44. Therefore, the computers of Twitter are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Twitter, such as account access information, transaction information, and other account information.

## REQUEST TO SUBMIT WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

45. I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in

connection with this Application for a Search Warrant. I submit that Assistant U.S. Attorney  an attorney for the United States, is capable of identifying my voice and telephone number for the Court.

## **CONCLUSION**

46.    Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted



Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on June 26th, 2020

2020.06.26 18:43:32
-04'00'

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE