# ATTACHMENT

# A

*Redacted Docket Materials*

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH TWO APPLE ID<br>ACCOUNTS PURSUANT TO 18 U.S.C. 2703 FOR<br>INVESTIGATION OF VIOLATION OF 18 U.S.C. 371, 641 | )<br>)<br>)<br>)<br>)<br>)    Case No. 19-sc-00853 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

located in the    Northern    District of    California    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371, 18 U.S.C § 641 | conspiracy to commit any offense against the United States, or to defraud the United States, or any agency in any manner and for any purpose, theft of United States government property |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more t█████████████████████████* under 18 U.S.C. § 3103a, the basis of which is set forth on the a████████

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date:    04/17/2019                 _____
                                          *Judge's signature*

City and state:    Washington, D.C.          Deborah A. Robinson, U.S. Magistrate Judge
                                               *Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 19-sc-00853 |
| INFORMATION ASSOCIATED WITH TWO APPLE ID ACCOUNTS PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 371, 641 | ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the     Northern     District of     California

*(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

**YOU ARE COMMANDED** to execute this warrant on or before     May 1, 2019     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     U.S. Magistrate Judge Deborah A. Robinson     .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    04/17/2019

_____
*Judge's signature*

City and state:   Washington, D.C.

Deborah A. Robinson, U.S. Magistrate Judge
*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br> 19-sc-00853 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information associated with two accounts that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at Apple Inc., 1 Infinite Loop, Cupertino, CA 95014. The two accounts are each identified by a DSID and email address as follows:

**ATTACHMENT B**

**Particular Things to be Seized and Procedures
to Facilitate Execution of the Warrant**

**Particular Things to be Seized**

## I.    Information to be disclosed by Apple

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.    For the time period **August 9, 2014 until the present** the contents of all communications and related transactional records for all Apple services used by an Account subscriber/user (such as e-mail services, contact lists, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services including, **iCLOUD records and updates,** including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating IP addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies). This includes iMessage (instant messages); FaceTime (video calls); iCloud, a file hosting, storage, and sharing

1

service, which allows users to store, access, share, and synchronize data across various digital devices, for example iCloud Photo Library and My Photo Stream for images and videos, iCloud Drive for documents, including presentations and spreadsheets, iCloud Tabs for synchronizing webpages, iWorks Apps (a suite of productivity apps), and iCloud Keychain (to store various usernames and passwords, credit card information, and Wi-Fi network information); Game Center (Apple's social gaming network, which allows users of Apple devices to play and share games with each other); Find My iPhone (remote location tracking and access to devices); Location Services (which allows apps and websites to access and use information about a user's approximate location); shared drives and document retention (including Time Capsule services), and App Store and iTunes Store (which allow users to purchase and download digital content, *e.g.*, applications) records, including for all devices utilizing the iCloud service;

       b.      For the time period **August 9, 2014 until the present,** the contents of all other data and related transactional records for all Apple services used by an Account user (such as e-mail services, contact lists, address books, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services, including iCloud and **all services referenced in paragraph (a) above,** including any information generated, modified, or stored by user(s) or Apple in connection with the Account (such as contacts, calendar data, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information);

       c.      For the time period **August 9, 2014 until the present:** All records concerning the online search and browsing history associated with the Account or its users (such as information collected through tracking cookies);

2

d.      For the time period **August 9, 2014 until the present:** All records and other information concerning any document, or other computer file created, stored, revised, or accessed in connection with the Account or by an Account user, including the contents and revision history of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

e.      All records regarding identification of the Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of payment (including any credit card or bank account number), records of session times and durations (including IP addresses, cookies, device information, and other identifiers linked to those sessions), records of account registration (including the IP address, cookies, device information, and other identifiers linked to account registration), length of service and types of services utilized, account status, methods of connecting, and server log files;

f.      All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile

3

Station Equipment Identities ("IMEI"), mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s), including unique application numbers and push notification tokens associated with the Account (including Apple Push Notifications ("APN"));

g.      Basic subscriber records and login history (including, as described in 18 U.S.C. § 2703(c)(2), names, addresses, records of session times and durations, length of service and types of service utilized, instrument numbers or other subscriber numbers or identities, and payment information) concerning any Apple account (including both current and historical accounts) ever linked to the Account by a common e-mail address (such as a common recovery e-mail address), or a common telephone number, means of payment (*e.g.*, credit card number), registration or login IP addresses (during one-week period), registration or login cookies or similar technologies, or any other unique device or user identifier;

h.      For the time period **August 9, 2014 until the present**:    All records of communications between Apple and any person regarding the Account, including contacts with support services and records of actions taken;

i.      Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel); and

j.      The contents of all emails, notes, data, and electronic messages associated with the account, including stored or preserved copies of data, documents, emails and messages sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and

4

length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

k.      The contents of all instant messages associated with the account **August 9, 2014 until the present**, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

l.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

m.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services

5

(including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

n.     All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

o.     All records pertaining to the types of service used, including application purchases, downloads, updates and backup records;

p.     All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken;

q.     All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).;

r.     All applications downloaded, used, or updated using Apple services, including iTunes and iCloud, including dates of acquisition, all updates, and any data associated with such applications which are in control of Apple;

Within **14 DAYS** of the issuance of this warrant, Apple shall deliver the information set forth above via United States mail, courier, or e-mail to the following:



6

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. §§ 371 and 641, as described in the affidavit submitted in support of this Warrant, including, for each Account, information pertaining to the following matters:

(a) Information that constitutes evidence of the identification or location of the user(s) of the Account;

(b) Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

(c) Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

(d) Information that constitutes evidence concerning how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user;

(e) Information that constitutes evidence concerning the unlawful access, use, sale, or transmission of information belonging to the United States government, conspiracy to commit such offenses, and conspiracy to defraud the United States government by interfering with its lawful functions, including the functions of the Department of State and the Department of Homeland Security.

