# ATTACHMENT A

*Redacted Docket Materials*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE ACCOUNT(S) SERVICED BY MICROSOFT CORPORATION FOR INVESTIGATION OF VIOLATION OF 50 U.S.C. 1701-1706 | SC No. 19-sc-1042 <br><br> **Filed Under Seal** |

*Reference:*   USAO Ref. # ▮▮▮▮▮   Subject Account(s): ▮▮▮▮▮

### APPLICATION OF THE UNITED STATES
### FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Microsoft Corporation ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Redmond, Washington, to disclose certain records and other information pertaining to the PROVIDER account(s) associated with ▮▮▮▮▮ ("the Target Account") as set forth in Part I of Attachment A to the proposed Order. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

### LEGAL BACKGROUND AND JURISDICTION

1. PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under section 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of

competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically, the Court is a District Court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC. *See* 18 U.S.C. § 3237.

3. A court order under section 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

### THE RELEVANT FACTS

4. The Federal Bureau of Investigation ("FBI") is investigating ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬ for their potential facilitation of sanctions evasion on behalf of ▬▬ ▬▬▬. This investigation relates to violations of IEEPA (50 U.S.C. § 1705) and the federal money laundering statute (18 U.S.C. § 1956). IEEPA, enacted in 1977, granted the President of the United States authority to deal with unusual and extraordinary threats to the national security and foreign policy of the United States. Under IEEPA, the President may declare a national emergency through Executive Orders that have the full force and effect of law. The U.S. Department of the Treasury's ("the Treasury Department") Office of Foreign Assets Control ("OFAC"), which is located in Washington, D.C., administers a number of sanctions programs to accomplish U.S. foreign-policy and national-security goals. OFAC accomplishes this by designating companies and

2

individuals through different sanctions programs. Two of OFAC's active sanction programs are Non-Proliferation Sanctions and ▮▮▮▮▮▮▮ Sanctions. OFAC's current Non-Proliferation Sanctions program began in 2005 pursuant to Executive Order ("E.O.") 13382. OFAC's current ▮▮▮▮▮▮▮ Sanctions program began in 2008 pursuant to E.O. 13466. When OFAC designates persons (individuals and entities) under the Non-Proliferation Sanctions and ▮▮▮▮▮▮▮ Sanctions programs, the persons are added to a list of Specially Designated Nationals ("SDN"). Among other things, entities added to the SDN list are prohibited from engaging in the use of the U.S. financial system for processing international wire transfers denominated in U.S. dollars originating from offshore U.S. dollar accounts at foreign financial institutions which utilize correspondent-banking services at U.S. financial institutions.

Background on ▮▮▮▮▮▮▮▮▮▮▮▮



5.   ▮▮▮▮▮▮▮ is a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ also claims that their worldwide network of ▮▮▮▮▮▮▮ branches and close cooperation partners offer transport solutions from anywhere in the world to anywhere in the world.

6.   According to the March 2019, United Nations Panel of Experts[1] ("PoE") report, ▮▮▮▮▮▮▮ was linked to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, both under investigation by the U.N. for exporting luxury goods to ▮▮▮▮▮▮▮. The two firms are alleged by the PoE to have exported luxury goods indirectly through two ▮▮▮▮▮ firms, ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ According to the PoE report, ▮▮▮▮▮

---

[1] The United Nations Panel of Experts is comprised of eight experts based in New York, whose job is to gather, examine, and analyze information from States, relevant U.N. bodies and other interested parties regarding the implementation of sanctions against ▮▮▮▮▮▮▮.

███████ is thought to have facilitated those ████-based firms in the export of luxury goods to ██████████.

7. Judicially authorized search warrant returns revealed that ██████████ has concealed shipments to ██████████ and received laundered payments in U.S. dollars, without first obtaining the requisite OFAC license.

Background on ██████████

8. ██████████ is ██████████ ██████████. On December 2, 2016, OFAC designated ██████████ for operating in ██████████ in the ██████████ economy and identified ██████████ in which it has an interest. Reliable open source reporting reveals that ██████████ also transported ████████████████████████████████████████ of which the U.S. and U.N. prohibit the export.

9. According to the 2016 PoE report, ████████████████████████████████████████████████████████████████████████ likely facilitated the acquisition of ██████████ ██████████ for the ██████████ government. The report indicated ██ was the organizer and financier for the ██████████

10. The PoE report identified ██ as an agent of ██████████.

11. Specifically, the PoE determined that a number of ██████████████████ were transported via shipping container from the port of ████████████████████████ at the direction of ██ These ██████ were then transferred in shipping containers by ██████ ████████████████████████████████████████████████████████████████████████ is currently under investigation for U.S. sanctions and money laundering violations, as it received laundered numerous payments from numerous sanctioned ██████████ entities. In March 2019, OFAC designated ████

4

12. According to the aforementioned report, ▇ was a ▇ businessman whose company, ▇ had previously been involved in the shipment of arms-related material to ▇

13. According to a website that purports to belong to ▇, ▇ is also listed as a ▇ network office in ▇ The contact email for ▇ according to ▇ website is ▇

14. The investigation has revealed connections between ▇, ▇, and ▇.

The Target Account

10. A website belonging to the ▇ listed contact information for ▇. The listed information included the **Target Account**, a ▇ based phone number ▇ and ▇ According to the International Air Transportation Associated, airline code ▇ represents ▇ ▇. According to a business registration and company profile database, ▇ is used by ▇ ▇ Representative Office.

11. Based on prior investigations, law enforcement is aware that criminal co-conspirators communicate frequently through private messages and email about their legitimate and illegitimate businesses, as well as the transfer of proceeds from such businesses. Private messages and email offer a uniquely valuable form for such communication, as they can be accessed from any location. Many such persons also believe that these messages are difficult to trace, which leads them to have inculpatory conversations via email.

12. Moreover, persons operating international procurement operations typically have to communicate via email with persons funding their operations, due to the time differences

5

involved, as well as limited phone access in certain regions of the world. When transferring funds to co-conspirators, electronic communications will normally occur to inform the other party that the money has been sent, followed up by communications that the money has been received. Law enforcement is also aware know from prior investigations that subordinates in the management chain must communicate to their superiors the status of their illegal tasks as well as receive new illegal tasks. Based on these facts, law enforcement believes that the subjects of the investigation would be communicating via email.

13. The header information of these communications can reveal the scope of the contacts between the money launderers/export control violators and who the important co-conspirators are. Multiple individuals and companies associated with the targets of this investigation have taken steps to obscure or anonymize their identities. Learning the header information from associated email account is likely to reveal persons within this network, including customers possibly in ▮▮▮▮▮▮▮, as well as further identify any other users of the email account.

14. Learning this information will allow law enforcement to investigate these newly identified persons, and in some instances surveil and interview them. Identifying, surveilling, and interviewing these persons will advance the investigation of the subjects and their co-conspirators, by further revealing the scope of their activities, both legal and illegal.

15. Because criminals who communicate in such a way fear detection and require multiple fake identities, they typically create numerous email accounts. Part of managing this vast number of accounts often leads to the linking of accounts. This allows a single user the ability to access as well as reset passwords for the multiple linked accounts. Law enforcement is aware that the tracking and detection of linked accounts is one way by which a person and/or co-conspirators

6

can be identified. Moreover, the linking of an account can further demonstrate who has access and/or control of an account.

## REQUEST FOR ORDER

16. The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A to the proposed Order are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that Provider be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

17. The United States further requests that the Order direct PROVIDER not to notify any person, including the subscriber or customer of each account listed in Part I of Attachment A, of the existence of the application of the United States or the Order for one year from the date of the Court's Order. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *See* 18 U.S.C. § 2705(b).[2]

---

[2] The government relies on § 2705(b) to seek a preclusion-of-notice order because the government is requesting only non-content information pursuant to § 2703(d), an action which is authorized by § 2703(c). *See* 18 U.S.C. § 2703(c)(1)(B) ("governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when [it] . . . obtains a court order for such disclosure under subsection (d) of this section"). Under § 2703(c), the government has no obligation to notify the subscriber. *See* 18 U.S.C. § 2703(c)(3) ("governmental entity receiving records or information under this section is not required to provide notice to a subscriber or customer").

7

18. In this case, the proposed Order seeks information relevant to establishing the illegal activity under investigation and identifying the individual(s) responsible. Accordingly, disclosure may reveal the existence, scope, and direction of the United States's ongoing and confidential investigation. Once alerted to this investigation, potential target(s) could be immediately prompted to destroy or conceal incriminating evidence, alter their operational tactics to avoid future detection, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote computing services, the potential target(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity. Notification could also result in the target(s) avoiding travel to the United States or other countries from which they may be extradited.

19. Therefore, based on the foregoing, there are reasonable grounds to believe that notification of the existence of this Order would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

20. Given the complex nature of the criminal activity under investigation and likely involvement of foreign-based coconspirators and evidence, and also given that the criminal scheme may be ongoing, the United States anticipates that this confidential investigation will continue for the next year or longer.

21. Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the proposed Order for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the

8

investigation or arrest of the account holder, the United States will make best efforts to notify the Court promptly and seek appropriate relief.

22.  In this matter, the United States also requests that the instant Application and the Order be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the proposed Order. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Commn'ns, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an ongoing criminal investigation when such jeopardy creates a compelling governmental interest in confidentiality. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991). For the reasons stated above, the United States has a compelling interest in confidentiality to justify sealing the Application and Order. *See id.*

    Respectfully submitted,

    JESSIE K. LIU
    United States Attorney
    DC Bar No. 472845

        /s/
    Zia M. Faruqui, D.C. Bar No. 494990
    Assistant United States Attorney
    555 Fourth Street, N.W.
    Washington, D.C. 20530
    (202) 252-7117; zia.faruqui@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE EMAIL ACCOUNT(S) SERVICED BY MICROSOFT FOR INVESTIGATION OF VIOLATION OF Title 50 § 1701. | SC No. 19-sc-1042<br><br>**Filed Under Seal** |

**ORDER**

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Microsoft Corporation ("PROVIDER"), an electronic communication and/or remote computing service provider located in Redmond, Washington, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to endanger a person, flee from prosecution, destroy or tamper with evidence, and intimidate potential witnesses. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of the date of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that PROVIDER shall not disclose the existence of this Order of the Court to any other person (except attorneys for

2

PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

    IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.

_____
UNITED STATES MAGISTRATE JUDGE

2

# ATTACHMENT A

## I. The Account(s)

The Order applies to certain records and other information for any Microsoft Corporation ("PROVIDER") account(s) associated with the following identifier(s):

and any preserved data and/or preservation numbers associated therewith.

## II. Records and other information to be disclosed

PROVIDER is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment ("Account"), and for any account linked to such account or identifier by alternate email address, telephone number, payment information, cookies, GUID, or registration IP address ("Linked Accounts"):

**A. For the Account and for all Linked Account(s), information about the customer(s) or subscriber(s) thereof:**

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Local and long distance telephone connection records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses);

7. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. **All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) and Linked Account(s) for the time period from January 1, 2016 to the present, constituting all records and other information relating to the Account(s) and Linked Accounts (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s) and Linked Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses; and

2. Information about each electronic communication sent or received by the Account(s), and Linked Account(s) including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE EMAIL ACCOUNT(S) SERVICED BY MICROSOFT FOR INVESTIGATION OF VIOLATION OF Title 50 § 1701. | SC No. 19-sc-1042<br><br>**Filed Under Seal** |

## ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Microsoft Corporation ("PROVIDER"), an electronic communication and/or remote computing service provider located in Redmond, Washington, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to endanger a person, flee from prosecution, destroy or tamper with evidence, and intimidate potential witnesses. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of the date of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that PROVIDER shall not disclose the existence of this Order of the Court to any other person (except attorneys for

PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

    IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.

Digitally signed by G. Michael Harvey
Date: 2019.05.14 08:14:00 -04'00'

_____
UNITED STATES MAGISTRATE JUDGE

Angela D. Caesar
Digitally signed by Angela D. Caesar
Date: 2019.05.14 10:10:08 -04'00'

# ATTACHMENT A

I. **The Account(s)**

The Order applies to certain records and other information for any Microsoft Corporation ("PROVIDER") account(s) associated with the following identifier(s):

████████████████████

and any preserved data and/or preservation numbers associated therewith.

II. **Records and other information to be disclosed**

PROVIDER is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment ("Account"), and for any account linked to such account or identifier by alternate email address, telephone number, payment information, cookies, GUID, or registration IP address ("Linked Accounts"):

A. **For the Account and for all Linked Account(s), information about the customer(s) or subscriber(s) thereof:**

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Local and long distance telephone connection records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses);

7. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. **All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) and Linked Account(s) for the time period from January 1, 2016 to the present, constituting all records and other information relating to the Account(s) and Linked Accounts (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s) and Linked Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses; and

2. Information about each electronic communication sent or received by the Account(s), and Linked Account(s) including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information.