# ATTACHMENT

# A

*Redacted Docket Materials*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE ACCOUNT SERVICED BY MICROSOFT CORPORATION FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 1956 | No. 19-sc-1334<br><br>**Filed Under Seal** |

*Reference:*     *USAO Ref. #* ▮▮▮▮▮▮ *Subject Account(s):* ▮▮▮▮▮▮▮▮▮▮

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this ex parte application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Microsoft Corporation ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Redmond, Washington, to disclose certain records and other information pertaining to the PROVIDER account(s) associated with ▮▮▮▮▮▮▮▮▮▮ as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

## LEGAL BACKGROUND AND JURISDICTION

1.      PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2.      This Court has jurisdiction to issue the requested Order because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(d). Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

3.      As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC. *See* 18 U.S.C. § 3237.

4.      A court order under section 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## RELEVANT FACTS

5.      The United States is investigating the illicit transfer of Iranian petroleum to third party countries in violation against sanctions against Iran, and the payment of these shipments in U.S. dollars, which would require a license from the Department of Treasury Office of Foreign Assets Control (OFAC), which is located in the District of Columbia. The investigation concerns possible violations of, inter alia, the International Economic Emergency Powers Act (IEEPA), in violation of 50 U.S.C. §§ 1701-1707, and money laundering, in violation of 18 U.S.C. § 1956.

6.      On October 25, 2007, the Department of State designated the Islamic Revolutionary Guard Corps (IRGC). The Treasury Department also designated the IRGC-Qods Force (IRGC-QF) for providing material support to the terrorist organizations.

7.      On September 10, 2008, OFAC designated ██████████████████████

██████████ The designation noted that ████ facilitate the transport of cargo for U.N. designated proliferators, and also falsifies documents and uses deceptive schemes to shroud its involvement in illicit commerce. The designation concluded that ██████ actions are part of a broader pattern of deception and fabrication that Iran uses to advance its nuclear and missile programs.

8.    On August 6, 2018, the President issued Executive Order (EO) 13846, which made it illegal to purchase, acquire, sell, transport, or market petroleum products from Iran after November 5, 2018, without an appropriate license from OFAC. After this EO was implemented, the Iranian Oil Minister, Bijan Namdar Zanganeh, said in an interview, "We have unofficial or unconventional sales, all of which are secret, because if they are made known America would immediately stop them."

9.    According to publically available industry data, the ██████ is a large petroleum tanker capable of carrying ███████████████████████ of crude oil. Given its size, ████████ is required to use the automatic identification system (AIS). AIS was developed in the 1990s as a maritime safety feature which exchanges vessel information electronically with other nearby ships. The system is used by marine navigation officers and other maritime authorities for collision avoidance, identification and vessel locational data. Shipboard AIS became a requirement based on the International Maritime Organization's International Convention for the Safety of Life at Sea on the vessels described below as of December 31, 2004. AIS acts like a transponder that transmits ship's location information (based on GPS) via a VHF radio. AIS is a safety feature that notifies other vessels of a vessel's location. Law enforcement is aware that most jurisdictions require petroleum tankers over a specified gross tonnage to keep AIS on when a tanker is at sea, partly due to the environmental damage petroleum tankers can cause

by oil spills.

10.     Law enforcement has observed in numerous investigations, and open source reporting confirms that tankers operating on behalf of sanctioned entities turn this safety system off to conceal their illicit port calls. In particular, this is a common practice when doing business with Syria and Iran, which are both subject to similar international sanctions.

11.     Law enforcement has uncovered evidence showing that petroleum tanker ████ has been involved with some of the secret, unconventional sales, which the Iranian Oil Minister referenced.  In addition to illegally transferring Iranian petroleum, law enforcement has also discovered that this petroleum tanker may have used fraudulent documents when conducting this activity.  Finally, financial records show that U.S. dollar wires transited through the United States for the benefit of the ████ near the time of the illicit oil transfers by ████.

12.     Based on publically available AIS data and draft (i.e., how deep a vessel sits on the water) of the Grace 1, law enforcement has uncovered at least three instances of the vessel loading petroleum products in Iran.  Law enforcement has also uncovered multiple instances of smaller tankers engaging in ship to ship transfers with the ████ after it loaded Iranian petroleum, after which these smaller tankers then shipped petroleum from ████ to customers at numerous ports.  Law enforcement is aware that such ship to ship transfers serve to conceal the origin of the petroleum, as the new vessel that receives the petroleum may conceal the sanction nexus with the original vessel.

13.     News reporting in 2019 indicated that ████ was illicitly shipping Iranian oil using forged documents which purport to show Iraqi origin for this oil.   The article noticed that ████ was engaged in such scheme in order to avoid U.S. sanctions.

*December 2018 Transfer of Iranian Crude Oil*









**TARGET ACCOUNTS**

34. ███████████████ **(Target Account 1)** – The subpoena returns for subscriber information of ██████ profile ██████████████████████ lists Target Account 1 as the email address associated with this account.

35. ███████████████ **(Target Account 2)** – The subpoena returns for subscriber information from ████████ show that Target Account 2 is used by ████████████ who is ████████████████████

36. ███████████████ **(Target Account 3)** – The subpoena returns for subscriber information from ████████ show that Target Account 3 is used by ████████ who is ████████ ████████████████████ He also uses the email address ████████████████ which is a related ████████ business.

37. ███████████████ (Target Account 4) - The subpoena returns for subscriber information from ████████ show that Target Account 4 is used by ████████████ who is ████████████████████

38. ███████████████ **(Target Account 5)** - The subpoena returns for subscriber information from ████████ show that Target Account 5 is used by ████████ who is ████████████████████ As described previously, ██████ is the manager of the ████████ ██

39. ███████████████ **(Target Account 6)** - The subpoena returns for subscriber information from ████████ show that Target Account 6 is used by ████████████ who is the ████████████████████

40. ███████████████ **(Target Account 7)** - The subpoena returns for subscriber information from ████████ show that Target Account 7 is used by ████████

9



As described previously ██████ owns the company that owns ████████ and is a member of Iranian conglomerate ████████████

41.      ██████████████ **(Target Account 8)** and ██████████████ **(Target Account 9)** – U.S. bank records reveal that ████████████████████ ████████████ and own a number of suspected shell companies that appeared to have conducted millions of dollars of transfer in a manner consistent with known money laundering practices.  One of their shell companies is ██████████████ which (as noted above) was involved with sending a multi-million dollar payment that referenced th██████ at the time of the suspected illicit shipment of Iranian petroleum.  Publicly available records show that ████████ ██████████████████ uses Target Account 8 and Target Account 9.     Publically available records reveal that criminal racketeering charges appear to be pending against ████████ ████████████████

*Role that Metadata Will Serve in Advancing the Investigation*

42.      Based on prior investigation, law enforcement is aware that criminal coconspirators communicate frequently through private message and email about their legitimate and illegitimate businesses, as well as the transfer of proceeds from such businesses.  Private messages and email offer a uniquely valuable form for such communication, as they can be accessed from any location. Many such persons also believe that such messages are difficult to trace, which leads them to have inculpatory conversations.

43.      Moreover, persons operating international procurement and money laundering operations typically have to communicate via email with persons funding their operations, due to the time differences involved, as well as limited phone access in certain regions of the world. When transferring funds to coconspirators, electronic communications will normally occur to

inform the other party that the money has been sent, followed up by communications that the money has been received. Law enforcement is also aware from prior investigations that subordinates in the management chain must communicate to their superiors the status of their illegal tasks as well as receive new illegal tasks. Based on these facts, law enforcement believes that the subjects of the investigation are communicating via email.

44.    The header information of these communications can reveal the scope of the contacts between the money launderers/export control violators and who the important coconspirators are. Multiple individuals and companies associated with the targets of this investigation have taken steps to obscure or anonymize their identities. Learning the header information from associated email accounts is likely to reveal persons within this network, including customers possibly in Iran, as well as further identify any other users of the email account. This information is commonly known as "metadata."

45.    Learning this information will allow law enforcement to investigate these newly identified persons, and in some instances surveil and interview them. Identifying, surveilling, and interviewing these persons will advance the investigation of the subjects and their co-conspirators, by further revealing the scope of their activities, both legal and illegal.

## REQUEST FOR ORDER

46.    The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the

11

proposed Order within ten days of receipt of the Order.

47.     The United States further requests that the Order direct PROVIDER not to notify any person, including the subscriber or customer of each account listed in Part I of Attachment A, of the existence of the application of the United States or the Order for one year from the date of the Court's Order.  *See* 18 U.S.C. § 2705(b).  This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order."  *See* 18 U.S.C. § 2705(b).[1]

48.     In this case, the proposed Order seeks information relevant to establishing the illegal activity under investigation and identifying the individual(s) responsible.  Accordingly, disclosure may reveal the existence, scope, and direction of the United States's ongoing and confidential investigation.  Once alerted to this investigation, potential target(s) could be immediately prompted to destroy or conceal incriminating evidence, alter their operational tactics to avoid future detection, and otherwise take steps to undermine the investigation and avoid future prosecution.  In particular, given that they are known to use electronic communication and remote computing services, the potential target(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity.  Notification could also result in the target(s) avoiding

---

[1] The government relies on § 2705(b) to seek a preclusion-of-notice order because the government is requesting only non-content information pursuant to § 2703(d), an action which is authorized by § 2703(c).  *See* 18 U.S.C. § 2703(c)(1)(B) ("governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when [it] . . . obtains a court order for such disclosure under subsection (d) of this section").  Under § 2703(c), the government has no obligation to notify the subscriber.  *See* 18 U.S.C. § 2703(c)(3) ("governmental entity receiving records or information under this section is not required to provide notice to a subscriber or customer").

travel to the United States or other countries from which they may be extradited.

49.     Therefore, based on the foregoing, there are reasonable grounds to believe that notification of the existence of this Order would result in flight from prosecution, destruction of or tampering with evidence, or other serious jeopardy to this investigation.  *See* 18 U.S.C. § 2705(b)(2), (3), and (5).

50.     Given the complex nature of the criminal activity under investigation and likely involvement of foreign-based coconspirators and evidence, and also given that the criminal scheme may be ongoing, the United States anticipates that this confidential investigation will continue for the next year or longer.

51.     Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the proposed Order for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.  Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the United States will make best efforts to notify the Court promptly and seek appropriate relief.

52.     In this matter, the United States also requests that the instant Application and the Order be filed under seal.  The Court has the inherent power to seal court filings when appropriate, including the proposed Order.  *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Commn'ns, Inc.*, 435 U.S. 589, 598 (1978)).  More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an ongoing criminal investigation when such jeopardy creates a compelling governmental interest in confidentiality. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).  For the reasons stated

above, the United States has a compelling interest in confidentiality to justify sealing the Application and Order. *See id.*

                                                          Respectfully submitted,

                                                          JESSIE K. LIU
                                                          United States Attorney
                                                          DC Bar No. 472845

                                                /s/
                                           ZIA M. FARUQUI, D.C. Bar No. 494990
                                           Assistant United States Attorney
                                           555 Fourth Street, N.W., Room 4806
                                           Washington, D.C. 20530
                                           (202) 252-7117
                                           Zia.Faruqui@USDOJ.Gov

14

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE ACCOUNT SERVICED BY MICROSOFT CORPORATION FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 1956 | No. 19-sc-1334<br><br>**Filed Under Seal** |

## ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Microsoft Corporation ("PROVIDER"), an electronic communication and/or remote computing service provider located in Redmond, Washington, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee or continue flight from prosecution, and destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(2), (3), and (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of

one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

      IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.

 

_____
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## I. The Account(s)

The Order applies to certain records and other information for any Oath Holdings Inc. ("PROVIDER") account(s) associated with the following identifier(s):

- ███████████████████████

and any preserved data and/or preservation numbers associated therewith.

## II. Records and other information to be disclosed

Provider is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Account"), and for any account linked to such accounts or identifier by alternate email address, telephone number, payment information, cookies, GUID, or registration IP address ("Linked Account"):

### A. For the Account and for all Linked Accounts, information about the customer(s) or subscriber(s) thereof:

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Local and long distance telephone connection records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses);

7. Other subscriber numbers or identities (including the registration IP address), including any current or past accounts linked to the Account(s) by telephone number, recovery or alternate e-mail address, IP address, or other unique device or user identifier; and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B. All records and other information relating to the Account and Linked Accounts (except the contents of communications)**

Provider is required to disclose to the United States the following records and other information, if available, for the Accounts and Linked Accounts for the time period from January 1, 2008, to the PRESENT, constituting all records and other information relating to the Accounts (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses; and

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information.

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE APPLICATION OF USA FOR
2703(d) ORDER FOR ONE ACCOUNT
SERVICED BY MICROSOFT
CORPORATION FOR INVESTIGATION
OF VIOLATION OF 18 U.S.C. 1956

No. 19-sc-1334

**Filed Under Seal**

**ORDER**

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Microsoft Corporation ("PROVIDER"), an electronic communication and/or remote computing service provider located in Redmond, Washington, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee or continue flight from prosecution, and destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(2), (3), and (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of

one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.

2019.06.21
18:31:05 -04'00'

_____
UNITED STATES MAGISTRATE JUDGE

<u>**ATTACHMENT A**</u>

**I.  The Account(s)**

The Order applies to certain records and other information for any Oath Holdings Inc. ("PROVIDER") account(s) associated with the following identifier(s):

- ███████████████████

and any preserved data and/or preservation numbers associated therewith.

**II.  Records and other information to be disclosed**

Provider is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Account"), and for any account linked to such accounts or identifier by alternate email address, telephone number, payment information, cookies, GUID, or registration IP address ("Linked Account"):

**A.  For the Account and for all Linked Accounts, information about the customer(s) or subscriber(s) thereof:**

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Local and long distance telephone connection records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses);

7. Other subscriber numbers or identities (including the registration IP address), including any current or past accounts linked to the Account(s) by telephone number, recovery or alternate e-mail address, IP address, or other unique device or user identifier; and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B. All records and other information relating to the Account and Linked Accounts (except the contents of communications)**

Provider is required to disclose to the United States the following records and other information, if available, for the Accounts and Linked Accounts for the time period from January 1, 2008, to the PRESENT, constituting all records and other information relating to the Accounts (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses; and

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information.

2