# ATTACHMENT

# A

*Redacted Docket Materials*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| **IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR TWO EMAIL ACCOUNTS SERVICED BY OATH HOLDINGS, INC (FOR YAHOO!) FOR INVESTIGATION OF VIOLATIONS OF 50 U.S.C. § 1701 et seq.** | **SC No. ________19-sc-1620________**<br><br>**Filed Under Seal** |
|---|---|

***Reference:*** ***USAO Ref. #*** [redacted]***; Subject Account(s):*** [redacted]

**APPLICATION OF THE UNITED STATES**
**FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)**

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require OATH HOLDINGS, INC. (FOR YAHOO!) ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Sunnyvale, California, to disclose certain records and other information pertaining to the PROVIDER account(s) associated with [redacted] as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

**LEGAL BACKGROUND AND JURISDICTION**

1. PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2. This Court has jurisdiction to issue the requested Order because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(d). Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

3. As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC. *See* 18 U.S.C. § 3237. Also, the statutes setting forth the federal offenses under investigation, namely 50 U.S.C. § 1701 et seq. and 18 U.S.C. § 1956, apply extraterritorially.

4. A court order under section 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

**RELEVANT FACTS**

5. The United States is investigating and others known and unknown for conspiring to export U.S. to prohibited persons and entities in , including The investigation concerns possible violations of, *inter alia*, 50 U.S.C. §§ 1701-1705 (International Emergency Economic Powers Act); the Export Control Reform Act of 2018 (ECRA); 18 U.S.C. § 1343 (Wire Fraud); 18 U.S.C. § 1956 (Money Laundering); 18 U.S.C. 554 (Smuggling Goods from the United States) and 18 U.S.C. § 371 (Conspiracy).

6. is a company located in specializing in the design, production, sales, contract supervision, and servicing of a large variety of According to their publicly available website,



7. In December 2016, pursuant to Executive Order 13694, OFAC designated the as a sanctioned entity for engaging in activities that undermine the cybersecurity of individuals and entities on behalf of the

8. On OFAC designated and three of its executives as under Executive Order 13694, and Section 224 of the Countering America's Adversaries Through Sanctions Act. Following the imposition of sanctions against the FBI interviewed representatives of several U.S. companies who were listed on website, to determine whether or not these companies had engaged in transactions with the sanctioned entity. During

these interviews, the FBI advised the U.S. companies about the sanctions imposed on and the three executives. As a result of these interviews, copies of purchase orders, invoices, shipping documents, and email communication between an individual using the name , who is believed to be an employee of were obtained.

9. After was designated, emailed her U.S. suppliers and told them that as a result of the sanctions she was going to create new companies to do business with them. She asked one U.S. supplier if money held by the U.S. supplier that had been sent from for a purchase—which due to the sanctions the U.S. supplier could neither fulfill nor refund—could be applied to purchases by the new company. She also attempted to import under these new company names. On August 21, 2018, OFAC designated and her two companies pursuant to Executive Order 13694.

10. then began using other intermediaries and shipping companies to disguise their involvement and the ultimate destination of the from the United States. On an individual using email address requested a price quote from a -based manufacturer of (hereinafter Company A). The email said he was inquiring about and sent a list for parts sought in his email. This list seemed to have been copied and pasted from an invoice Company A had sent to in April 2018. Not only were the items and quantities requested exactly the same, but the list also reproduced a specific mistake that had been made on the invoice; only one of a particular

part was listed, when four were required for the device to function. Accordingly, whoever sent the inquiry had apparently used ’ invoice as a template, and therefore had perpetuated the error. Company A had been unable to fulfill ’ order from April because was designated in June 2018. It appears was reattempting to procure, through an intermediary, the items that they had been previously unable to purchase directly from Company A.

11. Company B is a -based manufacturer of In May 2019, Company B’s representative advised U.S. authorities that they had recently (after and associated entities had been sanctioned) sold This initial email inquiry for this purchase contained phrases and sentences that were identical to those in an email sent to Company B by company previously used by as an intermediary. The email to Company B also contained the phrase in letters at the bottom of the email and the website for a indicating that the user of this email account may be The payment for was made on in the form of a wire transfer from a registered company. This company had funded previous purchases by and its related sanctioned entities. According to Company B, had purchased several of the same exact in the past to outfit

12. Based on ’ prior purchase of from Company A, its prior purchase of the same exact from Company B, and the identical sentences, phrases,

and mistakes employed in the email inquiries to these companies suggest that the inquiries most likely originated from [REDACTED] or [REDACTED] associated persons or entities.

**REQUEST FOR ORDER**

13. The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

14. The United States further requests that the Order direct PROVIDER not to notify any person, including the subscriber or customer of each account listed in Part I of Attachment A, of the existence of the application of the United States or the Order one year from the date of the Court's Order. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *See* 18 U.S.C. § 2705(b).[1]

[1] The government relies on § 2705(b) to seek a preclusion-of-notice order because the government is requesting only non-content information pursuant to § 2703(d), an action which is authorized by § 2703(c). *See* 18 U.S.C. § 2703(c)(1)(B) ("governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when [it] . . . obtains a court order for such disclosure under subsection (d) of this section"). Under § 2703(c), the government has no obligation to notify the subscriber.

15. In this case, the proposed Order seeks information relevant to establishing the illegal activity under investigation and identifying the individual(s) responsible. Accordingly, disclosure may reveal the existence, scope, and direction of the United States' ongoing and confidential investigation. Once alerted to this investigation, potential target(s) could be immediately prompted to destroy or conceal incriminating evidence, alter their operational tactics to avoid future detection, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote computing services, the potential target(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity. Notification could also result in the target(s) avoiding travel to the United States or other countries from which they may be extradited.

16. Therefore, based on the foregoing, there are reasonable grounds to believe that notification of the existence of this Order would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2)-(5).

17. Given the complex nature of the criminal activity under investigation and likely involvement of foreign-based coconspirators and evidence, and also given that the criminal scheme appears to be ongoing, the United States anticipates that this confidential investigation will continue for the next year or longer.

18. Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the proposed Order for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. Should the court-ordered

---

*See* 18 U.S.C. § 2703(c)(3) ("governmental entity receiving records or information under this section is not required to provide notice to a subscriber or customer").

Case 1:19-sc-01620-GMH *SEALED* Document 1 Filed 08/21/19 Page 8 of 8

nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the United States will make best efforts to notify the Court promptly and seek appropriate relief.

19. In this matter, the United States also requests that the instant Application and the Order be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the proposed Order. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Commn'ns, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an ongoing criminal investigation when such jeopardy creates a compelling governmental interest in confidentiality. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991). For the reasons stated above, the United States has a compelling interest in confidentiality to justify sealing the Application and Order. *See id.*

JESSIE K. LIU
United States Attorney
DC Bar No. 472845

By: ________/s/________________

Frederick Yette, D.C. Bar No. 385391
Assistant United States Attorney
Christine M. Quinn, MD Bar No. 1801040011
Special Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
Fredrick.Yette@usdoj.gov
christine.quinn2@usdoj.gov
(202) 252-7733 (Yette)
(202) 252-7785 (Quinn)

*Attorneys for the United States of America*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR TWO EMAIL ACCOUNTS SERVICED BY OATH HOLDINGS, INC (FOR YAHOO!) FOR INVESTIGATION OF VIOLATIONS OF 50 U.S.C. § 1701 et seq.** | **SC No. ______19-sc-1620___________**<br><br>**Filed Under Seal** |

## ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring OATH HOLDINGS, INC (FOR YAHOO!) ("PROVIDER"), an electronic communication and/or remote computing service provider located in Sunnyvale, California to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, and intimidate potential witnesses. *See* 18 U.S.C. § 2705(b)(2)-(5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of

Case 1:19-sc-01009-*SEALED* Document 1-1 Filed 04/01/19 Page 2 of 4

one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.

_________________________________________

UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

**I. The Account(s)**

The Order applies to certain records and other information for any OATH HOLDINGS, INC (FOR YAHOO!) ("PROVIDER") account(s) associated with the following identifier(s):

and any preserved data and/or preservation numbers associated therewith.

**II. Records and other information to be disclosed**

**A. Information about the customer or subscriber of the Account(s)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Account(s)") constituting information about the customer or subscriber of the Account(s):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Local and long distance telephone connection records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

7. Other subscriber numbers or identities (including the registration IP address), including any current or past accounts linked to the Account(s) by telephone number, recovery or alternate email address, IP address, or other unique device or user identifier; and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

9. A statement as to whether the Account(s) or any devices associated with the Account(s) had location services or GPS activated or enabled, and if so, whether PROVIDER does or does not have geolocation records available for the Account(s) or any devices associated with the Account(s) for the time period from November 1, 2013 to the Present.

**B. All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) for the time period from November 1, 2013 to the Present, constituting all records and other information relating to the Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information; and

3. Identification of any PROVIDER account(s) that are linked to the Account(s) by cookies, including all PROVIDER user IDs that logged into PROVIDER's services by the same machine as the Account(s).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR TWO EMAIL ACCOUNTS SERVICED BY OATH HOLDINGS, INC (FOR YAHOO!) FOR INVESTIGATION OF VIOLATIONS OF 50 U.S.C. § 1701 et seq. | SC No. ______19-sc-1620___________<br>**Filed Under Seal** |
| --- | --- |

**ORDER**

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring OATH HOLDINGS, INC (FOR YAHOO!) ("PROVIDER"), an electronic communication and/or remote computing service provider located in Sunnyvale, California to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, and intimidate potential witnesses. *See* 18 U.S.C. § 2705(b)(2)-(5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of

one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.

2019.08.05
12:59:52
-04'00'

UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### I. The Account(s)

The Order applies to certain records and other information for any OATH HOLDINGS, INC (FOR YAHOO!) ("PROVIDER") account(s) associated with the following identifier(s):

[REDACTED]

and any preserved data and/or preservation numbers associated therewith.

### II. Records and other information to be disclosed

#### A. Information about the customer or subscriber of the Account(s)

PROVIDER is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Account(s)") constituting information about the customer or subscriber of the Account(s):

1. Names (including subscriber names, user names, and screen names);
2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);
3. Local and long distance telephone connection records;
4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
5. Length of service (including start date) and types of service utilized;
6. Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

7. Other subscriber numbers or identities (including the registration IP address), including any current or past accounts linked to the Account(s) by telephone number, recovery or alternate email address, IP address, or other unique device or user identifier; and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

9. A statement as to whether the Account(s) or any devices associated with the Account(s) had location services or GPS activated or enabled, and if so, whether PROVIDER does or does not have geolocation records available for the Account(s) or any devices associated with the Account(s) for the time period from November 1, 2013 to the Present.

**B. All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) for the time period from November 1, 2013 to the Present, constituting all records and other information relating to the Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information; and

3. Identification of any PROVIDER account(s) that are linked to the Account(s) by cookies, including all PROVIDER user IDs that logged into PROVIDER's services by the same machine as the Account(s).