# ATTACHMENT

# A

*Redacted Docket Materials*

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 19-sc-1912 |
| INFORMATION ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY MICROSOFT CORPORATION, FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 1956 | ) ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

INFO. ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY MICROSOFT CORP., FOR INVESTIGATION OF VIOLATION OF 18 U.S.C.1956 (See Attachment A, incorporated herein by reference.)

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

| Code Section | Offense Description |
|---|---|
| 50 U.S.C. § 1705(a) | IEEPA |
| 18 U.S.C. § 1956 | Money Laundering |

The application is based on these facts:

See attached Affidavit in support of Search Warrant, which is incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 09/16/2019 _____

_____
*Judge's signature*

City and state: District of Columbia

_____ Robin M. Meriweather, U.S. Magistrate Judge _____
*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

In the Matter of the Search of                )
*(Briefly describe the property to be searched*     )
*or identify the person by name and address)*        )          Case No.  19-sc-1912
INFORMATION ASSOCIATED WITH ONE ACCOUNT     )
STORED AT PREMISES CONTROLLED BY MICROSOFT   )
CORPORATION, FOR INVESTIGATION OF VIOLATION  )
OF 18 U.S.C. § 1956                          )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Western_____ District of _____Washington_____ *(identify the person or describe the property to be searched and give its location)*:

INFORMATION ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY MICROSOFT CORPORATION, FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 1956
  See Attachment A, hereby incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
  See Attachment B, hereby incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____September 30, 2019_____ *(not to exceed 14 days)*
  ☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Robin M. Meriweather_____ .
                                                                *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
  ☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  _____09/16/2019_____

                                            _____
                                                      *Judge's signature*

City and state:  _____District of Columbia_____        Robin M. Meriweather, U.S. Magistrate Judge
                                                      *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.: <br> 19-sc-1912 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information associated with the Microsoft Corporation account  that is stored at premises controlled by Microsoft Corporation, a company that accepts service of legal process at 1 Microsoft Way, Redmond, Washington.

1

**ATTACHMENT B**

**Particular Things to be Seized and Procedures
to Facilitate Execution of the Warrant**

I.      **Information to be disclosed by Microsoft Corporation ("PROVIDER") to
        facilitate execution of the warrant**

To the extent that the information described in Attachment A is within the possession,

custody, or control of PROVIDER, including any records that have been deleted but are still

available to PROVIDER, or have been preserved pursuant to a request made under 18 U.S.C.

§ 2703(f), PROVIDER is required to disclose the following information to the government

corresponding to each account or identifier ("Account") listed in Attachment A:

a.      For the time period covering January 5, 2011 to the present: The contents of all

communications and related transactional records for all PROVIDER services used by an

Account subscriber/user (such as e-mail services, calendar services, file sharing or storage

services, photo sharing or storage services, remote computing services, instant messaging or chat

services, voice call services, or remote computing services, including but not limited to

incoming, outgoing, and, messages, calls, and other electronic communications; attachments to

communications (including native files); source and destination addresses and header or routing

information for each communication (including originating IP addresses of e-mails); the date,

size, and length of each communication; and any user or device identifiers linked to each

communication (including cookies); electronic communication services such as Skype (voice

calls, video calls, and SMS text messaging), Outlook Calendar (calendar and task), Office Online

(cloud computing services for word processing, data processing, and presentations); OneDrive

(online file storage); web browsing and search tools such as Bing Search (internet searches),

Microsoft Edge, and Internet Explorer (web browsers); Bing Maps (maps with driving directions

2

and local business search) and other location services; online tracking and advertising tools such as Bing Ads (which facilitates targeted advertising); and Microsoft Store (which allows users to purchase and download digital content, e.g., applications). Microsoft also provides remote computing services for devices that use Windows operating systems, including security services and parental control services which collect information about the use of the devices (*e.g.*, internet browsing history, software usage history, and other information).

b.      For the time covering January 5, 2011 to the present:  The contents of all other data and related transactional records for all PROVIDER services used by an Account user (such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services, including any information generated, modified, or stored by user(s) or PROVIDER in connection with the Account (such as contacts, calendar data, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information);

c.      For the time period covering January 5, 2011 to the present: All PROVIDER records concerning the online search and browsing history associated with the Account or its users (such as information collected through tracking cookies);

d.      For the time period covering January 5, 2011 to the present: All records and other information concerning any document, or other computer file created, stored, revised, or accessed in connection with the Account or by an Account user, including the contents and revision history of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

e.     All records regarding identification of the Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of payment (including any credit card or bank account number), records of session times and durations (including IP addresses, cookies, device information, and other identifiers linked to those sessions), records of account registration (including the IP address, cookies, device information, and other identifiers linked to account registration), length of service and types of services utilized, account status, methods of connecting, and server log files;

f.     All device or user identifiers which have ever been linked to the Account, including but not limited to all cookies and similar technologies, unique application numbers, hardware models, operating system versions, device serial numbers, Global Unique Identifiers ("GUID"), mobile network information, telephone numbers, Media Access Control ("MAC") addresses, and International Mobile Equipment Identities ("IMEI");

g.     Basic subscriber records and login history (including, as described in 18 U.S.C. § 2703(c)(2), names, addresses, records of session times and durations, length of service and types of service utilized, instrument numbers or other subscriber numbers or identities, and payment information) concerning any PROVIDER account (including both current and historical accounts) ever linked to the Account by a common e-mail address (such as a common recovery e-mail address), or a common telephone number, means of payment (*e.g.*, credit card number), registration or login IP addresses (during one-week period), registration or login cookies or similar technologies, or any other unique device or user identifier;

h.     For the time period covering January 5, 2011 to the present: All records of communications between PROVIDER and any person regarding the Account, including contacts with support services and records of actions taken;

4

i.    Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel); and

j.    For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

k.    The PROVIDER shall deliver the information set forth above via United States mail, courier, or e-mail to the following:



## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. § 1956, and 50 U.S.C. §§ 1701-1706 as described in the affidavit submitted in support of this Warrant, including, for each Account, information pertaining to the following matters:

(a)  Information that constitutes evidence of the identification or location of the user(s) of the Account;

(b)  Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

(c)  Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

(d)  Information that constitutes evidence concerning how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user;

(e)  Information that constitutes evidence identifying coconspirators, accomplices, and aiders and abettors in the commission of the above offenses;

(f)  Information that constitutes evidence concerning sanctions, and practices taken to avoid sanctions;

(g) Information that constitutes evidence indicating transportation or transmission of funds that have been derived from a criminal offense;

(h) Information that constitutes evidence indicating the transportation, transmission, or transfer of funds that are intended to be used to promote, conceal, or support unlawful activity;

(i) Information that constitutes evidence concerning records related to the shipments of commodities/goods including, but not limited to, bills of lading, port call documents, and customs forms;

(j) Information that constitutes evidence concerning banking or financial information related to █████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

(k) Information that constitutes evidence concerning transshipments of commodities/goods by/to █████████████████████████████████████████

████████████████████████████████████████████████████████████████████

(l) Information that constitutes evidence indicating the amount and location of any payments, monies, or funds transfers by/to ███████████████████████

████████████████████████████████████████████████████████████████████

### III.   Government procedures for warrant execution

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by _____ ("PROVIDER"), and my title is _____. I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER.  The attached records consist of:

_____

[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.      such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.


_____      _____

Date                                          Signature

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY MICROSOFT CORPORATION, FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 1956 | SC No. 19-1912<br><br>**Filed Under Seal** |

*Reference:* **USAO Ref. #** █████████ *Subject Account:* ████████████████

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, ███████████, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information which is associated with one account, which is ████████████████ that is stored at premises controlled by Microsoft Corporation ("PROVIDER"), an electronic communications services provider and/or remote computing services provider which is headquartered at / which accepts service at One Microsoft Way, Redmond, Washington 98052. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require PROVIDER to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.



3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of the money laundering statute, 18 U.S.C. § 1956, the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1707, and the executive orders and regulations promulgated thereunder have been committed by the users of the Target Accounts.  These investigations often involve the use of email by subjects who use their email accounts to correspond with banks, commodity brokers, and logistics companies to arrange purchases and shipments in circumvention of U.S. economic sanctions and other laws.  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC.  *See* 18 U.S.C. § 3237.  Specifically, as discussed below, ███████████████████ ████████ failed to obtain a license from the U.S. Department of Treasury's, Office of Foreign Asset Control (OFAC), which is located in Washington D.C.

## STATUTORY AUTHORITY

### I.      THE SYRIAN REGIME

6.      On June 28, 2005, OFAC designated the Scientific Studies and Research Center ("SSRC"), Syria's government agency responsible for developing weapons of mass destruction ("WMD") as part of a previously enacted sanction against the government of Syria.  The U.S. Government defines chemical weapons as WMDs.  *See* U.S.C. §2332a.  The SSRC was designated under Executive Order ("E.O.") 13382, blocking the property of specially designated WMD proliferators and members of their support networks, effectively denying those parties access to the U.S. financial and commercial systems.  *See e.g*. https://treasury.gov/resource-center/sanctions/Programs/Documents/wmd.txt.

7.      On May 18, 2011, OFAC designated Bashar al-Assad, the President of Syria, and his chief lieutenants for human rights abuses, including repression of the Syrian people, as well as having benefitted from rampant corruption.

8. Syrian Foreign Ministry spokesman Jihad Makdissi confirmed for the first time on July 23, 2012 that the Assad regime had chemical weapons. In February 2014, a United Nations Human Rights Commission investigation confirmed the use of chemical weapons, specifically the nerve agent sarin, against civilians in the Syrian cities of Khan al-Assal in March 2013, Saraqib in April 2013, and Ghouta in August 2013. The investigation concluded that the nerve agent used in these attacks came from the Syrian Army's stockpile of chemical weapons.

## II. OFAC DESIGNATION OF █████████████████████████
██████████████████

9. On July 21, 2016, OFAC designated ██████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

**III.** ███████████████ **AND THE SYRIAN GOVERNMENT**

    10.    As part of this investigation, law enforcement obtained a search warrant for email accounts belonging to ██████████████████████████████, who have a long history of working with the Syrian government. *See* ███████████████████

    11.    For example, in a May 17, 2012 email, ████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

**IV.** ███████████████████████ **BACKGROUND**

    14.    As part of this investigation, law enforcement obtained a search warrant for email accounts belonging to ████████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████

15. On April 9, 2015, ███████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

███████████████████████████████████████ Based on my
training and experience, I know that multiple companies operating out of the same ██████ is
often indicative of a company having a limited physical presence ████████ Additionally,
███████████████████████████████████████

16. ████████████████████████████████████ Based
on my training and experience, I am aware that ████████████████████████
███████████████████████████████████████ As
described below, subpoena returns from the U.S. financial institutions which process international
wires revealed ████████████████████████████





22.     Email search warrant returns of ████████ also show that an individual named

███████████████████████████████████████████████████

24.    On May 18, 2018, the █████ Ministry of Economy and Finances designated the

█████████████████████████████████████████████ on this

designation, confirming this company's association with ████████████ Based on this

information, I reasonably believe that █████████████████████████████

████████████████ who is subject to sanctions, and therefore these companies are also

subject to sanctions.

25.    Law enforcement also identified in ███████████████████████

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

## V.    ILLICIT INTERNATIONAL WIRES

26.    Subpoena returns from U.S. financial institutions revealed at least ████████████

wire payments originating from ███████████████████████████████

████████ since 2013.  Of these funds, approximately ███████████████

████████████████████ According to its website. ████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ I am aware that

procurement agents often enter a generic reference to obscure the true item purchased.

27.    Subpoena returns from U.S. financial institutions also revealed USD transactions

between ██████████████████████████████. The procurement of

such products was consistent with OFAC's designation of ███████████ and supports the

conclusion that the company was obtaining ████████████████████████

████████████

28.    Multiple wire transactions totaling ██████ were blocked while transiting through

the United States, because the parties failed to obtain a license from OFAC, which is located in

Washington D.C., prior to engaging in these USD transactions.  These transactions are summarized

as follows:



███████████████████████████████████████

29.     Based on my training and experience, I know that companies located in sanctioned countries often use shell companies to purchase items on their behalf to conceal the true destination of the goods, to avoid funds being blocked, and to limit any potential criminal liability that might be incurred.  Based on ████████████████████████ I believe that ████████████ was acting on behalf of ██████ to access the U.S. financial system, in violation of sanctions and money laundering laws.

## TARGET ACCOUNTS

30.     ██████████████ (Target Account 1) – Subscriber information for Target Account 1 lists the recovery email address as ████████████████ which is used by ████ On February 4, 2016, a ██████████████ sent an email to ████████████, using Target Account 1, which I believe to be short for ████████ Additionally, the subscriber information for Target Account 1 revealed logins at IP addresses used by ████ other known email addresses. ██████████████████████ For these reasons, I believe Target Account 1 is used by ████

31.     From on or about September 15, 2014 through October 26, 2015, Target Account 1 communicated with the email address ████████████████ which is on the ██████████ three times.  I believe this domain is associated with ████████████████ ████████████ OFAC designated ████ on May 16, 2017 for being owned or controlled by previously designated ████████████████████████████████ ████████████████████████████████

11

32.     From on or about December 29, 2015 through November 2, 2016, Target Account 1 communicated with ████████████████ times.  I am aware that using the letter of the first name combined with a full last name is a common email naming convention; therefore, I believe this email address belongs to ████████████████████

33.     On September 28, 2016, █████ emailed Target Account 1 a ████████████████ ████████████████████████████████████████████████████████ ████████████████ Law enforcement believes these could be ████████████████

34.     ████████████████ (Target Account 2) – Target Account 2 is used by ████ ████████████ whose ████████████ shows that ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

35.     Target Account 2 regularly communicated with ████████████████████ ████████ The subject line of emails from Target Account 2 typically included a number, which ████ categorizes as ████████████████████ and emails typically contained a PDF attachment of a specification for ████████████████████ Each PDF contained the corresponding subject line number handwritten at the top of the page.

36.     For example, on May 12, 2014, Target Account 2 sent ████████████ an email with ████████████████████ The email contained a PDF attachment of a specification sheet from ████████████████████████████████ ████████████████████████████████████ The signature line on this email is ████████████████████████████████ which shows that ████████████████████████████

37. On July 9, 2015, Target Account 2 emailed ████ a letter law enforcement believes is destined for ████████████████ The letter reveals ████████████████████



████████████ Law enforcement believes the branch referenced is ████████████████

38. From on or about May 22, 2013 through October 10, 2013, Target Account 2 communicated with email accounts on ████████████████████████████ According to publicly available information, ████████████████████████████ ████████████████████████

39. On January 4, 2014, ████ appears to have used Target Account 2 to communicate with ████████████████ In this email, ████ described his business structure as ████ ████████████████████

40. From on or about December 29, 2015 through November 2, 2016, Target Account 1 communicated with ████████████████ As described previously, I believe this email address belongs to ████████████████ Target Account 2 started emailing ████████████ around the time communication with ████████████ ended.

41. ████████████████ (Target Account 3) - On June 13, 2017, ████████ who is ████████████████████ a document with details about a shipment from ████████████████████████ which I believe to a company designed to receive ████████████████████████

███████████████████ Based on the name and other information as described below, I believe ████ uses Target Account 3 in connection with this company.

42.      On December 17, 2015, ████ received an email from Target Account 3 instructing ████████████████████████████ which I believe is a reference to Target Account 2.   Additionally, the subject lines for emails from Target Account 3 use the same naming convention as Target Account 2, as described above.   Subscriber information for Target Account 3 reveals that Target Account 3 logged in from the same IP address in ████ as Target Account 1, which I believe is associated with an office used by ████████████ ███████████████████ Based on this information, I believe ████ uses Target Account 3.

43.      ████ forwarded Target Account 3 multiple emails from ████████████ ████████████████████

44.      From on or about July 30, 2014 through September 22, 2016, Target Accounts 1, 2, and 3 communicated with email accounts on ███████████████████ ███████████████ was designated by OFAC on December 23, 2016 for shipping ████ ███████████████

45.      From on or about December 20, 2016 through December 21, 2016, Target Accounts 2 and 3 communicated with an email address on ███████████████████ ████████████ was designated by OFAC on December 23, 2016 for transporting ████████████████████ The airline was also used to launder ███████████████ It is owned by ███████████████ ████████ who was noted above as ████████████████████ ███████████████

14

46. ███████████████ **(Target Account 4)** - ███████████████████
███████████ The signature block on emails sent from Target Account 4 lists ████████
██████████████ followed by the known mailing address for ███████████████████
████████ Additionally, subscriber information reveals that Target Account 4 logged in from
the same IP address in █████████████ as an email account belonging to ███████████████
███████████████

47. Law enforcement believes Target Account 4 plays an integral role in ██████████
███████████████████████████████████████████████████████████████
██████████████ For example, on or around November 30, 2016, Target Account 4 emailed
███████████████████████████████████████████████████████
██████████████████ OFAC designated ████████████████████████████
████████████████████████████████████

48. On December 16, 2016, Target Account 4 emailed ████████████████████
███████████████████████████████████████████████████████
██████████████████████████ On or around June 13, 2017,
from ███████████████████████████████████████████████



15

49.     On or around March 1, 2018, ███████████████ emailed Target Account 4, with ███████████ about a new customer.  The email indicated that ████ request that ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ Based on this information, I believe that ███████████████████████████████████████████████████ ████████████████████ were designated by OFAC.

50.     From on or about October 15, 2014 through October 22, 2014, Target Account 4 communicated with ███████████████████ According to publicly available information, ███████████ is a contact email address listed on the website ████████████████ located in ██████████ From on or about August 26, 2016 through December 6, 2016, Target Account 4 communicated with ███████████████ According to publicly available information, ███████████ is a contact email listed on the website ███████████ a ████████████████████ As described previously, ████████████ was designated in part for █████████████████████

51.     On September 28, 2016, ██████ emailed Target Account 1 a ███████████ ██████████████████████████████████████████ Law enforcement believes these could be ██████████████ The email address associated with the delivery to ████████████████ Law enforcement is aware that this email address belongs to ████████ For example, ██████████████ emailed a ███████████████ on December 16, 2016 and the name associated with the email address is ██████████ and uses the same signature block as Target Account 4.

52.     Based on prior investigations, I am aware that criminal co-conspirators communicate frequently through email about their legitimate and illegitimate businesses, and the

transfer of proceeds from such businesses. Email offers a uniquely valuable form for such communication, as it can be accessed from any location. Many such persons believe that such messages are difficult to trace, which leads them to have inculpatory conversations.

53. Moreover, when transferring funds to co-conspirators, electronic communications will normally occur to inform the other party that the money has been sent, followed up by communications that the money has been received. I also know from prior investigations that subordinates in the management chain must communicate to their superiors the status of their illegal tasks as well as receive new illegal tasks.

54. Based on the above facts, there is probable cause to believe that the target accounts contain fruits, contraband, evidence, and instrumentalities of violations of IEEPA and money laundering statutes.

## BACKGROUND CONCERNING PROVIDER'S ACCOUNTS

55. PROVIDER is the provider of the internet-based (account(s) identified as the) Target Accounts.

56. PROVIDER provides its subscribers internet-based accounts that allow them to send, receive, and store e-mails online. PROVIDER's accounts are typically identified by a single username, which serves as the subscriber's default e-mail address, but which can also function as a subscriber's username for other PROVIDER services, such as instant messages and remote photo or file storage.

57. Based on my training and experience, I know that PROVIDER allows subscribers to obtain accounts by registering on PROVIDER's website. During the registration process, PROVIDER asks subscribers to create a username and password, and to provide basic personal information such as a name, an alternate e-mail address for backup purposes, a phone number, and

in some cases a means of payment. PROVIDER typically does not verify subscriber names. However, PROVIDER does verify the e-mail address or phone number provided.

58.     Once a subscriber has registered an account, PROVIDER provides e-mail services that typically include folders such as an "inbox" and a "sent mail" folder, as well as electronic address books or contact lists, and all of those folders are linked to the subscriber's username. PROVIDER subscribers can also use that same username or account in connection with other services provided by PROVIDER.[1]

59.     In general, user-generated content (such as e-mail) that is written using, stored on, sent from, or sent to a PROVIDER account can be permanently stored in connection with that account, unless the subscriber deletes the material. For example, if the subscriber does not delete an e-mail, the e-mail can remain on PROVIDER's servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to exist on PROVIDER's servers for a certain period of time.

60.     Thus, a subscriber's PROVIDER account can be used not only for e-mail but also for other types of electronic communication, including instant messaging and photo and video sharing; voice calls, video chats, SMS text messaging; and social networking. Depending on user

---

[1] Here, PROVIDER's other services include electronic communication services such as Skype (voice calls, video calls, and SMS text messaging), Outlook Calendar (calendar and task), Office Online (cloud computing services for word processing, data processing, and presentations); OneDrive (online file storage); web browsing and search tools such as Bing Search (internet searches), Microsoft Edge, and Internet Explorer (web browsers); Bing Maps (maps with driving directions and local business search) and other location services; online tracking and advertising tools such as Bing Ads (which facilitates targeted advertising); and Microsoft Store (which allows users to purchase and download digital content, e.g., applications). Microsoft also provides remote computing services for devices that use Windows operating systems, including security services and parental control services which collect information about the use of the devices (*e.g.*, internet browsing history, software usage history, and other information).

settings, user-generated content derived from many of these services is normally stored on PROVIDER's servers until deleted by the subscriber. Similar to e-mails, such user-generated content can remain on PROVIDER's servers indefinitely if not deleted by the subscriber, and even after being deleted, it may continue to be available on PROVIDER's servers for a certain period of time. Furthermore, a PROVIDER subscriber can store contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on PROVIDER's servers. Based on my training and experience, I know that evidence of who controlled, used, and/or created a PROVIDER account may be found within such computer files and other information created or stored by the PROVIDER subscriber. Based on my training and experience, I know that the types of data discussed above can include records and communications that constitute evidence of criminal activity.

61.     Based on my training and experience, I know that providers such as PROVIDER also collect and maintain information about their subscribers, including information about their use of PROVIDER services. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. Providers such as PROVIDER also commonly have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with other logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as PROVIDER typically

collect and maintain location data related to subscriber's use of PROVIDER services, including data derived from IP addresses and/or Global Positioning System ("GPS") data.

62. Based on my training and experience, I know that providers such as PROVIDER also collect information relating to the devices used to access a subscriber's account – such as laptop or desktop computers, cell phones, and tablet computers. Such devices can be identified in various ways. For example, some identifiers are assigned to a device by the manufacturer and relate to the specific machine or "hardware," some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are actually assigned by PROVIDER in order to track what devices are using PROVIDER's accounts and services. Examples of these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier ("GUID"), device serial number, mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"). Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used (a) to find other PROVIDER accounts created or accessed by the same device and likely belonging to the same user, (b) to find other types of accounts linked to the same device and user, and (c) to determine whether a particular device recovered during course of the investigation was used to access the PROVIDER account.

63. Based on my training and experience, I know that providers such as PROVIDER use cookies and similar technologies to track users visiting PROVIDER's webpages and using its products and services. Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer. When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before. This sort of

technology can be used to track users across multiple websites and online services belonging to PROVIDER. More sophisticated cookie technology can be used to identify users across devices and web browsers. From training and experience, I know that cookies and similar technology used by providers such as PROVIDER may constitute evidence of the criminal activity under investigation. By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a PROVIDER account and determine the scope of criminal activity.

64.     Based on my training and experience, I know that PROVIDER maintains records that can link different PROVIDER accounts to one another, by virtue of common identifiers, such as common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple PROVIDER accounts. Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular PROVIDER account.

65.     Based on my training and experience, I know that subscribers can communicate directly with PROVIDER about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers such as PROVIDER typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

66.     In summary, based on my training and experience in this context, I believe that the computers of PROVIDER are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved e-mail for PROVIDER subscribers), as well as PROVIDER-generated information about its subscribers and their use of PROVIDER services and other online services.  In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  In fact, even if subscribers provide PROVIDER with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

67.     As explained above, information stored in connection with a PROVIDER account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element of the offense, or, alternatively, to exclude the innocent from further suspicion.  From my training and experience, I know that the information stored in connection with a PROVIDER account can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, e-mail communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time.  Further, information maintained by PROVIDER can show how and when the account was accessed or used.  For example, providers such as PROVIDER typically log the IP addresses from which users access the account along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the PROVIDER account access and use relating to the criminal activity

under investigation. This geographic and timeline information may tend to either inculpate or exculpate the person who controlled, used, and/or created the account. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via e-mail). Finally, stored electronic data may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information in the PROVIDER account may indicate its user's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## **CONCLUSION**

68.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,



Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on this 16th day of September, 2019.

_____
HON. ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT

### for the
### District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 19-sc-1912 |
| INFORMATION ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY MICROSOFT CORPORATION, FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 1956 | ) ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

INFO. ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY MICROSOFT CORP., FOR INVESTIGATION OF VIOLATION OF 18 U.S.C.1956 (See Attachment A, incorporated herein by reference.)

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

| Code Section | Offense Description |
|---|---|
| 50 U.S.C. § 1705(a) | IEEPA |
| 18 U.S.C. § 1956 | Money Laundering |

The application is based on these facts:

See attached Affidavit in support of Search Warrant, which is incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means).*

Date: 09/16/2019

City and state: District of Columbia

2019.09.16 16:29:08 -04'00'

*Judge's signature*

Robin M. Meriweather, U.S. Magistrate Judge

*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) **Case No.** 19-sc-1912 |
| INFORMATION ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY MICROSOFT CORPORATION, FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 1956 | ) ) ) ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Western_____ District of _____Washington_____
*(identify the person or describe the property to be searched and give its location)*:

INFORMATION ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY MICROSOFT CORPORATION, FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 1956
  See Attachment A, hereby incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
  See Attachment B, hereby incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____September 30, 2019_____ *(not to exceed 14 days)*
  ☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Robin M. Meriweather_____.
                                                                            *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
  ☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   _____09/16/2019_____

2019.09.16 16:29:27 -04'00'
*Judge's signature*

City and state:   _____District of Columbia_____   Robin M. Meriweather, U.S. Magistrate Judge
                                                                                      *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  19-sc-1912 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

      This warrant applies to information associated with the Microsoft Corporation account

██████████████ that is stored at premises controlled by Microsoft Corporation, a

company that accepts service of legal process at 1 Microsoft Way, Redmond, Washington.

**ATTACHMENT B**

**Particular Things to be Seized and Procedures
to Facilitate Execution of the Warrant**

I.      **Information to be disclosed by Microsoft Corporation ("PROVIDER") to
        facilitate execution of the warrant**

        To the extent that the information described in Attachment A is within the possession,

custody, or control of PROVIDER, including any records that have been deleted but are still

available to PROVIDER, or have been preserved pursuant to a request made under 18 U.S.C.

§ 2703(f), PROVIDER is required to disclose the following information to the government

corresponding to each account or identifier ("Account") listed in Attachment A:

        a.      For the time period covering January 5, 2011 to the present: The contents of all

communications and related transactional records for all PROVIDER services used by an

Account subscriber/user (such as e-mail services, calendar services, file sharing or storage

services, photo sharing or storage services, remote computing services, instant messaging or chat

services, voice call services, or remote computing services, including but not limited to

incoming, outgoing, and, messages, calls, and other electronic communications; attachments to

communications (including native files); source and destination addresses and header or routing

information for each communication (including originating IP addresses of e-mails); the date,

size, and length of each communication; and any user or device identifiers linked to each

communication (including cookies); electronic communication services such as Skype (voice

calls, video calls, and SMS text messaging), Outlook Calendar (calendar and task), Office Online

(cloud computing services for word processing, data processing, and presentations); OneDrive

(online file storage); web browsing and search tools such as Bing Search (internet searches),

Microsoft Edge, and Internet Explorer (web browsers); Bing Maps (maps with driving directions

2

and local business search) and other location services; online tracking and advertising tools such as Bing Ads (which facilitates targeted advertising); and Microsoft Store (which allows users to purchase and download digital content, e.g., applications). Microsoft also provides remote computing services for devices that use Windows operating systems, including security services and parental control services which collect information about the use of the devices (*e.g.*, internet browsing history, software usage history, and other information).

b. For the time covering January 5, 2011 to the present: The contents of all other data and related transactional records for all PROVIDER services used by an Account user (such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services, including any information generated, modified, or stored by user(s) or PROVIDER in connection with the Account (such as contacts, calendar data, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information);

c. For the time period covering January 5, 2011 to the present: All PROVIDER records concerning the online search and browsing history associated with the Account or its users (such as information collected through tracking cookies);

d. For the time period covering January 5, 2011 to the present: All records and other information concerning any document, or other computer file created, stored, revised, or accessed in connection with the Account or by an Account user, including the contents and revision history of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

e.      All records regarding identification of the Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of payment (including any credit card or bank account number), records of session times and durations (including IP addresses, cookies, device information, and other identifiers linked to those sessions), records of account registration (including the IP address, cookies, device information, and other identifiers linked to account registration), length of service and types of services utilized, account status, methods of connecting, and server log files;

f.      All device or user identifiers which have ever been linked to the Account, including but not limited to all cookies and similar technologies, unique application numbers, hardware models, operating system versions, device serial numbers, Global Unique Identifiers ("GUID"), mobile network information, telephone numbers, Media Access Control ("MAC") addresses, and International Mobile Equipment Identities ("IMEI");

g.      Basic subscriber records and login history (including, as described in 18 U.S.C. § 2703(c)(2), names, addresses, records of session times and durations, length of service and types of service utilized, instrument numbers or other subscriber numbers or identities, and payment information) concerning any PROVIDER account (including both current and historical accounts) ever linked to the Account by a common e-mail address (such as a common recovery e-mail address), or a common telephone number, means of payment (*e.g.*, credit card number), registration or login IP addresses (during one-week period), registration or login cookies or similar technologies, or any other unique device or user identifier;

h.      For the time period covering January 5, 2011 to the present: All records of communications between PROVIDER and any person regarding the Account, including contacts with support services and records of actions taken;

4

i.      Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel); and

j.      For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

k.      The PROVIDER shall deliver the information set forth above via United States mail, courier, or e-mail to the following:



## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. § 1956, and 50 U.S.C. §§ 1701-1706 as described in the affidavit submitted in support of this Warrant, including, for each Account, information pertaining to the following matters:

(a) Information that constitutes evidence of the identification or location of the user(s) of the Account;

(b) Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

(c) Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

(d) Information that constitutes evidence concerning how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user;

(e) Information that constitutes evidence identifying coconspirators, accomplices, and aiders and abettors in the commission of the above offenses;

(f) Information that constitutes evidence concerning sanctions, and practices taken to avoid sanctions;

(g) Information that constitutes evidence indicating transportation or transmission of funds that have been derived from a criminal offense;

(h) Information that constitutes evidence indicating the transportation, transmission, or transfer of funds that are intended to be used to promote, conceal, or support unlawful activity;

(i) Information that constitutes evidence concerning records related to the shipments of commodities/goods including, but not limited to, bills of lading, port call documents, and customs forms;

(j) Information that constitutes evidence concerning banking or financial information related to ██████████████████████████████████████████████
██████████████████████████████████████████████████████████████

(k) Information that constitutes evidence concerning transshipments of commodities/goods by/to ██████████████████████████████████████
██████████████████████████████████████████████████████████████

(l) Information that constitutes evidence indicating the amount and location of any payments, monies, or funds transfers by/to ████████████████████████
██████████████████████████████████████████████████████████████

## III.    Government procedures for warrant execution

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by _____ ("PROVIDER"), and my title is _____.
I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER.  The attached records consist of:

_____

[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

I further state that:

a.	all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.	such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

1.	the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.	the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                                    Signature

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY MICROSOFT CORPORATION, FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 1956**

**SC No. 19-1912**

**Filed Under Seal**

*Reference:*    *USAO Ref.* ███████████: *Subject Account:* ████████████████

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, ████████████, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant for information which is associated with one account, which is ████████████████ that is stored at premises controlled by Microsoft Corporation ("PROVIDER"), an electronic communications services provider and/or remote computing services provider which is headquartered at / which accepts service at One Microsoft Way, Redmond, Washington 98052. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require PROVIDER to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.



3.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

4.    Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of the money laundering statute, 18 U.S.C. § 1956, the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1707, and the executive orders and regulations promulgated thereunder have been committed by the users of the Target Accounts. These investigations often involve the use of email by subjects who use their email accounts to correspond with banks, commodity brokers, and logistics companies to arrange purchases and shipments in circumvention of U.S. economic sanctions and other laws. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC.  *See* 18 U.S.C. § 3237.  Specifically, as discussed below, ███████████████████ ███████ failed to obtain a license from the U.S. Department of Treasury's, Office of Foreign Asset Control (OFAC), which is located in Washington D.C.

## STATUTORY AUTHORITY

### I.     THE SYRIAN REGIME

6.     On June 28, 2005, OFAC designated the Scientific Studies and Research Center ("SSRC"), Syria's government agency responsible for developing weapons of mass destruction ("WMD") as part of a previously enacted sanction against the government of Syria.  The U.S. Government defines chemical weapons as WMDs.  *See* U.S.C. §2332a.  The SSRC was designated under Executive Order ("E.O.") 13382, blocking the property of specially designated WMD proliferators and members of their support networks, effectively denying those parties access to the U.S. financial and commercial systems.  *See e.g.* https://treasury.gov/resource-center/sanctions/Programs/Documents/wmd.txt.

7.     On May 18, 2011, OFAC designated Bashar al-Assad, the President of Syria, and his chief lieutenants for human rights abuses, including repression of the Syrian people, as well as having benefitted from rampant corruption.

8.     Syrian Foreign Ministry spokesman Jihad Makdissi confirmed for the first time on July 23, 2012 that the Assad regime had chemical weapons.  In February 2014, a United Nations Human Rights Commission investigation confirmed the use of chemical weapons, specifically the nerve agent sarin, against civilians in the Syrian cities of Khan al-Assal in March 2013, Saraqib in April 2013, and Ghouta in August 2013.  The investigation concluded that the nerve agent used in these attacks came from the Syrian Army's stockpile of chemical weapons.

**II.     OFAC DESIGNATION OF** ▮▮▮▮▮▮▮▮▮

9.     On July 21, 2016, OFAC designated ▮▮▮▮▮▮▮▮▮



**III.** ███████████████ **AND THE** ███████ **GOVERNMENT**

10.     As part of this investigation, law enforcement obtained a search warrant for email accounts belonging to ████████████████████████████████████ who have a long history of working with ███████████████████████████

11.     For example, in a May 17, 2012 email, ████████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

**IV.** ██████████████████████████ **BACKGROUND**

14.     As part of this investigation, law enforcement obtained a search warrant for email accounts belonging to ████████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

15. On April 9, 2015, ██████████████████████████████████████████

██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Based on my
training and experience, I know that multiple companies operating out of the same ████████ is
often indicative of a company having a limited physical presence ██████████ Additionally,
██████████████████████████████████████████████████████████████████████

16. ████████████████████████████████████████████████ Based
on my training and experience, I am aware that ████████████████████████████
████████████████████████████████████████████████████████ As
described below, subpoena returns from the U.S. financial institutions which process international
wires revealed ████████████████████████████████████





22.    Email search warrant returns of ▮▮▮▮▮▮▮▮▮ also show that an individual named

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

24.     On May 18, 2018, the ████ Ministry of Economy and Finances designated the

███████████████████████████████████████████████████████ on this

designation, confirming this company's association with ████████████  Based on this

information, I reasonably believe that ████████████████████████████

████████████████ who is subject to sanctions, and therefore these companies are also

subject to sanctions.

25.     Law enforcement also identified in ████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

**V.     ILLICIT INTERNATIONAL WIRES**

26.     Subpoena returns from U.S. financial institutions revealed at least ████████████

wire payments originating from ██████████████████████████████████████

██████████ since 2013.  Of these funds, approximately ████████████████████

████████████████████████  According to its website, ████████████████████

███████████████████████████████████████████████████████████

8

████████████████████████████████████████████████

████████████████████████████████ I am aware that procurement agents often enter a generic reference to obscure the true item purchased.

27. Subpoena returns from U.S. financial institutions also revealed USD transactions between ████████████████████████ The procurement of such products was consistent with OFAC's designation of ████████ and supports the conclusion that the company was obtaining ████████████████████████████ ████████

28. Multiple wire transactions totaling ████ were blocked while transiting through the United States, because the parties failed to obtain a license from OFAC, which is located in Washington D.C., prior to engaging in these USD transactions. These transactions are summarized as follows:





███████████████████████████████████████████████

29. Based on my training and experience, I know that companies located in sanctioned countries often use shell companies to purchase items on their behalf to conceal the true destination of the goods, to avoid funds being blocked, and to limit any potential criminal liability that might be incurred. Based on ████████████████████████ I believe that ████████████ was acting on behalf of ██████ to access the U.S. financial system, in violation of sanctions and money laundering laws.

## TARGET ACCOUNTS

30. ██████████████████ (Target Account 1) – Subscriber information for Target Account 1 lists the recovery email address as ████████████████ which is used by ████ On February 4, 2016, a ████████████████ sent an email to ████████████, using Target Account 1, which I believe to be short for ████████ Additionally, the subscriber information for Target Account 1 revealed logins at IP addresses used by ████ other known email addresses. ████████████████████ For these reasons, I believe Target Account 1 is used by ████

31. From on or about September 15, 2014 through October 26, 2015, Target Account 1 communicated with the email address ████████████ which is on the ████████ three times. I believe this domain is associated with ████████████████████████ ████████████ OFAC designated ████ on May 16, 2017 for being owned or controlled by previously designated ████████████████████████████████ ████████████████████████

32.     From on or about December 29, 2015 through November 2, 2016, Target Account 1 communicated with ███████████████ times.  I am aware that using the letter of the first name combined with a full last name is a common email naming convention; therefore, I believe this email address belongs to ███████████████████.

33.     On September 28, 2016, ████ emailed Target Account 1 a ████████████ ██████████████████████████████████████████████████████████ ██████████████ Law enforcement believes these could be ████████████████.

34.     ██████████████ (Target Account 2) – Target Account 2 is used by ████████ ████████ whose ██████████ shows that ██████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

35.     Target Account 2 regularly communicated with ████████████████. ████████ The subject line of emails from Target Account 2 typically included a number, which ████ categorizes as ██████████████████ and emails typically contained a PDF attachment of a specification for ██████████████████ Each PDF contained the corresponding subject line number handwritten at the top of the page.

36.     For example, on May 12, 2014, Target Account 2 sent ████████████ an email with ████████████████████ The email contained a PDF attachment of a specification sheet from ██████████████████████████ ██████████████████████████ The signature line on this email is ██████████████████████████ which shows that ████████████████████████

37.    On July 9, 2015, Target Account 2 emailed ███ a letter law enforcement believes is destined for ████████████████ The letter reveals ████████████████████████



████████████ Law enforcement believes the branch referenced is ████████████████

38.    From on or about May 22, 2013 through October 10, 2013, Target Account 2 communicated with email accounts on ████████████████████████ According to publicly available information, ████████████████████████ ████████████████████████████████

39.    On January 4, 2014, ███████ appears to have used Target Account 2 to communicate with ████████████████ In this email, ███████ described his business structure as ██████ ████████████████████████

40.    From on or about December 29, 2015 through November 2, 2016, Target Account 1 communicated with ████████████████ As described previously, I believe this email address belongs to ████████████████ Target Account 2 started emailing ████████████ around the time communication with ████████████████ ended.

41.    ████████████████ (Target Account 3) -  On June 13, 2017, ██████ who is ████████████████████████ a document with details about a shipment from ████████████████████████ which I believe to a company designed to receive ████████████████████████

13

█████████████████████████ Based on the name and other information as described below, I believe ██████ uses Target Account 3 in connection with this company.

42.     On December 17, 2015, ██████ received an email from Target Account 3 instructing ████████████████████████████████████████ which I believe is a reference to Target Account 2. Additionally, the subject lines for emails from Target Account 3 use the same naming convention as Target Account 2, as described above. Subscriber information for Target Account 3 reveals that Target Account 3 logged in from the same IP address in ████ as Target Account 1, which I believe is associated with an office used by ██████████████████████ ███████████████████ Based on this information, I believe ████ uses Target Account 3.

43.     ████ forwarded Target Account 3 multiple emails from ████████████████ ██████████████████████████████

44.     From on or about July 30, 2014 through September 22, 2016, Target Accounts 1, 2, and 3 communicated with email accounts on ██████████████████████████ ██████████████ was designated by OFAC on December 23, 2016 for shipping ████████ ██████████████████

45.     From on or about December 20, 2016 through December 21, 2016, Target Accounts 2 and 3 communicated with an email address on ██████████████████████████ ██████████████ was designated by OFAC on December 23, 2016 for transporting ████████████████████████████ The airline was also used to launder ████████████████████████ It is owned by ██████████████████████████ ██████████ who was noted above as ██████████████████████████████ ██████████████████

14

46.     ████████████████  **(Target Account 4)** - ████████████████
████████████  The signature block on emails sent from Target Account 4 lists ████████
████████████  followed by the known mailing address for ████████████████
████████  Additionally, subscriber information reveals that Target Account 4 logged in from
the same IP address in ████████████  as an email account belonging to ████████████
████████████

47.     Law enforcement believes Target Account 4 plays an integral role in ████████████
█████████████████████████████████████████████████████████
████████████  For example, on or around November 30, 2016, Target Account 4 emailed
█████████████████████████████████████████████████████
████████████████  OFAC designated ████████████████████
█████████████████████████████

48.     On December 16, 2016, Target Account 4 emailed ████████████████
█████████████████████████████████████████████████████
████████████████████  On or around June 13, 2017, ████████
from ████████████████████████████████████████



49. On or around March 1, 2018, ███████████ emailed Target Account 4, with ███████████ about a new customer. The email indicated that ███ request that ████████████████████████████████████████████████████████ ███████████████████████████████ Based on this information, I believe that ██████████████████████████████████████████████ ███████████████ were designated by OFAC.

50. From on or about October 15, 2014 through October 22, 2014, Target Account 4 communicated with ███████████████ According to publicly available information, ███████████ is a contact email address listed on the website █████████████ located in █████████ From on or about August 26, 2016 through December 6, 2016, Target Account 4 communicated with ████████████ According to publicly available information, ████████████ is a contact email listed on the website ██████████████ a ████████████████████ As described previously, █████████ was designated in part for ████████████████

51. On September 28, 2016, ████ emailed Target Account 1 a ██████████ ██████████████████████████████████████████████ Law enforcement believes these could be ████████████ The email address associated with the delivery to █████████████ Law enforcement is aware that this email address belongs to ██████ For example, █████████████ emailed a █████████████ on December 16, 2016 and the name associated with the email address is ██████ and uses the same signature block as Target Account 4.

52. Based on prior investigations, I am aware that criminal co-conspirators communicate frequently through email about their legitimate and illegitimate businesses, and the

16

transfer of proceeds from such businesses. Email offers a uniquely valuable form for such communication, as it can be accessed from any location. Many such persons believe that such messages are difficult to trace, which leads them to have inculpatory conversations.

53.     Moreover, when transferring funds to co-conspirators, electronic communications will normally occur to inform the other party that the money has been sent, followed up by communications that the money has been received. I also know from prior investigations that subordinates in the management chain must communicate to their superiors the status of their illegal tasks as well as receive new illegal tasks.

54.     Based on the above facts, there is probable cause to believe that the target accounts contain fruits, contraband, evidence, and instrumentalities of violations of IEEPA and money laundering statutes.

### BACKGROUND CONCERNING PROVIDER'S ACCOUNTS

55.     PROVIDER is the provider of the internet-based (account(s) identified as the) Target Accounts.

56.     PROVIDER provides its subscribers internet-based accounts that allow them to send, receive, and store e-mails online. PROVIDER's accounts are typically identified by a single username, which serves as the subscriber's default e-mail address, but which can also function as a subscriber's username for other PROVIDER services, such as instant messages and remote photo or file storage.

57.     Based on my training and experience, I know that PROVIDER allows subscribers to obtain accounts by registering on PROVIDER's website. During the registration process, PROVIDER asks subscribers to create a username and password, and to provide basic personal information such as a name, an alternate e-mail address for backup purposes, a phone number, and

in some cases a means of payment. PROVIDER typically does not verify subscriber names. However, PROVIDER does verify the e-mail address or phone number provided.

58.     Once a subscriber has registered an account, PROVIDER provides e-mail services that typically include folders such as an "inbox" and a "sent mail" folder, as well as electronic address books or contact lists, and all of those folders are linked to the subscriber's username. PROVIDER subscribers can also use that same username or account in connection with other services provided by PROVIDER.[1]

59.     In general, user-generated content (such as e-mail) that is written using, stored on, sent from, or sent to a PROVIDER account can be permanently stored in connection with that account, unless the subscriber deletes the material. For example, if the subscriber does not delete an e-mail, the e-mail can remain on PROVIDER's servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to exist on PROVIDER's servers for a certain period of time.

60.     Thus, a subscriber's PROVIDER account can be used not only for e-mail but also for other types of electronic communication, including instant messaging and photo and video sharing; voice calls, video chats, SMS text messaging; and social networking. Depending on user

_____

[1] Here, PROVIDER's other services include electronic communication services such as Skype (voice calls, video calls, and SMS text messaging), Outlook Calendar (calendar and task), Office Online (cloud computing services for word processing, data processing, and presentations); OneDrive (online file storage); web browsing and search tools such as Bing Search (internet searches), Microsoft Edge, and Internet Explorer (web browsers); Bing Maps (maps with driving directions and local business search) and other location services; online tracking and advertising tools such as Bing Ads (which facilitates targeted advertising); and Microsoft Store (which allows users to purchase and download digital content, e.g., applications). Microsoft also provides remote computing services for devices that use Windows operating systems, including security services and parental control services which collect information about the use of the devices (*e.g.*, internet browsing history, software usage history, and other information).

18

settings, user-generated content derived from many of these services is normally stored on PROVIDER's servers until deleted by the subscriber. Similar to e-mails, such user-generated content can remain on PROVIDER's servers indefinitely if not deleted by the subscriber, and even after being deleted, it may continue to be available on PROVIDER's servers for a certain period of time. Furthermore, a PROVIDER subscriber can store contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on PROVIDER's servers. Based on my training and experience, I know that evidence of who controlled, used, and/or created a PROVIDER account may be found within such computer files and other information created or stored by the PROVIDER subscriber. Based on my training and experience, I know that the types of data discussed above can include records and communications that constitute evidence of criminal activity.

61.     Based on my training and experience, I know that providers such as PROVIDER also collect and maintain information about their subscribers, including information about their use of PROVIDER services. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. Providers such as PROVIDER also commonly have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with other logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as PROVIDER typically

collect and maintain location data related to subscriber's use of PROVIDER services, including data derived from IP addresses and/or Global Positioning System ("GPS") data.

62.     Based on my training and experience, I know that providers such as PROVIDER also collect information relating to the devices used to access a subscriber's account – such as laptop or desktop computers, cell phones, and tablet computers.  Such devices can be identified in various ways.  For example, some identifiers are assigned to a device by the manufacturer and relate to the specific machine or "hardware," some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are actually assigned by PROVIDER in order to track what devices are using PROVIDER's accounts and services.  Examples of these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier ("GUID"), device serial number, mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI").  Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used (a) to find other PROVIDER accounts created or accessed by the same device and likely belonging to the same user, (b) to find other types of accounts linked to the same device and user, and (c) to determine whether a particular device recovered during course of the investigation was used to access the PROVIDER account.

63.     Based on my training and experience, I know that providers such as PROVIDER use cookies and similar technologies to track users visiting PROVIDER's webpages and using its products and services.  Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer.  When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before.  This sort of

technology can be used to track users across multiple websites and online services belonging to PROVIDER. More sophisticated cookie technology can be used to identify users across devices and web browsers. From training and experience, I know that cookies and similar technology used by providers such as PROVIDER may constitute evidence of the criminal activity under investigation. By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a PROVIDER account and determine the scope of criminal activity.

64. Based on my training and experience, I know that PROVIDER maintains records that can link different PROVIDER accounts to one another, by virtue of common identifiers, such as common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple PROVIDER accounts. Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular PROVIDER account.

65. Based on my training and experience, I know that subscribers can communicate directly with PROVIDER about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers such as PROVIDER typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

66.     In summary, based on my training and experience in this context, I believe that the computers of PROVIDER are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved e-mail for PROVIDER subscribers), as well as PROVIDER-generated information about its subscribers and their use of PROVIDER services and other online services.  In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  In fact, even if subscribers provide PROVIDER with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

67.     As explained above, information stored in connection with a PROVIDER account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element of the offense, or, alternatively, to exclude the innocent from further suspicion.  From my training and experience, I know that the information stored in connection with a PROVIDER account can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, e-mail communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time.  Further, information maintained by PROVIDER can show how and when the account was accessed or used.  For example, providers such as PROVIDER typically log the IP addresses from which users access the account along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the PROVIDER account access and use relating to the criminal activity

22

under investigation. This geographic and timeline information may tend to either inculpate or exculpate the person who controlled, used, and/or created the account. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via e-mail). Finally, stored electronic data may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information in the PROVIDER account may indicate its user's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## **CONCLUSION**

68. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,



Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on this 16th day of September, 2019.

2019.09.16
16:29:51 -04'00'

HON. ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE