# ATTACHMENT

# A

*Redacted Docket Materials*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE EMAIL ACCOUNT SERVICED BY MICROSOFT CORPORATION FOR INVESTIGATION OF VIOLATIONS OF 50 U.S.C. 1705 | SC No. 19-sc-2156<br><br>**Filed Under Seal** |

*Reference:*      USAO Ref. # ▮▮▮▮▮      Subject Account(s): ▮▮▮▮▮

**APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)**

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require **Microsoft Corporation** (PROVIDER), an electronic communication service and/or remote computing service provider located in Redmond, Washington, to disclose certain records and other information pertaining to the PROVIDER account(s) associated with email address ▮▮▮▮▮ (TARGET ACCOUNT), as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

**LEGAL BACKGROUND AND JURISDICTION**

1.      PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2.      This Court has jurisdiction to issue the requested Order because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(d). Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, the criminal offenses under investigation began or were committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, and no offender is known to have, or have had, residence within any United States district. *See* 18 U.S.C. § 3238. Moreover, certain offenses under investigation, namely 18 U.S.C. §§ 1956 & 1957, apply extraterritorially.

3. A court order under section 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## RELEVANT FACTS

4. The United States is investigating suspected violations of export control laws; specifically the alleged procurement of U.S.-origin commodities by a prohibited person in ▮▮▮ who has an established history of re-exporting to ▮▮▮ The investigation concerns possible violations of, *inter alia*, the Export Administration Regulations (EAR), 15 CFR § 730, et. seq., the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1705, the Export Control Reform Act of 2018 (ECRA), 50 U.S.C. § 4819, False Statements, 18 U.S.C. § 1001, as well as conspiracies to violate these provisions, 18 U.S.C. § 371.

5. The Bureau of Industry and Security (BIS) within the U.S. Department of

2

Commerce (DOC) is charged with the development, implementation, and enforcement of export controls for commercial, dual-use, and military technologies. Licensing officials at BIS provide evaluation and processing of licenses for proposed export and re-export of goods and technology from the United States.

6. The Export Administration Act (EAA) regulates the export of goods, technology, and software from the United States. Pursuant to the provisions of the EAA, the DOC promulgated the EAR, 15 C.F.R. §§ 730-774, which contain additional restrictions on the export of goods outside of the United States, consistent with the policies and provisions of the EAA. See 15 C.F.R. § 730.02. Although the EAA lapsed on August 17, 2001, pursuant to the authority provided to the President under IEEPA, the President issued Executive Order 13222. In that order, the President declared a national emergency with respect to the unusual and extraordinary threat to the national security, foreign policy, and economy of the United States in light of the expiration of the EAA. Accordingly, pursuant to IEEPA, the President ordered that the EAR's provisions remain in full force and effect despite the expiration of the EAA. Presidents have repeatedly signed renewals of the national emergency with respect to the EAA's expiration, the most recent being that of August 8, 2018. 83 Fed. Reg. 39871 (Aug. 8, 2018).

7. Under IEEPA, it is a crime to willfully violate any regulation promulgated thereunder, including the EAR. See 50 U.S.C. § 1705.

8. On August 13, 2018, the President signed into law the National Defense Authorization Act of 2019, which includes provision on export controls, entitled the Export Control Reform Act of 2018 (ECRA), 50 U.S.C. §§ 4801-4852. In part, ECRA provides permanent statutory authority for the EAR. For conduct that predates August 13, 2018, IEEPA is the controlling statute. For conduct occurring after August 13, 2018, ECRA is the controlling statute.

9.  ECRA provides, among its stated policy objectives, that "the national security and foreign policy of the United States require that the export, reexport and in-country transfer of items, and specific activities of United States persons, wherever located, be controlled…." 50 U.S.C. § 4811(2). To that end, ECRA grants the President the authority "(1) to control the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or by foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. Id. at § 4812(b). ECRA further grants the Secretary of Commerce the authority to establish the applicable regulatory framework.

10. Pursuant to that and prior authority, the DOC, which is located in the District of Columbia, reviews and controls the export of certain items, including goods, software, and technologies, from the United States to foreign countries through the EAR, 15 C.F.R. §§ 730-774. In particular, the EAR restricts the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. The EAR impose licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully re-exported from one foreign destination to another.

11. The most sensitive items subject to EAR controls are identified on the Commerce Control List (CCL), published at 15 C.F.R. part 774, Supp. No. 1. Items on the CCL are categorized by a specific Export Control Classification Number (ECCN), which would appear in the CCL and each of which has export control requirements depending on destination, end use, and end user.

12. Pursuant to 50 U.S.C. § 4819(a)(1), "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of this part or of any regulation, order, license, or other authorization issued under this part," and pursuant to §4819(b),"[a] person who

willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) shall" be guilty of a crime.

13. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇ were added to the BIS Entity List (hereinafter, Entity List) on or about ▇▇▇▇▇▇▇▇ ▇▇▇▇▇ for their purported involvement in the procurement and delivery of U.S.-origin ▇▇▇▇ ▇▇▇▇▇▇▇▇▇ to ▇▇▇▇▇ in violation of the EAR and International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130. The Entity List is a publicly-available list that identifies foreign parties that are prohibited from receiving some or all items subject to the EAR unless the exporter, re-exporter or transferor (in-country) secures a BIS license authorizing to do so. Companies and/or individuals are added to the Entity List for engaging in activities that are contrary to the national security or foreign policy interests of the United States. As such, these companies/individuals also present a greater risk of diversion of commodities and technology to other entities that may operate against the interests of the United States and its allies.

14. Based on the investigation to date, ▇▇▇▇▇▇▇▇▇ is believed to have arranged the formation of two companies, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ to facilitate the procurement of U.S.-origin items and the subsequent re-export of them to ▇▇▇▇▇ in an effort to circumvent the restrictions imposed by the Entity List on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

15. A search of the open source domain information for ▇▇▇▇▇▇▇▇ website ▇▇▇▇▇▇▇▇▇ showed that ▇▇▇▇▇▇▇▇ was the registrant and that TARGET ACCOUNT was the contact email address. ▇▇▇▇▇▇▇▇'s website was registered on ▇▇▇▇▇▇▇▇▇▇ three weeks after ▇▇▇▇▇▇▇▇ and ▇▇▇▇▇▇▇▇▇▇ were added to the Entity List.

16. According to a ▇▇▇▇▇▇▇▇ business registry website, ▇▇▇▇▇▇▇▇ was incorporated in ▇▇▇▇▇▇▇▇▇ and ▇▇▇▇▇▇ was incorporated in ▇▇▇▇▇▇▇▇▇—just months after ▇▇▇▇▇▇

5

and ▓▓▓▓ were added to the Entity List—with the president of both companies being listed as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Moreover, both ▓▓▓▓ and ▓▓▓▓'s listed address is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Consequently, investigators believe that these companies are affiliated in some way.

17. According to the U.S. Government's system of record to track exports from the United States, ▓▓▓▓ has participated in more than 450 transactions of U.S.-origin ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ since May 2013. The types of commodities listed generally have fallen into the same category of items that were previously procured by ▓▓▓▓ before it was added to the Entity List.

18. A review of the BIS export licensing database found no existing licenses approved for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to receive exports, re-exports or transfers of U.S.-origin items.

19. In September 2019, law enforcement overtly contacted ▓▓▓▓ at TARGET ACCOUNT and asked her numerous questions, including if she had directly or indirectly (including family members) been involved in the incorporation or operation of any company used to receive U.S.-origin items since October 2012. ▓▓▓▓ using TARGET ACCOUNT, responded, "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"

20. After this exchange, ▓▓▓▓ emailed law enforcement via TARGET ACCOUNT a photocopy of an identification card bearing her name, photo, date of birth and other information.

6

21. Because international procurement networks are located in far-flung locations across the globe, and are frequently far from manufacturers, distributors, suppliers, and vendors, they routinely rely on email to conduct business, negotiate transactions, and confirm payments and financial information. Email, moreover, is likely to be the preferred medium of communication for the transmission of contracts, assignments, agreements, invoices, purchase orders, bills of lading, shipping instructions, technical requirements, inventory lists to purchase, wire transfer and payment confirmation, financial records, and documents pertaining to the business. Such documents are likely to be relevant to the investigation into ▮▮▮▮▮▮▮s suspected illegal procurement of U.S.-origin items.

**REQUEST FOR ORDER**

22. The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

23. The United States further requests that the Order direct PROVIDER not to notify any person, including the subscriber or customer of each account listed in Part I of Attachment A, of the existence of the application of the United States or the Order for one year from the date of the Court's Order. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the

7

court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." See 18 U.S.C. § 2705(b).[1]

24. In this case, the proposed Order seeks information relevant to establishing the illegal activity under investigation and identifying the individual(s) responsible. Accordingly, disclosure may reveal the existence, scope, and direction of the United States's ongoing and confidential investigation. Once alerted to this investigation, potential target(s) could be immediately prompted to destroy or conceal incriminating evidence, alter their operational tactics to avoid future detection, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote computing services, the potential target(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity. Notification could also result in the target(s) avoiding travel to the United States or other countries from which they may be extradited.

25. Therefore, based on the foregoing, there are reasonable grounds to believe that notification of the existence of this Order would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation. See 18 U.S.C. § 2705(b)(2)-(5).

26. Given the complex nature of the criminal activity under investigation and likely involvement of foreign-based coconspirators and evidence, and also given that the criminal scheme

---

[1] The government relies on § 2705(b) to seek a preclusion-of-notice order because the government is requesting only non-content information pursuant to § 2703(d), an action which is authorized by § 2703(c). See 18 U.S.C. § 2703(c)(1)(B) ("governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when [it] . . . obtains a court order for such disclosure under subsection (d) of this section"). Under § 2703(c), the government has no obligation to notify the subscriber. See 18 U.S.C. § 2703(c)(3) ("governmental entity receiving records or information under this section is not required to provide notice to a subscriber or customer").

8

may be ongoing, the United States anticipates that this confidential investigation will continue for the next year or longer.

27. Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the proposed Order for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the United States will make best efforts to notify the Court promptly and seek appropriate relief.

28. In this matter, the United States also requests that the instant Application and the Order be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the proposed Order. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Commn'ns, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an ongoing criminal i

nvestigation when such jeopardy creates a compelling governmental interest in confidentiality. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991). For the reasons stated above, the United States has a compelling interest in confidentiality to justify sealing the Application and Order. *See id.*

> Respectfully submitted,
>
> JESSIE K. LIU
> United States Attorney
> DC Bar No. 472845
>
> _____/s/_____
> Jolie F. Zimmerman
> Assistant United States Attorney
> D.C. Bar No. 465110
> National Security Section
> 555 4th Street, N.W., Room 11-844
> Washington, D.C. 20530
> Office: 202-252-7220; fax: 202-252-7792
> Jolie.Zimmerman@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE EMAIL] ACCOUNT(S) SERVICED BY MICROSOFT CORPORATION FOR INVESTIGATION OF VIOLATION OF 50 U.S.C. § 1705 | SC No. 19-sc-2156<br><br>**<u>Filed Under Seal</u>** |

### ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring **MICROSOFT CORPORATION** ("PROVIDER"), an electronic communication and/or remote computing service provider located in Redmond, Washington, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, and intimidate potential witnesses. *See* 18 U.S.C. § 2705(b)(2)-(5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of

one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

      IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.

                                             _____
                                             UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## I. The Account(s)

The Order applies to certain records and other information for any **MICROSOFT CORPORATION** ("PROVIDER") account(s) associated with the following identifier(s):

- ██████████████
- ██████████████

and any preserved data and/or preservation numbers associated therewith.

## II. Records and other information to be disclosed

### A. Information about the customer or subscriber of the Account(s)

PROVIDER is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Account(s)") constituting information about the customer or subscriber of the Account(s):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Local and long distance telephone connection records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol (IP) addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses);

7. Other subscriber numbers or identities (including the registration IP address), including any current or past accounts linked to the Account(s) by telephone number, recovery or alternate e-mail address, IP address, or other unique device or user identifier; and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. **All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) for the time period from **OCTOBER 1, 2012, TO PRESENT** constituting all records and other information relating to the Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information; and

3. Identification of any PROVIDER account(s) that are linked to the Account(s) by cookies, including all PROVIDER user IDs that logged into PROVIDER's services by the same machine as the Account(s).

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE EMAIL] ACCOUNT(S) SERVICED BY MICROSOFT CORPORATION FOR INVESTIGATION OF VIOLATION OF 50 U.S.C. § 1705

SC No. 19-sc-2156

**Filed Under Seal**

## ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring **MICROSOFT CORPORATION** ("PROVIDER"), an electronic communication and/or remote computing service provider located in Redmond, Washington, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, and intimidate potential witnesses. *See* 18 U.S.C. § 2705(b)(2)-(5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 2705(b), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of

2

one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.

Deborah A. Robinson
Digitally signed by Deborah A. Robinson
Date: 2019.10.29 16:11:20 -04'00'

UNITED STATES MAGISTRATE JUDGE

2

# ATTACHMENT A

I. **The Account(s)**

The Order applies to certain records and other information for any **MICROSOFT CORPORATION** ("PROVIDER") account(s) associated with the following identifier(s):

- ███████████████
- ███████████████

and any preserved data and/or preservation numbers associated therewith.

II. **Records and other information to be disclosed**

A. **Information about the customer or subscriber of the Account(s)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Account(s)") constituting information about the customer or subscriber of the Account(s):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Local and long distance telephone connection records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol (IP) addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses);

7. Other subscriber numbers or identities (including the registration IP address), including any current or past accounts linked to the Account(s) by telephone number, recovery or alternate e-mail address, IP address, or other unique device or user identifier; and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. **All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) for the time period from **OCTOBER 1, 2012, TO PRESENT** constituting all records and other information relating to the Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information; and

3. Identification of any PROVIDER account(s) that are linked to the Account(s) by cookies, including all PROVIDER user IDs that logged into PROVIDER's services by the same machine as the Account(s).