7

(f) Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

(g) Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation; and

(h) Evidence that persons were involved in the theft, transport, or misappropriation of property or information owned by the United States;

(i) Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crimes under investigation;

(j) Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

(k) Evidence that persons have obstructed justice, deleted information, or provided false information to the U.S. government (to facilitate access to government information);

(l) Address books, buddy lists and complete contact information of known associates.

(m) The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to the theft, misappropriation, or transfer of U.S. property or information, including records that help reveal their whereabouts;

(n) evidence of user attribution showing who used, controlled, or owned the account at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

8

Case 1:22-cr-00859-RNSE-AUD Document 146-1 Filed 08/22/19 Page 14 of 73

(o) identification of any electronic devices being associated with the account;

(p) passwords, encryption keys, and other devices that may be necessary to access any electronic device associated with the account; and

(q) records of, or information about, the account's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" and "data" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

III.    **Government procedures for warrant execution**

The United States government will conduct a search of the information produced by the Apple and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from Apple that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

      I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by _____ ("PROVIDER"), and my title is _____. I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER.  The attached records consist of:

_____

      [GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

      I further state that:

      a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

      b.    such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

      1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

      2.    the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

      I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____

Date                    Signature

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH TWO APPLE ID ACCOUNTS PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 371, 641** | **SC No. 19-sc-00853** <br><br> **Filed Under Seal** |

Reference:        USAO Ref. ▆▆▆▆▆▆
Subject Accounts:  

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, ▆▆▆▆▆▆▆▆ being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.        I make this affidavit in support of an application for a search warrant for information associated with the two above-listed Apple ID accounts ("SUBJECT ACCOUNTS"), which is stored at premises controlled by Apple Inc. ("PROVIDER"), an electronic communications services provider and/or remote computing services provider headquartered at 1 Infinite Loop, Cupertino, CA. Apple also maintains a corporate office in the District of Columbia at 901 15th Street, N.W., Suite 1001. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require PROVIDER to disclose to the government copies of the information (including data and the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that

information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.



4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies, including the Department of Homeland Security (DHS) Office of Inspector General (DHS-OIG).  This affidavit

2

is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit, I submit respectfully that there is probable cause to believe that violations of 18 U.S.C. § 371 (conspiracy to commit any offense against the United States, or to defraud the United States, or any agency in any manner and for any purpose) and 18 U.S.C. § 641 (theft of United States government property) have been committed by ████████████████████████ ████████████ and other unidentified individuals. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes further described in Attachment B.

## JURISDICTION

6.      This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, the criminal offenses under investigation began or were committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, and no offender is known to have, or have had, residence within any United States district. *See* 18 U.S.C. § 3238.

7.      In addition, the statutes setting forth the federal offenses under investigation, namely 18 U.S.C. § 371 (conspiracy to commit an offense or to defraud the United States) and 18 U.S.C. § 641 (theft of government property) may apply extraterritorially. *See United States v. Ayesh*, 702 F.3d 162, 165-66 (4th Cir. 2012) (extraterritorial application of 18 U.S.C. § 641 proper in case charging foreign service national employed at U.S. embassy); *United States v. Cotten*, 471

3

F.2d 744, 751 (9th Cir. 1973) (finding extraterritorial application of 18 U.S.C. § 371 conspiracy to violate 18 U.S.C. § 641 proper); *United States v. Finch*, No. 10-cr-333, 2010 WL 3938176, at *1-4 (D. Haw. Sept. 30, 2010 (relying on *United States v. Bowman*, 260 U.S. 94 (1922) to approve extraterritorial application of conspiracy to defraud the United States in violation of 18 U.S.C. § 371; rejecting argument that *Bowman* was overruled by a subsequent Supreme Court decision); *cf. United States v. Al-Imam*, No. 17-cr-213, 2019 WL 1204882 (D.D.C. March 14, 2019) (CRC) (analyzing extraterritorial application of criminal statutes).

## **PROBABLE CAUSE**



8.      In February 2019, DSS and DHS-OIG began a joint investigation into conduct by ███████████████████████████████ who, until recently, was employed by the United States as a ████████████████████████████████████████████████████████████████ ████████████████████████████████ which is located ███████████████ The investigation was based on allegations and evidence demonstrating that ███████████ using her position as ███████ and her access to sensitive U.S. government records ███████████████ ███████████ stole such records and sold or otherwise provided those records to persons unauthorized to possess them, including ███████████████

9.      The investigation began when, in or about February 2019, a ███████████████ employed at ████████████████████████████ ("WITNESS 1"), reported to a supervisor that ███████████████ had contacted WITNESS 1, using the WhatsApp chat and video chat application, with an offer for WITNESS 1 to participate in a scheme to steal and sell records related to ███████ to the United States. WITNESS 1 was known to ███████████ because they met in 2016 when they were both completing a short-term ███████ assignment processing ███████ ███████████ in ███████████████

10. As to the proposed scheme, ████████ communicated to WITNESS 1 that ████████ used her position as an employee of the ████████ in ████████ to access ████████ records and, in turn, to sell the records to an individual in ████ subsequently identified as ████.

11. Previously, █████ served as a ████ for the ████████████ in ████████ As ████████ explained to WITNESS 1, ████████ met █ during a short-term assignment in ████ ████████ told further WITNESS 1 that █ had a "side business" in which he sold the records provided by ████████ to ████████ in ████ seeking updates on the status of ████████ ████████ offered WITNESS 1 the opportunity to join her in this scheme, and explained that WITNESS 1 could be paid ████████ by ████, in exchange for participating in the same scheme.

12. ████████████ are contained in a State Department database known as ████████████████████ which is frequently accessed by ████████ in the course of their work. Based on my training and experience, I know that data contained in ████ is some of the most sensitive, unclassified data held by the State Department, as it contains personally-identifying information, analysis, and threat assessments regarding displaced persons around the world. Indeed, every time a ████user logs onto the system, he or she must acknowledge that he or she is accessing a U.S. government database containing sensitive information.

13. In describing WITNESS 1's potential role in the scheme, ████████ explained that WITNESS 1 would user her official ████work computer to access ████,
████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████ While ████████ specifically

noted to WITNESS 1 that WITNESS 1 could receive ███████ per week for this conduct,

████████ did not specify the method by which WITNESS 1 would be paid.

14. When WITNESS 1 expressed concerns to ████████ that using government

email in the scheme was "risky" because of the "level of security" at ████████████

responded to WITNESS 1 that there was no need to worry, as ████████ knew that ███████

would not monitor email "unless there is a reason to." ████████ told WITNESS 1 that

WITNESS 1 needed to be secretive about ████████ offer, and that, as long as WITNESS 1

was discrete, "it would work." ████████ expressed to WITNESS 1 that █████ 'did not care

about [████████] wellbeing," and that ████████ decided to approach WITNESS 1 for

inclusion in the scheme because WITNESS 1 would appreciate the extra money.

15. As part of this investigation, I have learned that ████████ began serving as an

███████████████████████████████████ in or about 2010, and, in or about 2011,

she began working for the ████████ Notably, ████████ outreach to WITNESS 1

coincided with the permanent closure of the ████████ in ███████ ██████████ ceased

operations on March 29, 2019, and all █████ offices globally are scheduled to close within the

next year as their operations shift to a new processing center in the United States. As a result of

the closure, ████████ lost access to ████████ –a fact that might explain ████████████

motive in reaching out to WITNESS 1. Following the closure of ████████████ office,

████████ obtained employment at ███████████████████████████████

████████████████████████████

6

16.     As part of this investigation, my colleagues and I have reviewed records from ████████████ official email account. The records show that, between October 10, 2018, and February 25, 2019, ████████ sent approximately ██ emails from her ████ email account to her personal email account containing approximately ██████████ of ████ information regarding approximately █████████████ These screen shots show sensitive government data about cases of ████████████████████████████ Consistent with the scheme described by ████████ to WITNESS 1, ████████████ financial records obtained during the course of this investigation show a payment from ████ to ████████. And information obtained pursuant to a ██████ Pen Register / Trap and Trace show frequent communications between ████████ and ████.

17.     On April 4, 2019, WITNESS 1 participated in a recorded ████ conversation with ████, during which ████ described the scheme by which he obtained ████ data from ████████ and sold that information in ██████ stated to WITNESS 1 that he has operated this scheme for approximately ████ years, and that he had been working with ████████ as part of the scheme for approximately ██ years. ████ provided WITNESS 1 with detailed information as to the type of information that he required. He stated that the information should come from the ████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████

18.     Based on information obtained through criminal process, I have determined that ████████ is the user of an Apple ID account with ██████████ and with an email address, ████████████ Records provided by Apple regarding that account associate the account with a physical address: ████████████████████ which is



7



identical to the address provided by ▮▮▮▮ on a resume submitted to the U.S. government in connection with her employment at ▮▮▮▮ there. Likewise, the phone number associated with the account, ▮▮▮▮ matches the number provided by ▮▮▮▮ on her resume and other documents associated with her ▮▮▮▮ The Apple records indicate that ▮▮▮▮ uses an iPhone, and that her Apple ID account was created on July 10, 2015.

19.    Based on information obtained through criminal process, I have determined that ▮▮▮▮ is the user of an Apple ID account with ▮▮▮▮ and with an email address, ▮▮▮▮ provided the same email address to the U.S. government as part of ▮▮▮▮ The Apple records indicate that ▮ uses an iPhone, and that his Apple ID account was created on August 9, 2014.

20.    Your affiant is aware that Apple devices that use Apple operating systems, including iPhones, will back up data from the device onto Internet-based iCloud accounts. The data that is backed up from the device is in part automated, and in part determined by the user. The default setting for iPhone users who back up information onto the iCloud are robust and include backups of text messages, iMessages, photographs, videos, and data from third party applications, including encrypted messaging applications such as WhatsApp. In some cases, the iCloud backup will retain information that has been otherwise deleted from the physical iPhone device by the user.

21.    Apple records show that ▮▮▮▮ and ▮ each use a unique iCloud account associated with their Apple IDs, and both iCloud accounts are listed as "Full iCloud," which your affiant understands to mean that the historical records and data associated with

8

████████ and ████████ activity on their iPhones have been backed up to the respective iCloud accounts.

22.     Your affiant is aware that the content of encrypted applications, such as WhatsApp, will automatically backup such records onto the user's cloud storage (i.e. iCloud or Google Drive) as a default setting.  In the event an individual changes the default setting, those communications may still be resident on the device itself, unless deleted.  Even if deleted, in my training and experience, persons who use such applications could take photographs (usually screen shots) using their mobile device to preserve records of such communications.  Your affiant is aware that, unlike the encrypted communications themselves, deleted photographs and images are routinely recovered on back-up internet cloud records, or from the actual devices using forensic tools.

23.     Based on the foregoing information, there is probable cause to believe that violations of 18 U.S.C. § 371 (conspiracy to commit any offense against the United States, or to defraud the United States, or any agency in any manner and for any purpose) and 18 U.S.C. § 641 (theft of United States government property) has been committed by ████████, ████, and other unidentified individuals.  There is also probable cause to search the information described in Attachment  for evidence, instrumentalities, contraband, or fruits of these crimes further described in Attachment B.

## INFORMATION REGARDING APPLE ID AND iCLOUD[1]

24.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

25.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

> a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.
>
> b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.
>
> c. iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

---

[1]     The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

d. iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

e. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

f. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

g. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

h. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

26.     Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

27.     An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

28.     Once a subscriber has registered an account, Apple can provide multiple electronic services, including calendar and file sharing, iMessage (instant messages); FaceTime (video calls); iCloud, a file hosting, storage, and sharing service, which allows users to store, access, share, and synchronize data across various digital devices, for example iCloud Photo Library and My Photo

12

Stream for images and videos, iCloud Drive for documents, including presentations and spreadsheets, iCloud Tabs for synchronizing webpages, iWorks Apps (a suite of productivity apps), and iCloud Keychain (to store various usernames and passwords, credit card information, and Wi-Fi network information); Game Center (Apple's social gaming network, which allows users of Apple devices to play and share games with each other); Find My iPhone (remote location tracking and access to devices); Location Services (which allows apps and websites to access and use information about a user's approximate location); and App Store and iTunes Store (which allow users to purchase and download digital content, *e.g.*, applications).

29.     Depending on user settings, user-generated content derived from many of these services is normally stored on Apple's servers until deleted by the subscriber. Similar to e-mails, such user-generated content can remain on Apple servers indefinitely if not deleted by the subscriber, and even after being deleted, it may continue to be available on Apple's servers for a certain period of time. Furthermore, an Apple subscriber can store: contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on Apple servers. Based on my training and experience, I know that evidence of who controlled, used, and/or created an Apple account may be found within such computer files and other information created or stored by the subscriber.

30.     Based on my training and experience, I know that providers such as Apple also collect and maintain information about their subscribers, including information about their use of services. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that

13

reflect usage of the account. Providers such as Apple also commonly have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with other logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as Apple typically collect and maintain location data related to subscriber's use of services, including data derived from IP addresses and/or Global Positioning System ("GPS") data.

     31.    Based on my training and experience, I know that providers such as Apple also collect information relating to the devices used to access a subscriber's account – such as laptop or desktop computers, cell phones, and tablet computers. Such devices can be identified in various ways. For example, some identifiers are assigned to a device by the manufacturer and relate to the specific machine or "hardware," some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are actually assigned by Apple in order to track what devices are using Apple accounts and services. Examples of these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier ("GUID"), device serial number, mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"). Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used (a) to find other Apple accounts created or accessed by the same device and likely belonging to the same user, (b) to find other types of accounts linked to the same device and user, and (c) to determine whether a particular device recovered during course of the investigation was used to access the Apple account.

32.     Apple also allows its subscribers to access its various services through an application that can be installed on and accessed via multiple cellular telephones and other mobile devices. This application is associated with the subscriber's Apple account. In my training and experience, I have learned that when the user of a mobile application installs and launches the application on a device (such as a cellular telephone), the application directs the device in question to obtain a Push Token, a unique identifier that allows the provider associated with the application (such as Apple) to locate the device on which the application is installed. After the applicable push notification service (*e.g.*, Apple Push Notifications (APN) or Google Cloud Messaging) sends a Push Token to the device, the Token is then sent to the application, which in turn sends the Push Token to the application's server/provider. Thereafter, whenever the provider needs to send notifications to the user's device, it sends both the Push Token and the payload associated with the notification (*i.e.*, the substance of what needs to be sent by the application to the device). To ensure this process works, Push Tokens associated with a subscriber's account are stored on the provider's server(s). Accordingly, the computers of Apple are likely to contain useful information that may help to identify the specific device(s) used by a particular subscriber to access the subscriber's Apple account via the mobile application.

33.     Based on my training and experience, I know that providers such as Apple use cookies and similar technologies to track users visiting Apple's webpages and using its products and services. Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer. When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before. This sort of technology can be used to track users across multiple websites and online services belonging to Apple. More sophisticated cookie technology can be used to identify users across devices and web browsers.

15

From training and experience, I know that cookies and similar technology used by providers such as Apple may constitute evidence of the criminal activity under investigation. By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a Apple's account and determine the scope of criminal activity.

34.    Based on my training and experience, I know that Apple maintains records that can link different Apple accounts to one another, by virtue of common identifiers, such as common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple Apple accounts. Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular Apple account.

35.    Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

36.    Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that

16

reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

37.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

38.     Apple provides users with at least five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and

17

web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

39.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

40.     Your affiant is aware that the iCloud backup will include data on phone calls and text messages, as well as the content of historic iMessages and other communications. iCloud also provides a feature that allows users of WhatsApp and other encrypted applications to store their communications on the iCloud account. As such, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

18

41.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

42.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

43.     Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services or the download of encrypted applications or software used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

44. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

### REQUEST TO SUBMIT WARRANT BY TELEPHONE
### OR OTHER RELIABLE ELECTRONIC MEANS

45. I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a Search Warrant. I submit that Assistant U.S. Attorney Luke M. Jones, an attorney for the United States, is capable of identifying my voice and telephone number for the Court.

### CONCLUSION

46. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.



Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on April ___, 2019.

_____
DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

21

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH TWO APPLE ID<br>ACCOUNTS PURSUANT TO 18 U.S.C. 2703 FOR<br>INVESTIGATION OF VIOLATION OF 18 U.S.C. 371, 641 | )<br>)<br>)<br>)<br>)<br>)    Case No. 19-sc-00853 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

    I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

located in the      Northern      District of      California      , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

    The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    ☑ evidence of a crime;

    ☑ contraband, fruits of crime, or other items illegally possessed;

    ☐ property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

    The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371, 18 U.S.C § 641 | conspiracy to commit any offense against the United States, or to defraud the United States, or any agency in any manner and for any purpose, theft of United States government property |

    The application is based on these facts:

See attached Affidavit

    ☑ Continued on the attached sheet.

    ☐ Delayed notice of _____ days *(give exact ending date if more tha*▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ under 18 U.S.C. § 3103a, the basis of which is set forth on the att▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

         telephone      *(specify reliable electronic means)*.

Date:      04/17/2019

Deborah A. Robinson   Digitally signed by Deborah A. Robinson<br>Date: 2019.04.17 15:28:11 -04'00'

*Judge's signature*

City and state:    Washington, D.C.      Deborah A. Robinson, U.S. Magistrate Judge

*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

❏ Original     ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH TWO APPLE ID<br>ACCOUNTS PURSUANT TO 18 U.S.C. 2703 FOR<br>INVESTIGATION OF VIOLATION OF 18 U.S.C. 371, 641 | )<br>)<br>)   Case No.  19-sc-00853<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Northern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

**YOU ARE COMMANDED** to execute this warrant on or before _____May 1, 2019_____  *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____U.S. Magistrate Judge Deborah A. Robinson_____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:   04/17/2019

Deborah A. Robinson
Digitally signed by Deborah A. Robinson
Date: 2019.04.17 15:30:13 -04'00'

*Judge's signature*

City and state:   Washington, D.C.

Deborah A. Robinson, U.S. Magistrate Judge
*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  19-sc-00853 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                                                                   _____
                                                                   *Executing officer's signature*

                                                                _____
                                                                    *Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information associated with two accounts that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at Apple Inc., 1 Infinite Loop, Cupertino, CA 95014. The two accounts are each identified by a DSID and email address as follows:



**ATTACHMENT B**

**Particular Things to be Seized and Procedures
to Facilitate Execution of the Warrant**

**Particular Things to be Seized**

## I.     Information to be disclosed by Apple

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.      For the time period **August 9, 2014 until the present** the contents of all communications and related transactional records for all Apple services used by an Account subscriber/user (such as e-mail services, contact lists, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services including**, iCLOUD records and updates,** including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating IP addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies). This includes iMessage (instant messages); FaceTime (video calls); iCloud, a file hosting, storage, and sharing

1

service, which allows users to store, access, share, and synchronize data across various digital devices, for example iCloud Photo Library and My Photo Stream for images and videos, iCloud Drive for documents, including presentations and spreadsheets, iCloud Tabs for synchronizing webpages, iWorks Apps (a suite of productivity apps), and iCloud Keychain (to store various usernames and passwords, credit card information, and Wi-Fi network information); Game Center (Apple's social gaming network, which allows users of Apple devices to play and share games with each other); Find My iPhone (remote location tracking and access to devices); Location Services (which allows apps and websites to access and use information about a user's approximate location); shared drives and document retention (including Time Capsule services), and App Store and iTunes Store (which allow users to purchase and download digital content, *e.g.*, applications) records, including for all devices utilizing the iCloud service;

b.      For the time period **August 9, 2014 until the present,** the contents of all other data and related transactional records for all Apple services used by an Account user (such as e-mail services, contact lists, address books, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services, including iCloud and **all services referenced in paragraph (a) above,** including any information generated, modified, or stored by user(s) or Apple in connection with the Account (such as contacts, calendar data, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information);

c.      For the time period **August 9, 2014 until the present:** All records concerning the online search and browsing history associated with the Account or its users (such as information collected through tracking cookies);

2

d.     For the time period **August 9, 2014 until the present:** All records and other information concerning any document, or other computer file created, stored, revised, or accessed in connection with the Account or by an Account user, including the contents and revision history of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

e.     All records regarding identification of the Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of payment (including any credit card or bank account number), records of session times and durations (including IP addresses, cookies, device information, and other identifiers linked to those sessions), records of account registration (including the IP address, cookies, device information, and other identifiers linked to account registration), length of service and types of services utilized, account status, methods of connecting, and server log files;

f.     All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile

3

Station Equipment Identities ("IMEI"), mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s), including unique application numbers and push notification tokens associated with the Account (including Apple Push Notifications ("APN"));

g.     Basic subscriber records and login history (including, as described in 18 U.S.C. § 2703(c)(2), names, addresses, records of session times and durations, length of service and types of service utilized, instrument numbers or other subscriber numbers or identities, and payment information) concerning any Apple account (including both current and historical accounts) ever linked to the Account by a common e-mail address (such as a common recovery e-mail address), or a common telephone number, means of payment (*e.g.*, credit card number), registration or login IP addresses (during one-week period), registration or login cookies or similar technologies, or any other unique device or user identifier;

h.     For the time period **August 9, 2014 until the present**:  All records of communications between Apple and any person regarding the Account, including contacts with support services and records of actions taken;

i.     Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel); and

j.     The contents of all emails, notes, data, and electronic messages associated with the account, including stored or preserved copies of data, documents, emails and messages sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and

4

length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

      k.     The contents of all instant messages associated with the account **August 9, 2014 until the present**, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

      l.     The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

      m.     All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services

(including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

      n.     All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

      o.     All records pertaining to the types of service used, including application purchases, downloads, updates and backup records;

      p.     All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken;

      q.     All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).;

      r.     All applications downloaded, used, or updated using Apple services, including iTunes and iCloud, including dates of acquisition, all updates, and any data associated with such applications which are in control of Apple;

Within **14 DAYS** of the issuance of this warrant, Apple shall deliver the information set forth above via United States mail, courier, or e-mail to the following:



6

**II.    Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. §§ 371 and 641, as described in the affidavit submitted in support of this Warrant, including, for each Account, information pertaining to the following matters:

(a) Information that constitutes evidence of the identification or location of the user(s) of the Account;

(b) Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

(c) Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

(d) Information that constitutes evidence concerning how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user;

(e) Information that constitutes evidence concerning the unlawful access, use, sale, or transmission of information belonging to the United States government, conspiracy to commit such offenses, and conspiracy to defraud the United States government by interfering with its lawful functions, including the functions of the Department of State and the Department of Homeland Security.

7

(f) Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

(g) Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation; and

(h) Evidence that persons were involved in the theft, transport, or misappropriation of property or information owned by the United States;

(i) Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crimes under investigation;

(j) Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

(k) Evidence that persons have obstructed justice, deleted information, or provided false information to the U.S. government (to facilitate access to government information);

(l) Address books, buddy lists and complete contact information of known associates.

(m) The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to the theft, misappropriation, or transfer of U.S. property or information, including records that help reveal their whereabouts;

(n) evidence of user attribution showing who used, controlled, or owned the account at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

8

(o) identification of any electronic devices being associated with the account;

(p) passwords, encryption keys, and other devices that may be necessary to access any electronic device associated with the account; and

(q) records of, or information about, the account's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" and "data" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

9

**III.  Government procedures for warrant execution**

The United States government will conduct a search of the information produced by the Apple and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from Apple that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

     I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____ ("PROVIDER"), and my title is _____. I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER. The attached records consist of:

_____

    [GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

    I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

    b.    such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

        1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

        2.    the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

    I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____

Date                         Signature

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH TWO APPLE ID ACCOUNTS PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 371, 641**

SC No. 19-sc-00853

**Filed Under Seal**

*Reference:*       *USAO Ref* ▮▮▮

*Subject Accounts:* ▮▮▮

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, ▮▮▮ being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant for information associated with the two above-listed Apple ID accounts ("SUBJECT ACCOUNTS"), which is stored at premises controlled by Apple Inc. ("PROVIDER"), an electronic communications services provider and/or remote computing services provider headquartered at 1 Infinite Loop, Cupertino, CA. Apple also maintains a corporate office in the District of Columbia at 901 15th Street, N.W., Suite 1001. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require PROVIDER to disclose to the government copies of the information (including data and the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that

information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.



4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies, including the Department of Homeland Security (DHS) Office of Inspector General (DHS-OIG).  This affidavit

is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

5.     Based on my training and experience and the facts as set forth in this affidavit, I submit respectfully that there is probable cause to believe that violations of 18 U.S.C. § 371 (conspiracy to commit any offense against the United States, or to defraud the United States, or any agency in any manner and for any purpose) and 18 U.S.C. § 641 (theft of United States government property) have been committed by ███████████████████ ███████████     and other unidentified individuals.  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes further described in Attachment B.

## JURISDICTION

6.     This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, the criminal offenses under investigation began or were committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, and no offender is known to have, or have had, residence within any United States district. *See* 18 U.S.C. § 3238.

7.     In addition, the statutes setting forth the federal offenses under investigation, namely 18 U.S.C. § 371 (conspiracy to commit an offense or to defraud the United States) and 18 U.S.C. § 641 (theft of government property) may apply extraterritorially. *See United States v. Ayesh*, 702 F.3d 162, 165-66 (4th Cir. 2012) (extraterritorial application of 18 U.S.C. § 641 proper in case charging foreign service national employed at U.S. embassy); *United States v. Cotten*, 471

3

F.2d 744, 751 (9th Cir. 1973) (finding extraterritorial application of 18 U.S.C. § 371 conspiracy to violate 18 U.S.C. § 641 proper); *United States v. Finch*, No. 10-cr-333, 2010 WL 3938176, at *1-4 (D. Haw. Sept. 30, 2010 (relying on *United States v. Bowman*, 260 U.S. 94 (1922) to approve extraterritorial application of conspiracy to defraud the United States in violation of 18 U.S.C. § 371; rejecting argument that *Bowman* was overruled by a subsequent Supreme Court decision); *cf. United States v. Al-Imam*, No. 17-cr-213, 2019 WL 1204882 (D.D.C. March 14, 2019) (CRC) (analyzing extraterritorial application of criminal statutes).

## **PROBABLE CAUSE**



8.     In February 2019, DSS and DHS-OIG began a joint investigation into conduct by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ who, until recently, was employed by the United States as a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which is located ▮▮▮▮▮▮▮▮ The investigation was based on allegations and evidence demonstrating that ▮▮▮▮▮▮, using her position as ▮▮▮▮ and her access to sensitive U.S. government records ▮▮▮▮▮▮▮▮ ▮▮▮▮ stole such records and sold or otherwise provided those records to persons unauthorized to possess them, including ▮▮▮▮▮▮

9.     The investigation began when, in or about February 2019, a ▮▮▮▮▮▮ employed at ▮▮▮▮▮▮▮▮▮▮ ("WITNESS 1"), reported to a supervisor that ▮▮▮▮▮▮ had contacted WITNESS 1, using the WhatsApp chat and video chat application, with an offer for WITNESS 1 to participate in a scheme to steal and sell records related to ▮▮▮ to the United States. WITNESS 1 was known to ▮▮▮▮▮ because they met in 2016 when they were both completing a short-term ▮▮▮ assignment processing ▮▮▮▮ ▮▮▮▮ in ▮▮▮▮▮

4

10.     As to the proposed scheme, ████████ communicated to WITNESS 1 that ████████ used her position as an employee of the ████ in ████████ to access ████████ records and, in turn, to sell the records to an individual in ████ subsequently identified as ████.

11.     Previously, ████ served as a ████ for the ████████████ in ████████ As ████████ explained to WITNESS 1, ████████ met ████ during a short-term assignment in ████ ████████ told further WITNESS 1 that ████ had a "side business" in which he sold the records provided by ████████ to ████████ in ████ seeking updates on the status of ████████ ████████ offered WITNESS 1 the opportunity to join her in this scheme, and explained that WITNESS 1 could be paid ████████ by ████, in exchange for participating in the same scheme.

12.     ████████████ are contained in a State Department database known as ████████████████████ which is frequently accessed by ████████ in the course of their work. Based on my training and experience, I know that data contained in ████ is some of the most sensitive, unclassified data held by the State Department, as it contains personally-identifying information, analysis, and threat assessments regarding displaced persons around the world. Indeed, every time a ████ user logs onto the system, he or she must acknowledge that he or she is accessing a U.S. government database containing sensitive information.

13.     In describing WITNESS 1's potential role in the scheme, ████████ explained that WITNESS 1 would user her official ████ work computer to access ████████

████████████████████████████████

5

████████████████████████████████████████████████
██████████████████████████████  While ████████ specifically
noted to WITNESS 1 that WITNESS 1 could receive ████████ per week for this conduct,
████████ did not specify the method by which WITNESS 1 would be paid.

14.    When WITNESS 1 expressed concerns to ████████ that using government
email in the scheme was "risky" because of the "level of security" at ████, ████████
responded to WITNESS 1 that there was no need to worry, as ████████ knew that ████
would not monitor email "unless there is a reason to." ████████ told WITNESS 1 that
WITNESS 1 needed to be secretive about ████████ offer, and that, as long as WITNESS 1
was discrete, "it would work." ████████ expressed to WITNESS 1 that ████ "did not care
about [████████] wellbeing," and that ████████ decided to approach WITNESS 1 for
inclusion in the scheme because WITNESS 1 would appreciate the extra money.

15.    As part of this investigation, I have learned that ████████ began serving as an
████████████████████████████████ in or about 2010, and, in or about 2011,
she began working for the ████████ Notably, ████████ outreach to WITNESS 1
coincided with the permanent closure of the ████ ████ in ████████████ ceased
operations on March 29, 2019, and all ████ offices globally are scheduled to close within the
next year as their operations shift to a new processing center in the United States. As a result of
the closure, ████████ lost access to ████████ —a fact that might explain ████████
motive in reaching out to WITNESS 1. Following the closure of ████████ office,
████████ obtained employment at ████████████████████████████
████████████████████████

6

16.     As part of this investigation, my colleagues and I have reviewed records from ███████ ███ official email account. The records show that, between October 10, 2018, and February 25, 2019, ████████ sent approximately ██ emails from her ████ email account to her personal email account containing approximately ██████████ of ████ information regarding approximately ███████████████. These screen shots show sensitive government data about cases of ██████████████████████████ Consistent with the scheme described by ████████ to WITNESS 1, ██████████ financial records obtained during the course of this investigation show a payment from ████ to ████████. And information obtained pursuant to a ████ Pen Register / Trap and Trace show frequent communications between ██████████ and ████.

17.     On April 4, 2019, WITNESS 1 participated in a recorded ████ conversation with ████, during which ████ described the scheme by which he obtained ████ data from ██████████ and sold that information in ████ ████ stated to WITNESS 1 that he has operated this scheme for approximately ████ years, and that he had been working with ██████████ as part of the scheme for approximately ██ years. ████ provided WITNESS 1 with detailed information as to the type of information that he required. He stated that the information should come from the ████ ████████████████████████████████ ████████████████████████████████████████████ ████████.

18.     Based on information obtained through criminal process, I have determined that ██████████ is the user of an Apple ID account with ████████████ and with an email address, ██████████████. Records provided by Apple regarding that account associate the account with a physical address: ██████████████████████ which is

7



identical to the address provided by ▮▮▮▮▮ on a resume submitted to the U.S. government in connection with her employment at ▮▮▮▮▮▮. Likewise, the phone number associated with the account, ▮▮▮▮▮, matches the number provided by ▮▮▮▮▮ on her resume and other documents associated with her ▮▮▮▮▮▮. The Apple records indicate that ▮▮▮▮▮ uses an iPhone, and that her Apple ID account was created on July 10, 2015.

19.    Based on information obtained through criminal process, I have determined that ▮▮▮▮ is the user of an Apple ID account with ▮▮▮▮▮▮ and with an email address, ▮▮▮▮▮▮▮▮▮▮▮ provided the same email address to the U.S. government as part of ▮▮▮▮▮▮. The Apple records indicate that ▮▮▮ uses an iPhone, and that his Apple ID account was created on August 9, 2014.

20.    Your affiant is aware that Apple devices that use Apple operating systems, including iPhones, will back up data from the device onto Internet-based iCloud accounts. The data that is backed up from the device is in part automated, and in part determined by the user. The default setting for iPhone users who back up information onto the iCloud are robust and include backups of text messages, iMessages, photographs, videos, and data from third party applications, including encrypted messaging applications such as WhatsApp.  In some cases, the iCloud backup will retain information that has been otherwise deleted from the physical iPhone device by the user.

21.    Apple records show that ▮▮▮▮▮ and ▮▮ each use a unique iCloud account associated with their Apple IDs, and both iCloud accounts are listed as "Full iCloud," which your affiant understands to mean that the historical records and data associated with

8

█████ and █████ activity on their iPhones have been backed up to the respective iCloud accounts.

22.     Your affiant is aware that the content of encrypted applications, such as WhatsApp, will automatically backup such records onto the user's cloud storage (i.e. iCloud or Google Drive) as a default setting.  In the event an individual changes the default setting, those communications may still be resident on the device itself, unless deleted.  Even if deleted, in my training and experience, persons who use such applications could take photographs (usually screen shots) using their mobile device to preserve records of such communications.  Your affiant is aware that, unlike the encrypted communications themselves, deleted photographs and images are routinely recovered on back-up internet cloud records, or from the actual devices using forensic tools.

23.     Based on the foregoing information, there is probable cause to believe that violations of 18 U.S.C. § 371 (conspiracy to commit any offense against the United States, or to defraud the United States, or any agency in any manner and for any purpose) and 18 U.S.C. § 641 (theft of United States government property) has been committed by █████, █████, and other unidentified individuals.  There is also probable cause to search the information described in Attachment  for evidence, instrumentalities, contraband, or fruits of these crimes further described in Attachment B.

9

## INFORMATION REGARDING APPLE ID AND iCLOUD[1]

24.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

25.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

> a.  Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.
>
> b.  iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.
>
> c.  iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

---

[1]     The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

d. iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

e. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

f. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

g. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

11

h.  App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

26.  Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

27.  An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

28.  Once a subscriber has registered an account, Apple can provide multiple electronic services, including calendar and file sharing, iMessage (instant messages); FaceTime (video calls); iCloud, a file hosting, storage, and sharing service, which allows users to store, access, share, and synchronize data across various digital devices, for example iCloud Photo Library and My Photo

12

Stream for images and videos, iCloud Drive for documents, including presentations and spreadsheets, iCloud Tabs for synchronizing webpages, iWorks Apps (a suite of productivity apps), and iCloud Keychain (to store various usernames and passwords, credit card information, and Wi-Fi network information); Game Center (Apple's social gaming network, which allows users of Apple devices to play and share games with each other); Find My iPhone (remote location tracking and access to devices); Location Services (which allows apps and websites to access and use information about a user's approximate location); and App Store and iTunes Store (which allow users to purchase and download digital content, *e.g.*, applications).

29.     Depending on user settings, user-generated content derived from many of these services is normally stored on Apple's servers until deleted by the subscriber. Similar to e-mails, such user-generated content can remain on Apple servers indefinitely if not deleted by the subscriber, and even after being deleted, it may continue to be available on Apple's servers for a certain period of time. Furthermore, an Apple subscriber can store: contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on Apple servers. Based on my training and experience, I know that evidence of who controlled, used, and/or created an Apple account may be found within such computer files and other information created or stored by the subscriber.

30.     Based on my training and experience, I know that providers such as Apple also collect and maintain information about their subscribers, including information about their use of services. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that

13

reflect usage of the account. Providers such as Apple also commonly have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with other logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as Apple typically collect and maintain location data related to subscriber's use of services, including data derived from IP addresses and/or Global Positioning System ("GPS") data.

31. Based on my training and experience, I know that providers such as Apple also collect information relating to the devices used to access a subscriber's account – such as laptop or desktop computers, cell phones, and tablet computers. Such devices can be identified in various ways. For example, some identifiers are assigned to a device by the manufacturer and relate to the specific machine or "hardware," some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are actually assigned by Apple in order to track what devices are using Apple accounts and services. Examples of these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier ("GUID"), device serial number, mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"). Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used (a) to find other Apple accounts created or accessed by the same device and likely belonging to the same user, (b) to find other types of accounts linked to the same device and user, and (c) to determine whether a particular device recovered during course of the investigation was used to access the Apple account.

32.     Apple also allows its subscribers to access its various services through an application that can be installed on and accessed via multiple cellular telephones and other mobile devices. This application is associated with the subscriber's Apple account. In my training and experience, I have learned that when the user of a mobile application installs and launches the application on a device (such as a cellular telephone), the application directs the device in question to obtain a Push Token, a unique identifier that allows the provider associated with the application (such as Apple) to locate the device on which the application is installed. After the applicable push notification service (*e.g.*, Apple Push Notifications (APN) or Google Cloud Messaging) sends a Push Token to the device, the Token is then sent to the application, which in turn sends the Push Token to the application's server/provider. Thereafter, whenever the provider needs to send notifications to the user's device, it sends both the Push Token and the payload associated with the notification (*i.e.*, the substance of what needs to be sent by the application to the device). To ensure this process works, Push Tokens associated with a subscriber's account are stored on the provider's server(s). Accordingly, the computers of Apple are likely to contain useful information that may help to identify the specific device(s) used by a particular subscriber to access the subscriber's Apple account via the mobile application.

33.     Based on my training and experience, I know that providers such as Apple use cookies and similar technologies to track users visiting Apple's webpages and using its products and services. Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer. When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before. This sort of technology can be used to track users across multiple websites and online services belonging to Apple. More sophisticated cookie technology can be used to identify users across devices and web browsers.

15

From training and experience, I know that cookies and similar technology used by providers such as Apple may constitute evidence of the criminal activity under investigation. By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a Apple's account and determine the scope of criminal activity.

34.     Based on my training and experience, I know that Apple maintains records that can link different Apple accounts to one another, by virtue of common identifiers, such as common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple Apple accounts. Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular Apple account.

35.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

36.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that

16

reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

37.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

38.     Apple provides users with at least five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and

17

web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

39.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

40.     Your affiant is aware that the iCloud backup will include data on phone calls and text messages, as well as the content of historic iMessages and other communications. iCloud also provides a feature that allows users of WhatsApp and other encrypted applications to store their communications on the iCloud account. As such, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

18

41.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

42.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

43.     Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services or the download of encrypted applications or software used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

19

44. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## REQUEST TO SUBMIT WARRANT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

45. I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a Search Warrant. I submit that Assistant U.S. Attorney Luke M. Jones, an attorney for the United States, is capable of identifying my voice and telephone number for the Court.

## CONCLUSION

46. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.



Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on April __, 2019.

Deborah A.
Robinson

Digitally signed by Deborah
A. Robinson
Date: 2019.04.17 15:30:46
-04'00'

DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE